IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KOSTANTINOS VADEVOULIS, JIM VADEVOULIS, AND PAUL VADEVOULIS,<br><br>Plaintiffs,<br><br>v.<br><br>DEUTSCHE BANK AG; DEUTSCHE BANK SECURITIES, INC., d/b/a DEUTSCHE BANK ALEX. BROWN, AND AMERICAN EXPRESS TAX AND BUSINESS SERVICES, INC., n/k/a RSM MCGLADREY LLC<br><br>Defendants. | No. 08-C-1251 (LEFKOW) |

**MEMORANDUM OF LAW OF DEFENDANT RSM McGLADREY, INC. (f/k/a AMERICAN EXPRESS TAX AND BUSINESS SERVICES INC. IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FED.R.CIV.P. 12(b)(6)**

NYC:173953.2

Defendant RSM McGladrey, Inc. (f/k/a American Express Tax and Business Services Inc.) ("TBS") submits this Memorandum of Law in support of its motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6).

## Preliminary Statement

Plaintiffs' common law claims for fraud, negligent misrepresentation, breach of fiduciary duty, assisting in breach of fiduciary duty, breach of contract, accounting malpractice and civil conspiracy, are time-barred under the five-year limitations period set forth in 735 ILCS 5/13-205. Their statutory claim, moreover, is untimely under the three-year limitations period set forth in 815 ILCS 505/10a(e). In addition, Plaintiffs' claims are subject to dismissal for failure to state a claim. The fraud-based and negligent misrepresentation claims fail to set forth any misrepresentation by TBS, or reliance on any statement by TBS in connection with Plaintiffs' participation in the Son of Boss strategy that caused Plaintiffs' alleged injuries. Further, the fraud claims lack the particularity required under Fed. R. Civ. P. 9(b). Plaintiffs' breach of fiduciary duty claim fails for lack of any fiduciary relationship between Plaintiffs and TBS. Further, because Jenkens & Gilchrist ('Jenkens") is not a party and Plaintiffs assert no claim against Jenkens, Plaintiffs can assert no claim against TBS for assisting in Jenkens' breach of fiduciary duty. The breach of contract claim, which contains no factual detail, fails to set forth the essential elements of such a claim. Finally, because their tort claims are subject to dismissal, Plaintiffs cannot maintain their claim for civil conspiracy, which is not an independent tort.

## STATEMENT OF FACTS

Plainitffs, three individuals, allege that, in 2000, anticipating "large capital gains" from the sale of their business, requested "tax planning advice" from Jenkens, to which they had been referred by their financial advisor William Tsourapas, who is not named as a party in this

1

NYC:173953.2

action. (Compl., ¶¶30, 69-71) Plaintiffs assert that, "[a]t the recommendation of Jenkens," they entered into a tax strategy in 2000 known as "Son of Boss," which Jenkens represented was a legitimate means of minimizing taxes. (Id., ¶¶72, 73) According to Plaintiffs, "Jenkens was principally responsible for developing and selling Son of Boss." (Id., ¶63) Plaintiffs further allege that the Deutsche Bank defendants, which had been involved with Jenkens in developing and marketing Son of Boss and similar strategies, provided necessary "banking and trading services." (Id., ¶¶50, 64) Plaintiffs allege that they participated in Son of Boss transactions involving foreign exchange digital options in the belief that Son of Boss was a legitimate tax minimization strategy, a conclusion Jenkens confirmed in legal opinion letters. (Id., ¶¶37-46, 63)

Plaintiffs assert that TBS prepared Plaintiffs' tax returns for 2000, which were filed on April 16, 2001, that reflected the Son of Boss strategy. (Compl., ¶¶6, 50, 68, 85) Plaintiffs further allege that they paid fees to Jenkens and Defendants in connection with Plaintiffs' tax strategy in the following amounts: Jenkens, $1,346,878; Deutsche Bank, $300,000 and TBS, $60,000. (Id., ¶¶100, 101) According to Plaintiffs, Defendants and Jenkens developed a "fee-sharing arrangement" that was undisclosed to Plaintiffs throughout the transactions. (Id., ¶5) They also assert that Tsourapas received a "secret" referral fee from Jenkens in the amount of $137,687.80 for his referral of Plaintiffs to Jenkens. (Id., ¶71)

