# EXHIBIT

# C

## SUPREME COURT OF THE STATE OF NEW YORK — NEW YORK COUNTY

PRESENT: _____     PART 60

Index Number : 105471/2007

TAYEBI, M.D., SEAN

vs

KPMG LLP

Sequence Number : 001

DISMISS ACTION

INDEX NO.          FBEM

MOTION DATE _____

MOTION SEQ. NO. _____

MOTION CAL. NO. _____

---

The following papers, numbered 1 to _____ were read on this motion to/for _____

|  | PAPERS NUMBERED |
|---|---|
| Notice of Motion/ Order to Show Cause — Affidavits — Exhibits ... | _____ |
| Answering Affidavits — Exhibits _____ | _____ |
| Replying Affidavits _____ | _____ |

**Cross-Motion:**  ☐ Yes  ☐ No

Upon the foregoing papers, it is ordered that this motion

This motion is decided in accordance with the accompanying memorandum decision.

SO ORDERED

**FILED**

FEB 2 0 2008

NEW YORK
COUNTY CLERK'S OFFICE

Dated: _2/20/08_                    _____ J.S.C.

HON. BERNARD J. FRIED

Check one:  ☐ FINAL DISPOSITION   ☒ NON-FINAL DISPOSITION

Check if appropriate:  ☐ DO NOT POST

Check if appropriate:  ☐ DO NOT POST   ☐ REFERENCE

*(left margin, vertical:)* MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE ___ FOR THE FOLLOWING REASON(S):

SUPREME COURT OF THE STATE OF NEW YORK          **FBEM**
COUNTY OF NEW YORK:  PART 60
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

SEAN TAYEBI, M.D. and
PASCAGOULA VENTURES, LLC,                      Index No. 105471/07

                            Plaintiffs,

                    - against -

KPMG LLP, DAVID RIFKIN, RANDALL
S. BICKHAM, SIDLEY AUSTIN BROWN &
WOOD LLP, SABW HOLDING LLP, PRESIDIO,
ADVISORY SERVICES, LLC, PRESIDIO
GROWTH, LLC, PRESIDIO RESOURCES, LLC,
BAYERISCHE HYPO- UND VEREINSBANK AG, HVB
STRUCTURED FINANCE INC., HVB RISK
MANAGEMENT PRODUCTS INC., HVB AMERICA INC,    **FILED**
DOMENICK DEGIORGIO and DOES 1 through 50,
inclusive,

                                              FEB 2 0 2008

                            Defendants.        NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - COUNTY CLERK'S OFFICE

**APPEARANCES:**

For Plaintiffs:                          For KPMG LLC:

Fensterstock & Partners LLP              Willkie Farr & Gallagher LLP
30 Wall Street                           787 Seventh Avenue
New York, New York 10005                 New York, New York 10019-6099
(Blair C. Fensterstock, Eugene D.        (Robert J. Kheel, Andy Thomas)
Kublanovsky, Allison M. Charles)

For the HVB Defendants:                  For the Presidio Defendants:

Fulbright & Jaworski LLP                 Latham & Watkins LLP
555 South Flower Street                  885 Third Avenue
Los Angeles, California 90071            New York, New York 10022-4834
(Helen L. Duncan)                        (Joseph M. Salama)

**FRIED, J.:**

        Motion Sequence Numbers 001, 002, and 006 are consolidated for disposition.  In

motion number 001, defendant KPMG (KPMG) moves, pursuant to CPLR 3211 (a) (5) and (a) (7), for an order dismissing the second and third causes of action.

In motion number 002, defendants Bayerische Hypo- und Vereinsbank AG (HVB-AG); HVB U.S. Finance Inc. f/k/a HVB Structured Finance Inc. (HVB Finance); HVB Risk Management Products Inc. (HVB Risk); and HVB America Inc. (HVB America) (collectively, HVB) move, pursuant to CPLR 3211 (a) (1), (a) (5), (a) (7), and CPLR 3016 (b), for an order dismissing the complaint on the grounds of a defense founded upon documentary evidence, statute of limitations, failure to state a cause of action, and failure to plead the fraud claims with sufficient particularity.