According to Plaintiffs, the Internal Revenue Service ("IRS") invalidated Son of Boss and, in "early 2004," notified Plaintiffs that "there may be a problem with respect to their tax strategies." (Id., ¶¶89, 90) Plaintiffs assert that the IRS, in Notice 2004-46, issued on or about May 5, 2004, offered to settle the audits of Son of Boss participants on the following terms: payment of all taxes avoided by the strategy, all interest due and a 10% penalty and an

2

allowed loss deduction of 50% of fees and other "out-of-pocket" costs. (*Id.*, ¶91) Plaintiffs allege that they participated in that settlement initiative and paid the IRS and Illinois state taxing authorities millions of dollars in taxes, interest and penalties. (*Id.*, ¶¶89, 92, 101, 102)

Plaintiffs assert that Defendants knew that the Son of Boss strategy "would not withstand an audit by the IRS" because of "the well-established legal doctrine disallowing the recognition of losses from transactions that lacked 'economic substance.'" (Compl., ¶8) They further allege that, as of the date their tax returns were filed, the IRS had issued two notices, 99-59 and 2000-44, expressing its view that losses from transactions lacking "economic substance" would be disallowed. (*Id.*, ¶¶8, 85) According to Plaintiffs, in June 2003, the IRS "formalized" its position, invalidating tax strategies that included Son of Boss. (*Id.*, ¶89) Plaintiffs assert that Defendants never advised them that the Son of Boss strategy was invalid or that the IRS, in December 2001, announced a "tax amnesty program," Announcement 2002-2, allowing taxpayers who voluntarily disclosed their involvement in tax shelter strategies such as Son of Boss to avoid liability for penalties for underpayment of taxes without conceding liability for taxes or interest. (*Id.*, ¶86)

The Complaint generally asserts a conspiracy among Defendants and other "non-party co-conspirators," including Jenkens and Tsourapas, to market the Son of Boss strategy and associated transactions to Plaintiffs. However, Plaintiffs specifically allege that it was Jenkens that was "primarily responsible for developing and selling Son of Boss" and that it was "[a]t the recommendation of Jenkens" that Plaintiffs "entered into a 'Son of Boss' tax strategy in 2000." (Compl., ¶¶63, 72) They assert that "Jenkens and the Deutsche Bank defendants marketed these shelters to hundreds of people, including plaintiffs." (*Id.*, ¶51) Further, they allege that "Jenkens informed [Plaintiffs] that the tax strategy was a valid and legitimate means of minimizing taxes

3

with respect to [Plaintiffs'] capital gains" and that "Jenkens recommended the formation of a number of entities in order for [Plaintiffs] to effectuate the tax strategy [and] orchestrated the formation of these entities." (*Id.*, ¶¶73, 76) As to TBS, Plaintiffs' only specific allegation is that TBS, to which Plaintiffs had been referred by Jenkens, prepared Plaintiffs' 2000 tax returns. (Compl., ¶¶6, 50, 68, 85)

Plaintiffs commenced this action on February 29, 2008, asserting eight claims, for civil conspiracy (Count I); common law fraud (Count II); negligent misrepresentation (Count III); violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (the "Act") (Count IV); breach of fiduciary duty (against TBS only) (Count V); assisting in the breach of fiduciary duty (Count VI); breach of contract (against TBS only) (Count VII); and accounting malpractice (against TBS only) (Count VIII). In addition to compensatory damages in an unspecified amount, Plaintiffs seek, except in connection with the breach of contract claim, punitive damages and, in connection with the Illinois statutory claim, costs and attorneys' fees.