In motion number 006, defendants Presidio Advisory Services, LLC, Presidio Growth, LLC, and Presidio Resources, LLC (collectively, Presidio) move, pursuant to CPLR 3211, for an order dismissing the complaint on the grounds of a forum selection clause, statute of limitations, and failure to state a cause of action.

The facts and allegations underlying this action are closely related to another action, also in this court, entitled *Shalam v KPMG LLP*, Index Number 112732/05 [*Shalam Action*]). The complaint here alleges as follows: plaintiffs seek damages resulting from defendants' operation of an abusive and illegal tax shelter. Plaintiff Sean Tayebi, M..D. is a California resident, and plaintiff Pascagoula Ventures, LLC (Pascagoula) is a Delaware-registered limited liability partnership, of which Tayebi is the sole member and shareholder.

Defendant KPMG is the third largest accounting firm in the United States, and generates more than $4 billion in annual revenues. Defendant David Rivkin is a former KPMG tax partner and a certified public accountant. Defendant Randall S. Bickham was a

partner of KPMG (KPMG, Rivkin, and Bickham, collectively, the KPMG Defendants).

Defendant Sidley Austin Brown & Wood (Brown & Wood) is one of the nation's largest law firms. Defendant SABW Holding LLP is a Delaware limited liability partnership and, effectively, the parent of Brown & Wood, liable for its liabilities and obligations. Defendant Presidio Advisory Services, LLC is the parent of Presidio Growth, LLC and Presidio Resources, LLC (collectively, Presidio). Defendant HVB-AG is a German corporation. Defendants HVB Finance, HVB Risk, and HVB America are affiliates or subsidiaries of HVB-AG. Defendant Domenick DeGiorgio was a principal of HVB. Finally, the actual identities of defendants Does 1 through 50 are presently unknown to plaintiffs, and they were responsible in some manner for the acts alleged in the complaint.

In 1997, KPMG and Brown & Wood began to jointly create a fraudulent tax shelter scheme known as "Bond Linked Issue Premium Structure" (BLIPS). KPMG personnel formed Presidio as an investment advisor to further that scheme, and they enlisted HVB to provide a "loan" so that the BLIPS transaction would not have a taxable benefit. The personnel of these entities all knew of the defects in BLIPS, that the HVB loans were shams, and that BLIPS was a tax shelter subject to Internal Revenue Service list maintenance requirements.

As part of the scheme, KPMG agreed to advise clients that BLIPS was lawful, and then provide opinion letters attesting to its lawfulness, while making other representations to induce participation. Defendants used these opinion letters as a marketing tool to induce Tayebi to enter into the transaction, the purpose of which was to provide protection against the imposition of tax penalties in the event that the IRS or state tax authorities challenge the

3

tax treatment of a particular strategy. The BLIPS transaction was intended to generate a substantial ordinary or capital loss through the use of "loans" issued at above-market interest rates with substantial loan premiums, which were not true loans. Defendants knew that the purported loans were shams, because they were designed so that no money ever left the bank.

Defendants marketed BLIPS in such a way as to fraudulently induce Tayebi to enter into the transaction, knowing that he had large capital gains or significant income. HVB, acting with the other defendants, prepared loan documents, which Presidio approved and reviewed, that falsely represented to Tayebi that BLIPS was a three-stage, seven-year investment program, when it was a short-term transaction to trigger tax losses, as Rivkin and DeGiorgio have admitted in federal court.

In 1998, Tayebi retained KPMG on a limited basis as his financial advisors for his medical practice. In 2000, KPMG pursued Tayebi in an aggressive effort to convince him to participate in the BLIPS scheme, having learned that Tayebi was one of several owners of a company that was planning a lucrative initial public offering. Tayebi and his representatives regularly met with KPMG accountants to discuss tax matters.

At a meeting in early 2000, Rivkin, acting on behalf of all defendants, described BLIPS, and represented that it was "more likely than not" that the IRS would allow a deduction for losses generated by BLIPS. Rivkin estimated a tax loss of $35 million at a cost of approximately $2.45 million, representing seven percent of the $35 million in projected tax savings.