## ARGUMENT

### I

### PLAINTIFFS' CLAIMS MUST BE DISMISSED AS TIME-BARRED PURSUANT TO 735 ILCS 5/13-205

Where the allegations in a complaint demonstrate that the claims asserted are barred by the statute of limitations, dismissal pursuant to Rule 12(b)(6) is appropriate. *E.g., Hathaway v. R.R. Donnelley Mendota, Inc.*, 2002 WL 31875465, *3 (N.D. Ill. Dec. 24, 2002).[1]

Illinois law provides a five-year statute of limitations for "actions on unwritten contracts, …or to recover damages for an injury done to property, real or personal…and all civil

---

[1] TBS reserves its right to move to compel arbitration of Plaintiffs' claims in the event the Court sustains them on this motion. *See Halim v. Great Gatsby's Auction Gallery*, 516 F.3d 557, 562 (7th Cir. 2008) (a party does not waive its right to arbitrate a dispute by filing a motion to dismiss); *Sharif v. Wellness Intern. Network*, 376 F.3d 720, 727 (7th Cir. 2004) (same).

4

actions not otherwise provided for." 735 ILCS 5/13-205. It applies to each of Plaintiffs' common law claims. *See Brown v. New York Life Ins. Co.*, 2008 WL 151390, *2 (N.D. Ill. Jan. 15, 2008) (section 13-205 applies to claims for fraud, negligent misrepresentation and breach of oral contracts)[2]; *Luminall Paints, Inc. v. La Salle Nat'l Bank*, 220 Ill. App.3d 796, 803, 581 N.E.2d 191, 195 (1st Dist. 1991) (section 13-205 applies to claims for breach of fiduciary duty); *Sutton v. Mytich*, 197 Ill. App.3d 672, 676, 555 N.E.2d 93, 96 (3d Dist. 1990) (section 13-205 applies to professional malpractice claims); *Marx v. Northwestern Memorial Hosp.*, 2007 WL 1280643, *5 (N.D. Ill. April 30, 2007) (section 13-205 applicable to claims for civil conspiracy); *Continental Assur. Co. v. Geothermal Resources Intern. Inc.*, 1991 WL 202378, *5 (N.D. Ill. Sept. 30, 1991) (limitations period applicable to aiding and abetting claim is that applicable to the primary wrong). Plaintiffs' claim for violation of the Act is governed by the three-year limitations period set forth in 815 ILCS 505/10a(e). *Kopley Group V., L.P. v. Sheridan Edgewater Properties, Ltd.*, 376 Ill. App.3d 1006, 1021, 876 N.E.2d 218, 231 (2007).

Under Illinois law, a cause of action accrues, and the statute of limitations begins to run, when the plaintiff is injured. *Brown*, 2008 WL 151390, *2. However, under the "discovery rule," an "equitable exception" to the rule that the limitations period begins to run with the accrual of the cause of action, the limitations period begins when the "injury could have been discovered through the exercise of appropriate diligence." *Id.*[3]

---

[2] Section 13-205 applies to oral, but not written, contracts, which are governed by a ten-year limitations period. 735 ILCS 5/13-206 In the present case, Plaintiffs, though they make a vague reference to "oral and/or written contracts," (Compl., ¶161) identify no writing on which a ten-year limitations period can be based.

[3] Under the discovery rule, the limitations period is tolled "until the plaintiff knows or reasonably should know that he has been injured and that his injury was wrongfully caused." *Jackson Jordan, Inc. v. Leydig, Voit & Mayer*, 158 Ill.2d 240, 633 N.E.2d 627, 630-31 (1994). Once the plaintiff knows or should know of his injury, he has the duty to make a diligent inquiry into whether a cause of action lies. *Knox College v. Celotex Corp.*, 88 Ill.2d 407, 416, 430 N.E.2d 976, 980 (1981). A plaintiff who asserts the discovery rule bears the burden of proving the date of discovery. *Dancor Intern. Ltd. v. Friedman, Goldberg & Mintz*, 288 Ill. App.3d 666, 672-73, 681 N.E.2d 617, 622 (1997). The discovery rule applies to claims governed by section 13-205, *see Brown*, 2008 WL 151390, *2, and those governed by section 505/10a(e). *See Kopley*, 376 Ill. App.3d at 1021.