In so doing, however, Rivkin did not disclose the following: (1) the HVB loans were shams, in that no money would ever leave HVB, and HVB would not set aside its own

4

money or procure money to fund the BLIPS loans; (2) the investment component of BLIPS was not leveraged; (3) the purported HVB loans did not secure foreign currency trades; (4) defendants each had a financial stake in BLIPS; and (5) defendants knew or suspected that the IRS or a court would not validate BLIPS.

In early 2000, Tayebi sold some of his stock in one of his business entities, yielding net proceeds of approximately $35 million. In mid-year 2000, Tayebi retained defendants, and paid Presidio, acting as promoter of BLIPS, the required fee of more than $2.45 million for its participation in BLIPS. On September 13, 2000, Brown & Wood provided Tayebi with a lengthy opinion letter regarding BLIPS. In reliance upon defendants' representations, Tayebi conducted his business in such a way as to realize taxable income that would be offset by the losses generated by BLIPS. KPMG prepared Tayebi's federal and state personal income tax returns for 2000 that reflected the results of the BLIPS scheme. KPMG continued to provide accounting services and tax advice to Tayebi in May 2003. At no time between 2001 and 2003, did KPMG attempt to correct any of the misrepresentations and omissions that KPMG used to induce Tayebi to enter into the BLIPS transaction.

In 2002, KPMG wrote Tayebi a letter regarding an IRS announcement about tax shelters and other questionable items reported on the tax returns, and KPMG recommended that Tayebi make prompt disclosure in accordance with the announcement, but that such disclosure would not create an inference of impropriety. Tayebi participated in the voluntary disclosure plan with the IRS. In 2003, the IRS wrote to Tayebi informing him that his 2000 tax return was being opened for examination and requesting certain information. In 2004, the IRS contacted Tayebi, and informed him that the tax deduction claimed on his 2000

5

income tax return, based on the BLIPS transaction, was invalid. Thereupon, Tayebi entered into a "Closing Agreement" with the IRS, pursuant to which he paid additional federal income taxes and interest totaling more than $7 million, and additional state income taxes and interest totaling more than $4 million.

The complaint alleges further that KPMG and HVB admitted their wrongful participation in the BLIPS scheme when they each entered into a "Deferred Prosecution Agreement" with the United States Attorneys Office, on August 26, 2005, and February 14, 2006, respectively. HVB admitted to: (1) participating in transactions falsely purporting to be loans; (2) participating in trading activity on instructions from promoters that was intended to create the false appearance of investment activity; (3) participating in creating documentation that contained false representations about BLIPS; and (4) engaging in activity with others, including accounting firms, investment advisory firms, lawyers, and clients, to implement the tax shelters designed to defraud the United States. HVB admitted that this conduct occurred under DeGiorgio's direction, and it accepted responsibility for his actions. Rivkin pled guilty on March 27, 2006, to conspiracy and tax evasion for his participation in the fraudulent BLIPS tax scheme.

The complaint also alleges that KPMG's conduct violated section 302 of the AICPA Code of Professional Conduct, and Brown & Wood's conduct violated Disciplinary Rules 2-106, 22 NYCRR § 1200.11; 3-102, 22 NYCRR § 1200.17; and 5-105, 22 NYCRR § 1200.24.

The complaint contains five causes of action for (1) fraud and civil conspiracy against all defendants; (2) professional malpractice against the KPMG Defendants; (3) rescission of

invalid fee agreement and unjust enrichment against KPMG and Brown & Wood; (4) rescission and unjust enrichment against Presidio; and (5) unjust enrichment against HVB.

**Motion 001**

As against the KPMG Defendants, the complaint alleges fraud and civil conspiracy (first cause of action); professional malpractice (second cause of action); and, against KPMG as the sole KPMG Defendant, rescission of invalid fee agreement and unjust enrichment (third cause of action). Presently, KPMG seeks dismissal of the second and third causes of action on the grounds that the statute of limitations bars both of them, and the rescission and unjust enrichment claims fail to state a cause of action.