In the present case, Plaintiffs' own allegations belie any assertion that they did not know or have reason to know of their alleged injury after January 14, 2002, when IRS Announcement 2002-2, specifically referenced in paragraphs 8 and 86 of the Complaint, was published. *See* Announcement 2002-2, 2002-I.R.B. 304, 2002-1 C.B. 304 (December 21, 2001), annexed hereto as Exhibit A.[4] That Announcement, issued as part of "a series of steps the IRS and Treasury have been taking to identify and shut down tax shelter activity," was directed to taxpayers who, like Plaintiffs, had engaged in tax shelter transactions and may, as a result, have underpaid their taxes and sought to encourage taxpayers to disclose their tax treatment of tax shelters in exchange for a waiver of accuracy-related penalties.[5]

Public documents and publicly available information are sufficient to put a plaintiff on notice and commence the running of the statute of limitations. *See e.g. Tello v. Dean Witter Reynolds, Inc.*, 494 F.3d 956, 970 (7th Cir. 2007) (noting, in connection with inquiry notice issue raised by statute of limitations defense, that internet sites could have provided the plaintiff investor with "a substantial amount of information," including articles about the defendant's conduct); *Whirlpool Financial Corp. v. GN Holdings, Inc.*, 67 F.3d 605, (7th Cir. 1995) (information available in public domain put reasonable investor on notice of alleged injury and commenced running of statute of limitations); *Tayebi v. KPMG LLP*, Index No. 105471/2007, slip op. at 14 (Sup. Ct. N.Y. Co. Feb. 20, 2008) (copy annexed as Exhibit C

---

[4] A party seeking dismissal under Fed. R. Civ. P. 12(b) may submit certain documents outside the pleadings, including documents referenced in the complaint that are central to the claim, *see, e.g., Wright v. Associated Ins. Co.*, 29 F.3d 1244, 1248 (7th Cir. 1994), court orders, *see Grimes v. Navigant Consulting, Inc.*, 185 F. Supp.2d 906, 913 (N.D. Ill. 2002) and newspaper and magazine articles, *see, e.g., Bannon v. Edgewater Med. Ctr.*, 406 F. Supp.2d 907, 919 (N.D. Ill. 2005); *Gidarisingh v. McCaughtry*, 2007 WL 1121374, *1 (E.D. Wis. April 13, 2007); 5C Wright and Miller, *Federal Practice and Procedure*, §1364, at 133-140. The Court can take judicial notice of such documents without converting the motion to dismiss into one for summary judgment. *Henson v. CSC Credit Services*, 29 F.3d 280, 284 (7th Cir. 1994).

[5] Announcement 2002-2 had, in addition, already been covered by the national media prior to its formal publication. *See e.g.,* Albert Crenshaw, *Shelter Tips Sought From the Sheltered; No Penalties for Disclosures, IRS Pledges*, WASH. POST, Dec. 22, 2001 at E3; *IRS Targeting Doubtful Tax Shelters*, LOS ANGELES TIMES, Dec. 25, 2001, at 3, attached hereto as Exhibit B.

hereto) (media coverage about problems with tax shelter at issue put plaintiffs on inquiry notice of their claim). Indeed, Announcement 2002-2 is the very type of public document that allows a plaintiff to discover his injury. *See e.g. Hutton v. Deutsche Bank AG et al.*, 2008 WL 795746, *3-5 (D. Kan. March 24, 2008) (in tax shelter case similar to the present case, granting motion to dismiss claims as time-barred under Kansas law, in part because Announcement 2002-2 put plaintiffs on notice of their claims "by January 14, 2002 at the latest"). *See also Klamath Strategic Inv. Fund v. United States*, 440 F.Supp.2d 608, 625 (E.D. Tex. 2006) (issuance of IRS Notice put tax shelter plaintiffs on notice of their alleged injury).[6]

## II

## PLAINTIFFS' CLAIMS, IN ANY EVENT, ARE SUBJECT TO DISMISSAL UNDER RULE 12(b)(6) FOR FAILURE TO STATE A CLAIM

Plaintiffs' claims for fraud, violation of the Act, negligent misrepresentation, breach of fiduciary duty, assisting in the breach of fiduciary duty, breach of contract and civil conspiracy are, in addition to being time-barred, subject to dismissal for failure to state a claim. Under the law of the Seventh Circuit, a complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Sutliff Inc. v. Donovan Companies, Inc.*, 727 F.2d 648, 654 (7th Cir. 1984). *See also McDonald v. Brown*, 2004 WL 2106604, *1 (N.D. Ill. Sept. 20, 2004) ("All plaintiffs must include in the complaint allegations concerning all material elements necessary for recovery under the relevant legal theory."). A complaint that fails to contain such necessary allegations is subject to dismissal. *See, e.g., Seglin v. Esau*, 769 F.2d 1274, 1279 (7th Cir. 1985).