For the second cause of action, plaintiffs allege that the services that the KPMG Defendants provided to them were deficient, inadequate, not competent, and fell below the standard of care to be exercised by accountants engaged to provide tax advice and similar services. For the third cause of action, plaintiffs allege that the KPMG Defendants have been unjustly enriched by collecting fees that were excessive and improper, and, therefore, plaintiffs are entitled to rescind the agreement to pay them $475,000, and to recoup that amount, plus any additional amounts that the KPMG Defendants may have received.

KPMG argues that the parties executed the BLIPS transaction between June and September 2000, and that KPMG gave Tayebi an opinion letter on October 29, 2000. Therefore, the claim for malpractice became barred three years later, on October 29, 2003. Plaintiffs filed the complaint, however, on April 23, 2007. KPMG argues that, although Tayebi may not have discovered the alleged malpractice until sometime thereafter, the period within which to have commenced an action as to this claim began to run when KPMG

7

delivered the work product.

Plaintiffs contend that KPMG's continuous representation tolled the statute of limitations period. Allegedly, after KPMG issued its opinion to Tayebi, it continued to advise Tayebi regarding the BLIPS transaction through July 15, 2003. Thus, the three-year statute could not have started to run until July 15, 2003. In addition, the parties entered into a "Tolling Agreement" on April 26, 2005, whereby they agreed that, as of that date, any of Tayebi's claims were tolled so as to permit the parties an opportunity to resolve their issues. The tolling period expired in December 2007, after plaintiffs commenced this action.

KPMG responds that the parties' BLIPS engagement letter, dated June 19, 2000 (Engagement Letter), contemplated that it would not provide any services after delivery of the opinion letter in October 2000, and that the Engagement Letter explicitly states that KPMG's representation of plaintiffs regarding the BLIPS transaction terminated upon delivery of KPMG's opinion letter.

The statute of limitations for accountant malpractice is three years, and a claim accrues when the accountant commits the alleged malpractice, and not upon the client's discovery of it (*Williamson v PricewaterhouseCoopers LLP*, 9 NY3d 1 [2007]). The statute may be tolled, however, under the doctrine of continuous representation, which is applicable to cases involving accountants, and it is based upon continuous treatment jurisprudence, first recognized in medical malpractice cases (*id.* at 5). Under this doctrine, when the course of treatment, which includes the wrongful acts or omissions, has run continuously, and is related to the same original condition or complaint, then the limitations period does not begin to run until the termination of the treatment (*id.*). In the accounting context, the mere

8

recurrence of professional services does not constitute continuous representation where the later services performed were not related to the original services (*Booth v Kriegel*, 36 AD3d 312, 314 [1st Dept 2006]). Plaintiffs have the burden of demonstrating that the continuous representation doctrine applies (*CLP Leasing Co. v Nessen*, 12 AD3d 226 [1st Dept 2004]).

KPMG rests its argument on the Engagement Letter, stating that it expressly contemplates that it would not provide any services to plaintiffs after delivery of the opinion letter in October 2000, and that KPMG's representation of plaintiffs regarding the BLIPS transaction terminated upon delivery of KPMG's opinion letter. On this basis alone, KPMG's motion must be denied, because, fairly read, rather than providing for the cessation of services relating to BLIPS, the Engagement Letter has language indicating that the parties may have contemplated further services pertaining to the BLIPS transaction. KPMG mischaracterizes the import of the letter by asserting that the Engagement Letter "explicitly states that KPMG's representation of Plaintiffs would be completed upon delivery of KPMG's opinion letter" (Reply Memorandum, at 3). It contains no such statement.

The Engagement Letter provides that KPMG will provide the following services regarding plaintiffs' involvement in the Investment Program: (1) "Meet with you to discuss the U.S. federal income tax implications associated with participation in the Investment Program," and (2) "Provide Client with an opinion letter that addresses the U.S. federal income tax consequences associated with participation in the Investment Program based upon your unique facts and circumstances." Hence, KPMG contractually agreed to meet with Tayebi to "discuss the U.S. federal income tax implications associated with participation in the Investment Program." Moreover, the Engagement Letter notes that the

9

law is "subject to change, retroactively and/or prospectively," and, therefore, "[u]nless you specifically engage us do so in writing, we will not update our advice for subsequent changes or modifications to the law and regulations, or to the judicial and administrative interpretations thereof." Thus, it appears that it was only as to updates about changes in the law and regulations that KPMG was excluding from its future services. This hardly indicates an intent by KPMG to dissociate itself from plaintiffs' BLIPS transaction. The intent of the Engagement Letter raises a significant factual issue, because the nature and scope of the Engagement Letter plays a key role in determining whether the parties contemplated continuous representation (*Williamson v PricewaterhouseCoopers LLP*, 9 NY3d at 10).