---

[6] In June 2006, TBS agreed to enter into an agreement to toll any statute of limitations applicable to Plaintiffs' claims for a one-year period. No agreement, however, was ever executed. Because Plaintiffs knew or should have known of their injury no later than January 14, 2002, their claims would be untimely even if a one-year tolling period applied, as this action was not commenced until February 29, 2008, more than six years after January 14, 2002.

7

A.  **The Fraud-Based Claims Are Legally Insufficient**

To state a claim for fraud under Illinois law, a plaintiff must establish the following elements: (1) a misrepresentation of a material fact; (2) knowledge of falsity; (3) intent to induce reliance; (4) justifiable reliance; and (5) resulting damages. *Deluxe Media Services, LLC v. Direct Disc Network, Inc.*, 2007 WL 707544, *4 (N.D. Ill. March 2, 2007) (citations omitted). Reliance, in particular, is a key element of fraud. *In re Soybean Futures Litigation*, 892 F.Supp. 1025, 1059 (N.D. Ill. 1995) (citations omitted). Plaintiffs assert two fraud-based claims (Count II, common law fraud, and Count IV, violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (the "Act")[2], both premised on the same factual allegations.

In the present case, Plaintiffs fail, in connection with their fraud-based claims, to set forth allegations as to TBS that establish any of the essential elements of fraud. Plaintiffs' alleged injuries, clearly, are based upon the Son of Boss strategy on which they were allegedly induced to participate. However, Plaintiffs allege no specific fraudulent misrepresentation or omission by TBS on which they reasonably relied in deciding to enter into the Son of Boss strategy. Their statements, based on "information and belief," concerning TBS's alleged involvement in developing and marketing Son of BOSS to Plaintiffs, (*see, e.g.*, Compl. ¶¶68, 117) are not only wholly conclusory and unsupported, but, indeed, contradicted by other allegations stating that Plaintiffs relied on representations not by TBS, but by Jenkens and others:

- "Jenkens was primarily responsible for developing and selling Son of Boss" (Compl., ¶63);

- "Jenkens and the Deutsche Bank defendants marketed these shelters to hundreds of people, including plaintiffs" (Compl., ¶51);

---

[2]  The elements of a claim under the Act are (1) a deceptive act or practice by defendant; (2) defendant's intent that plaintiff rely on the deception; and (3) that the deception occurred in the course of conduct involving trade and commerce. *Prime Leasing, Inc. v. Kendig*, 332 Ill. App.3d 100, 312, 773 N.E.2d 84, 95 (1st Dist. 2002) (citation omitted). A plaintiff must establish, in addition, that the alleged deception was "material and proximately resulted in damages." *Ryan v. Wersi Electronic GmbH & Co.*, 1994 WL 282323, *1 (N.D. Ill. June 22, 1994).

8

- "[Tsourapas] recommended that plaintiffs retain Jenkens to provide tax advice, which led to plaintiffs' participation in Son of Boss" (Compl., ¶30)

- "At the recommendation of Jenkens, the [Plaintiffs] entered into a "Son of Boss" tax strategy in 2000" (Compl., ¶72);

- "Jenkens informed the [Plaintiffs] that the tax strategy was a valid and legitimate means of minimizing taxes with respect to [Plaintiffs'] capital gains" (Comp., ¶73);

- "Jenkens recommended the formation of a number of entities in order for [Plaintiffs] to effectuate the tax strategy. Jenkens orchestrated the formation of these entities." (Compl., ¶76)

The Complaint makes clear, moreover, that Jenkens referred Plaintiffs to TBS only *after* Plaintiffs had decided to participate in Son of Boss and taken all the necessary steps to form the entities involved in the strategy and executed the trades to generate the losses that would be reported on their tax returns. (*See* Compl., ¶¶50, 68, 84) Indeed, it is TBS's alleged preparation of "[P]laintiffs' 2000 tax returns reflecting their participation in Son of Boss" (Compl., ¶117) that forms the basis for Plaintiffs' claims against TBS.