Moreover, according to plaintiffs, KPMG provided an invoice to Tayebi, dated August 7, 2003, for "Professional services rendered through July 15, 2003" for the following services: "Review correspondence from attorney, respond to attorney request for information to respond to IDR request, issues regarding asserting privilege, and initial meeting with IRS regarding initial settlement initiative." Contrary to KPMG's assertion, that Tayebi paid an additional amount for these services does not negate a finding of continuous representation, and cause it to be a "new engagement." The issue is not whether it is a "new engagement," but whether the later services performed were related to the original services (*see Shumsky v Eisenstein*, 96 NY2d 164, 168 [2001] [the concern is not whether there has been continuing treatment, and not mere a continuing relationship]). To be sure, plaintiffs' evidence is not conclusive as to this issue, but it is sufficient to raise an issue of fact as to the nature and timing of the services that KPMG may have performed on plaintiffs' behalf.

KPMG next argues that the rescission and unjust enrichment claims fail, because they are duplicative of the malpractice claim, in that they arise out of the same facts, and they do not seek damages distinct from one another. This assertion is unpersuasive. In the malpractice claim, plaintiffs contend that KPMG's failure to provide adequate accounting services caused it damages totaling $4 million, representing a portion of Tayebi's tax liability, whereas, in the rescission and unjust enrichment claims, plaintiffs seek to recoup the professional fees paid to KPMG in the amount of $437,500.

KPMG also argues that plaintiffs cannot satisfy an essential element of an unjust enrichment claim, because it has not retained the fees that plaintiffs paid, and, therefore, it has not been enriched. As a result of KPMG's tax shelter activities, it and the United States government entered into the Deferred Prosecution Agreement, which required KPMG to disgorge to the government the fees that plaintiffs paid. This assertion, too, is unpersuasive.

Unjust enrichment occurs when a defendant enjoys a benefit bestowed by the plaintiff without adequately compensating the plaintiff (*Sergeants Benevolent Assn. Annuity Fund v Renck*, 19 AD3d 107 [1st Dept 2005]). That KPMG disgorged the fees does not render the claim a nullity, because KPMG had the use of the money, and the manner in which it used the funds is inconsequential for the unjust enrichment claim. Moreover, KPMG obtained a benefit from the use of these fees by exchanging them for consideration offered by the government.

Thus, KPMG's citation to decisions such as *Apollon Waterproofing & Restoration Corp. v Bergassi* (241 AD2d 347 [1st Dept 1997]) is unpersuasive, because in that action the defendants "had returned the subject funds to the underwriter of the performance and

payment bonds, and therefore did not retain any benefit unjustly" (*id.* at 348). Furthermore, KPMG's assertion that the United States government views itself as the victim of KPMG's scheme fails to take into account the underlying premise of the complaint here, that plaintiffs are the victims of defendants' wrongdoing.

### Motion 002

As against HVB, the complaint alleges fraud and civil conspiracy (first cause of action), and unjust enrichment (fifth cause of action). HVB moves for dismissal of these claims on the grounds of a defense founded upon documentary evidence, statute of limitations, failure to state a cause of action, and failure to plead the fraud claims with sufficient particularity. Of these grounds, the defense of statute of limitations is dispositive in HVB's favor.

HVB argues that plaintiffs failed to file their complaint within six years of the alleged fraudulent representations. According to plaintiffs, Rivkin and KPMG made various misrepresentations and failed to disclose certain facts in December 1999 and early 2000 to induce Tayebi to invest in BLIPS in mid-2000. Thus, at the latest, the statute of limitations began to run on July 26, 2000. However, plaintiffs failed to file their complaint within six years, i.e., by July 25, 2006.