Thus, the Complaint fails to allege any specific representation or omission by TBS on which Plaintiffs reasonably relied in deciding to participate in the Son of Boss tax strategy. Moreover, in asserting that Plaintiffs were referred to TBS only *after* they had decided to implement the Son of Boss strategy, the Complaint acknowledges that Plaintiffs could *not* have relied on any statement or conduct on the part of TBS in participating in the strategy.

Plaintiffs' fraud claim is subject to dismissal for the further reason that it fails to satisfy the requirement of Fed. R. Civ. P. 9(b) that a plaintiff "state with particularity the circumstances constituting fraud." Conclusory allegations that fail to specify the time, place and content of any misrepresentations attributed to a defendant "fall short of the particularity demanded by Rule 9(b)." *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721 (7th Cir. 1998) (citation omitted); *Rosen v. Mystery Method, Inc.*, 2008 WL 723331, *2 (N.D. Ill. March 14, 2008) (for

9

purposes of particularity, the plaintiff must describe "the who, what, where, and when of the alleged fraud."). Moreover, in a case such as the instant case that involves multiple defendants, a plaintiff must state fraud with particularity as against *each* defendant. *See e.g. Vicom, Inc. v. Harbridge Merchant Services, Inc.*, 20 F.3d 771, 778 (7th Cir. 1994) (citation omitted) ("Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraud to 'defendants'.").[8]

In the present case, the Complaint fails to set forth any particularized allegations of fraud by TBS. It identifies no specific misrepresentations or omission by TBS, any alleged speaker, much less when or to whom any misrepresentations were made. Instead, the Complaint consists of conclusory allegations of wrongdoing by "defendants," "each defendant" and "co-conspirators," precisely the sort of non-particularized pleading the Seventh Circuit has held insufficient to satisfy the requirements of Rule 9(b).

### B.   Plaintiffs Fail to Allege a Negligent Misrepresentation Claim

A claim for negligent misrepresentation requires that a plaintiff establish the same elements as for fraudulent misrepresentation, except that the defendant need not know the statement at issue is false. *Kopley Group V., L.P. v. Sheridan Edgewater Properties, Ltd.*, 376 Ill.App.3d 1006, 1018, 876 N.E.2d 218, 228 (1st Dist. 2007). In the present case, Plaintiffs rely on the same "false statements and omissions" to support both their fraudulent and negligent misrepresentation claims. For the same reasons Plaintiffs fail to set forth the elements of a fraud claim, they fail to set forth the elements of a claim for negligent misrepresentation.

---

[8]   Rule 9(b) applies to all claims sounding in fraud and not just to those claims denominated as such. *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507-508 (7th Cir. 2007) (Rule 9(b) applies to all "averments of fraud" not just "claims of fraud" and therefore governs claims premised upon a course of fraudulent conduct). Therefore, Plaintiffs' claim for violation of the Act, premised on the same factual allegations, are subject to Rule 9(b). *See Vulcan Golf, LLC v. Google Inc.*, 2008 WL 818346, * (N.D. Ill. March 20, 2008).

### C. Plaintiffs Fail to Set Forth a Claim For Breach of Fiduciary Duty

Plaintiffs' claim for breach of fiduciary duty rests on the conclusory allegation that TBS, "as the [Plaintiffs'] accountants," were "[Plaintiffs'] fiduciaries." Compl., ¶144. The law is clear, however, that TBS, which prepared Plaintiffs' tax returns for one year, was not their fiduciary. As the Court observed in *Peterson v. H&R Block Tax Services, Inc.*, 971 F. Supp. 1204, 1212 (N.D. Ill. 1997) (applying Illinois law):

> the "'essence' of a fiduciary relationship is one party's dominance over the other. [citation omitted] 'Indeed, in the absence of dominance and influence there is no fiduciary relationship regardless of the level of trust between the parties. [citation omitted] Significantly, a 'slightly dominant business position…[does] not operate to turn a formal, contractual relationship into a confidential or fiduciary relationship. [citation omitted] Courts therefore will not impose fiduciary duties absent a 'significant degree of dominance and superiority of one party over another.' [citation omitted].