HVB also asserts that, as to plaintiffs' claims against HVB-AG, but not the other HVB entities, the statute of limitations was tolled for a period of 6-1/2 months, because HVB-AG was named as a defendant in a class action entitled *Becenel v KPMG*, No. 2005-18 (Clark County, Ark 2005]). That toll lasted from January 28, 2005, when the class action complaint was filed, to August 9, 2005, when the federal court, to which the action had been

12

removed, denied a motion for class certification. Hence, the toll lasted just under the 6-1/2 months, and expired six years and 6-1/2 months after it began to accrue on or before July 26, 2000, i.e., in early March 2007. Plaintiffs commenced this action on April 23, 2007.

Plaintiffs argue that the fraud and civil conspiracy claims are timely under New York's discovery rule, because the earliest that they could have discovered HVB's fraud was on February 14, 2006, the date of HVB's Deferred Prosecution Agreement. They argue further that the fraud could not have been known earlier, because KPMG and the other defendants continued to advise and assure them that BLIPS was a valid strategy. Moreover, KPMG's Deferred Prosecution Agreement did not name HVB, nor did it reveal HVB's fraud.

According to HVB, the two-year discovery rule (CPLR 213 [8]) does not help plaintiffs, because plaintiffs' own allegations reveal that they had knowledge of sufficient facts to trigger inquiry notice of potential fraud. This is because plaintiffs allege that, as early as 2002, KPMG advised Tayebi of IRS Announcement 2002-2, which encouraged taxpayers to voluntarily disclose tax shelters reported on their tax returns. Thus, even while applying the two-year discovery rule, the fraud claim is time-barred.

An action alleging a cause of action for fraud must be commenced within six years from the time of the fraud or within two years from the time the fraud was discovered or, with reasonable diligence, could have been discovered (*St. Clement v Londa*, 8 AD3d 89 [1st Dept 2004]). CPLR 213 (8) provides:

> "8. an action based upon fraud; the time within which the action must be commenced shall be the greater of six years from the date the cause of action accrued or two years from the time the plaintiff or the person under whom the plaintiff claims discovered the fraud, or could with reasonable diligence have discovered it."

Contrary to plaintiffs assertion, the cause of action for fraud accrued at the time that plaintiffs entered into the BLIPS transaction (*see Fandy Corp. v Lung-Fong Chen*, 262 AD2d 352 [2d Dept 1999]). As for the two-year discovery rule, even without more, the IRS announcement should have been sufficient to put plaintiffs on inquiry notice of the existence of problems with the BLIPS transaction (*see Sheth v New York Life Ins. Co.*, 308 AD2d 387 [1st Dept 2003]; *Weisl v Polaris Holding Co.*, 226 AD2d 286 [1st Dept 1996]). The "more" includes media coverage about KPMG's BLIPS transactions which contributed to inquiry notice (*Gaslow v QA Invs. LLC*, 36 AD3d 286 [1st Dept 2006]) as well as similar lawsuits (*Weiss v La Suisse, Societe D'Assurrances Sur La Vie*, 381 F Supp 2d 334 [SD NY 2005]) (*see e.g.* Exhibits 22-29 of Affidavit of Sarah E. O'Connell, Esq.). Although plaintiffs argue that they had no reason to question their "trusted advisor," KPMG, an objective test is applied to determine when, with reasonable diligence, the plaintiff should have discovered the fraud (*K&E Trading & Shipping v Radmar Trading Corp.*, 174 AD2d 346 [1st Dept 1991]).

As for the conspiracy component, there is no independent cause of action for this claim in New York (*Burns Jackson Miller Summit & Spitzer v Lindner*, 88 AD2d 50 [2d Dept 1982], *affd* 59 NY2d 314 [1983]), but allegations of conspiracy are permitted to the extent of connecting the actions of separate defendants with an actionable injury, and to show that the actionable acts flowed from a common plan (*SRW Assoc. v Bellport Beach Prop. Owners*, 129 AD2d 328 [2d Dept 1987]). Therefore, because the fraud claim is time-barred, the conspiracy claim is also time-barred, because it is part of the same fraud cause of action.