While certain relationships, such as partners and attorney-client, are fiduciary as a matter of law under Illinois law, the accountant-client relationship is not, and any fiduciary relationship between an accountant and a client must be imposed on an "ad hoc" basis. *Id.* Thus, Illinois courts have declined to impose fiduciary duties on an accountant absent compelling facts establishing the accountant's dominance and influence over the client, such as the accountant's role in managing the client's assets, performing audits, or "rendering complex investment advice," particularly in "long-term, ongoing relationships." *Id.* at 1214. In *Peterson*, the Court declined to find any fiduciary relationship between the parties where the defendant accounting firm was "alleged to have done nothing more than perform a basic accounting function -- preparing tax returns and advising its customers on the process," the parties had had "an arms-length, isolated transaction for tax preparation services and basic tax advice" and the defendant had "no close, long-term relationship with [the plaintiff] or influence over the management of her assets." 971 F. Supp. at 1214. *See also Terrell v. Childers*, 920 F. Supp. 854, 857 (N.D. Ill.

11

1996) (applying Illinois law) (tax planning expert who, for several years, provided budget advice and preparation, tax advice and planning, insurance and estate planning and managed client's assets, owed fiduciary duty to client).

In the present case, Plaintiffs set forth no facts establishing, as to TBS, any of the hallmarks of a fiduciary relationship. As discussed above, TBS prepared Plaintiffs' tax returns for one year. Until Jenkens referred Plaintiffs to TBS, Plaintiffs had had no relationship with TBS. By the time their relationship with TBS began, Plaintiffs had, at Jenkens' recommendation, already decided to participate in the Son of Boss tax shelter formed legal entities, again at Jenkens' direction, in furtherance of the strategy and engaged in transactions involving those entities in order to generate the tax losses that would be offset against the capital gains Plaintiffs were seeking to shelter. TBS had nothing to do with those decisions and actions. Plaintiffs simply furnished TBS with the information necessary to prepare the tax returns reflecting the losses Plaintiffs had decided -- at Jenkens' recommendation -- to claim. Plaintiffs had nothing more than an arms-length relationship with TBS.

In any event, Plaintiffs' breach of fiduciary duty claim should be dismissed as duplicative of their negligence and malpractice claims.[2] Under Illinois law, "a breach of fiduciary duty claim can be properly dismissed if it alleges the same operative facts and the same legal injury as a negligence claim…or if it mirrors a negligence claim." *Service Auto Parts, Inc. v. Benjamin & Birkenstein, P.C.*, 2004 WL 2359233, *1 (N.D. Ill. Oct, 19, 2004) (applying Illinois law) (dismissing plaintiff's breach of fiduciary claim as duplicative of plaintiff's accounting negligence claim because the two claims were based on the same or related facts and the same alleged financial injury). *See also McDermott, Will & Emery v. Ogle*, 2001 WL

---

[2] In their malpractice claim, Plaintiffs allege that TBS "[took] advantage of a relationship of trust and confidence" and breached its duty "to act with the skill and care of a reasonably competent accountant." Compl., ¶¶ 168-69.

12

1465696, * (N.D. Ill. Nov. 15, 2001) (applying Illinois law) ("[u]nless [p]laintiff's breach of fiduciary duty claim pleads allegations different and distinct from those in the negligence or malpractice claim, the fiduciary duty claim is dismissed as duplicative") (citations omitted).

### D. The Claim for Assisting in Breach of Fiduciary Duty Should Be Dismissed

Illinois law does not recognize a separate tort for assisting or aiding and abetting a breach of fiduciary duty. *E.g., Eastern Trading Co. v. Refco, Inc.*, 229 F.3d 617, 623 (7th Cir. 2000). Thus, while aiding and abetting may be a basis for imposing liability for the tort aided and abetted, it is not a basis in and of itself for imposing tort liability. *Id.* As to TBS, Plaintiffs' claim is that TBS assisted in Jenkens' breach of fiduciary duty. Jenkens is not a party to this action; thus, Plaintiffs have asserted no claim of a breach by Jenkens of its fiduciary duty. Because TBS's alleged acts and omissions in aid of Jenkens' breach of fiduciary duty do not form an independent basis for tort liability but rather would be derivative of Jenkens' liability for breaching its fiduciary duty -- an issue not present in this case in the absence of any claim asserted against Jenkens -- Plaintiffs may not maintain their claim against TBS for assisting in Jenkens' breach of fiduciary duty.