The unjust enrichment claim is time-barred, in that it has a six-year limitations period

(CPLR 213; *Insurance Co. State of Pa. v HSBC Bank USA*, 37 AD3d 251 [1st Dept 2007]),

which expired in 2006, six years after Tayebi entered into the BLIPS transaction, and prior

to the commencement of this action. Plaintiffs' attempt to apply the two-year discovery rule

is unpersuasive for two reasons: (1) that rule pertains to fraud claims (CPLR 213 [8]), and

(2) as discussed above, even if applicable, the claim would, nevertheless, be time-barred.

Lastly, plaintiffs argue that, by concealing material facts, HVB is equitably estopped

from arguing that plaintiffs' claims are time-barred. Under this doctrine, a defendant is

estopped from pleading a statute of limitations defense if fraud, misrepresentation, or

deception induced the plaintiff to refrain from filing a timely action (*Ross v Louise Wise*

*Servs. Inc.*, 8 NY3d 478, 491 [2007]). The party relying upon equitable estoppel must show

(1) lack of knowledge, (2) reliance upon the conduct of the party to be estopped, and (3) a

prejudicial change in position (*Broadworth Realty Assocs. v Chock 336 B'way Operating*,

168 AD2d 299 [1st Dept 1990], *appeal denied* 77 NY2d 808 [1991]). For the doctrine to

apply, however, the plaintiff may not rely on the same act that forms the basis for the claim

– the later fraudulent misrepresentation must be for the purpose of concealing the former tort

(*Ross v Louise Wise Servs. Inc.*, 8 NY3d at 491). Based on the foregoing, it is evident that

such is not the case here, in that there are no allegations tending to support this theory.

**Motion 006**

As against Presidio, the complaint alleges fraud and civil conspiracy (first cause of

action) and rescission and unjust enrichment (fourth cause of action).

Presidio moves to dismiss the complaint on the grounds of a forum selection clause,

statute of limitations and failure to state a cause of action. As for statute of limitations,

15

Presidio incorporates the arguments made by HVB. In addition, Presidio contends that, by bringing this action, plaintiffs have violated a forum selection clause in their agreement with it.

Presidio argues that the parties' "Subscription Agreement" contains a forum selection clause that designates the Northern District of California as the exclusive forum for any dispute brought by plaintiffs against Presidio, and therefore, plaintiffs are barred from maintaining this action. I reject this argument for the same reasons as set forth in the decision in the *Salam* Action (13 Misc 3d 1205 [A] [Sup Ct, NY County 2006], 2006 NY Slip Op. 51697 [U], *affd* 43 AD3d 752 [1st Dept 2007]).

As for the statute of limitations defense, Presidio adopts HVB's arguments, and, for the reasons discussed above, these arguments are persuasive. Although the complaint does not allege rescission as against HVB, that claim is subject to the same six-year period as unjust enrichment (*Percoco v Lesnak*, 24 AD3d 427 [2d Dept 2005]), and the same analysis, set forth above in motion 002, applies. Thus, as against Presidio, the complaint is dismissed.

Accordingly, it is

ORDERED that the motion by KPMG LLB (sequence number 001) is denied; and it is further

ORDERED that KPMG LLP is directed to serve its answer to the complaint within 20 days after service of a copy of this order with notice of entry; and it is further

ORDERED that the motion by Bayerische Hypo- und Vereinsbank AG, HVB U.S. Finance Inc., HVB Structured Finance Inc., HVB Risk Management Products Inc., and HVB America, Inc. (sequence number 002) is granted and, as against these defendants, the

16

complaint is severed and dismissed, with costs and disbursements to them as taxed by the Clerk of the Court; and it is further

ORDERED that the motion by Presidio Advisory Services, LLC, Presidio Growth, LLC, and Presidio Resources, LLC (sequence number 006) is granted and, as against these defendants, the complaint is severed and dismissed, with costs and disbursements to them as taxed by the Clerk of the Court; and it is further

ORDERED that the Clerk is directed to enter judgment accordingly; and it is further

ORDERED that the remainder of the action shall continue.

Dated:

2/20/08

ENTER:

_____
J.S.C.

HON. BERNARD J. FRIED

FILED

FEB 20 2008

NEW YORK
COUNTY CLERK'S OFFICE

17