### E. Plaintiffs Fail to Plead a Breach of Contract Claim

The elements of a breach of contract claim under Illinois law are (1) offer and acceptance, (2) consideration, (3) definite and certain terms, (4) performance by the plaintiff of all required conditions, (5) breach, and (6) damages. *Browning v. Eckland Consultants, Inc.*, 2004 WL 2687961, *4 (1st Dist. August 13, 2004). In the present case, Plaintiffs set forth no specific allegations concerning the alleged contract. They do not identify any contract or even state whether it was oral or in writing. They fail to identify the actual parties to the contract or, indeed, any of its terms. Their conclusory assertion that TBS "breached its agreement with

[Plaintiffs] by failing to perform its obligations pursuant to the agreement" (Compl., ¶163) is insufficient. *See Martusciello v. JDS Homes, Inc.*, 361 Ill.App.3d 568, 575, 838 N.E.2d 9, 15 (1st Dist. 2005) (claim for breach of contract "must allege, among other things, the definite and certain terms of the parties' agreement"); *Industrial Hard Chrome Ltd. v. Hetran, Inc.*, 64 F.Supp.2d 741, 745 (N.D. Ill. 1999) (applying Illinois law) (conclusory allegation insufficient; rather, "plaintiff must state the facts underlying the breach.") (citation omitted).

### F. The Civil Conspiracy Claim Fails Because Plaintiffs' Other Tort Claims Fail

Illinois law does not recognize an independent action for civil conspiracy. *Indeck North America Power Fund v. Norweb PLC*, 316 Ill.App.3d 416, 432, 735 N.E.2d 649, 662 (1st Dist. 2000) (dismissal of conspiracy claim proper where plaintiff failed to state independent cause of action underlying conspiracy allegations). Rather, an action for civil conspiracy[10] must derive from an independent actionable tort. *Id. See also Lawrence H. Flynn, Inc. v. Philip Morris USA, Inc.*, 2006 WL 211823, *7-8 (N.D. Ill. Jan. 19, 2006) (conspiracy claim could not be maintained because underlying tort claims subject to dismissal). Moreover, a conspiracy claim cannot be based only on conclusions of tortious conduct between defendants or "[c]haracterizing a combination of acts as a conspiracy." *Indeck North America Power Fund*, 316 Ill.App.3d at 432. Because Plaintiffs have failed to state a viable independent tort against TBS, the civil conspiracy claim should be dismissed as to TBS.

---

[10] Under Illinois law, "[t]he elements of a civil conspiracy are: (1) a combination of two or more persons, (2) for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful means, (3) in the furtherance of which one of the conspirators committed an overt tortious or unlawful act." *Redelmann v. Claire Sprayway, Inc.*, 375 Ill.App.3d 912, 874 N.E.2d 230, 314 Ill.Dec. 320 (1st Dist. 2007).

## **CONCLUSION**

For the foregoing reasons, TBS respectfully requests that the Court dismiss the Complaint with prejudice and grant TBS such other and further relief as may be appropriate.

DATED:     May 14, 2008

                          */s/ Thomas F. Falkenberg*
                          Lynne M. Fischman Uniman
                          Anju Uchima
                          ANDREWS KURTH LLP
                          450 Lexington Avenue, 15th Floor
                          New York, New York 10017
                          Telephone: (212)850-2800
                          Facsimile: (212) 850-2929

                          Thomas F. Falkenberg
                          Williams Montgomery & John, Ltd.
                          20 North Wacker Drive
                          Chicago, Illinois 60606
                          Telephone: (312) 443-3240
                          Facsimile: (312) 630-8540

                          Attorneys for Defendant RSM McGladrey,
                          Inc. (f/k/a American Express Tax and
                          Business Services Inc.)

NYC:173953.2