# EXHIBIT 1

Deutsche Banc Alex. Brown

**Deutsche Bank** ▧

# Account Agreement

| | |
|---|---|
| **V1 INVESTMENTS LLC** | |
| Name(s) | |

**DB Alex. Brown LLC**
P.O. Box 515
Baltimore, MD 21203

| | |
|---|---|
| ATTN: BILL P. TSOURAPAS | |
| Address | |
| 1301 WEST 22ND STREET, SUITE 615 | |
| OAK BROOK, IL 60523 | |
| City | |

*223-78585*

Account Number

---

**IMPORTANT: PLEASE SIGN AND RETURN THIS ACCOUNT AGREEMENT IN THE ENCLOSED ENVELOPE.**

In consideration of DB Alex. Brown LLC (referred to herein as "Deutsche Banc Alex. Brown") accepting the Account(s) of the Undersigned, and agreeing to act as my broker, I agree to the following with respect to each of My Account(s) with you, in which I currently or in the future have an interest, for the extension of credit or the purchase or sale of securities, options or other property. Throughout this Agreement, "I," "me," "my," "we" and "us" and "the undersigned" refer to the person(s) whose signature(s) appear(s) below and all others who are legally obligated on this account. "Account(s) of the Undersigned" and "My Account(s)" shall mean each and every account in the name of the undersigned and each and every account in which the undersigned may have an interest. "You" and "your" refer to DB Alex. Brown LLC, its subsidiaries, affiliates, officers, directors, agents and employees. DB Alex. Brown LLC is a subsidiary of Deutsche Bank AG. As used herein, the term "affiliate of Deutsche Bank" means Deutsche Bank AG and its subsidiaries and affiliates. Each of Deutsche Bank and its affiliates is a separately incorporated legal entity, none of which is responsible for the obligations of the others. "Securities and Other Property" shall include, but shall not be limited to, money and securities, financial instruments, commodities of every kind and nature, and all contracts and options relating to any thereof (whether for present or future delivery), owned by the undersigned or in which the undersigned has an interest. Where the context requires, the singular shall be plural and the plural shall be singular.

1. **Representations**

   Unless I have advised you otherwise in writing, I represent that I am of legal age, that I am not an employee or member of any securities exchange (or corporation of which any exchange owns a majority of the capital stock), the National Association of Securities Dealers, Inc., or of any broker-dealer, nor am I a senior officer of any bank, savings and loan institution, insurance company, registered investment company, registered investment advisory firm or institution that purchases securities, nor am I a member of the immediate family of such a person. I further represent that I am financially capable of satisfying any obligations undertaken through My Account(s) and that no one except the persons named on the account(s) has any interest in the account(s). I will promptly notify you in writing if any of the above circumstances change. I acknowledge that the purchase and sale of securities entails substantial economic risk, and I represent to you that I knowingly and willingly assume such risk.

2. **Applicable Rules and Regulations**

   All transactions in My Account(s) shall be subject to the constitution, rules, regulations, customs and usages of the exchange or market, and its clearing house, if any, where the transactions are executed. Transactions shall also be subject to the provisions of federal and state securities laws, as amended, and to the rules and regulations of the Securities and Exchange Commission and the Board of Governors of the Federal Reserve System. You shall not be liable for any loss caused directly or indirectly by your compliance with such rules or regulations or by government restrictions, exchange or market rulings, suspension of trading, war, or other conditions beyond your control.

3. **Confirmations, Statements and Written Communications**

   I agree to notify you in writing, within ten (10) days of your sending me a confirmation, of any objection I have to any transaction in My Account(s). In the absence of such written notification, I agree that all transactions for My Account(s) will be final and binding on me. Confirmations of transactions, as well as other communications, may be sent to the address I provided to you or to such other address I may hereafter give to you in writing, and all communications so sent, whether by mail, private carrier, facsimile, messenger or otherwise, shall be deemed given to me, whether actually received or not. Unless I advise you in writing to the contrary, you may disclose my name and address to the issuers of securities which you hold for me.

4. **Aggregation of Orders and Average Prices**

   I authorize you, at your discretion, to aggregate orders for My Account(s) with other customer orders. I recognize that in so doing, I may receive an average price for my orders which may be different from the price(s) I might have received had my orders not been aggregated. I understand that this practice may also result in my orders being only partially completed.

5. **Cash Accounts.**

   This paragraph relates to and is effective solely with respect to cash accounts: (i) The undersigned will promptly make full cash payment for each security purchased, unless funds sufficient therefor are already held in the account; (ii) the undersigned does not contemplate selling any security before it is paid for as provided in the preceding clause; (iii) the undersigned will own each security sold at the time of sale, and, unless such security is already held in the account, will promptly deliver such security thereto; and (iv) the undersigned will promptly make full cash payment of any amount which may become due in order to meet necessary requests for additional deposits or, with respect to any unissued security purchased or sold, to mark to the market.

6. **Short and Long Orders; Deliveries and Settlements**

   I agree that, in giving orders to sell, all "short" sales will be designated by me as "short" and all other sales will be designated by you as "long." "Short sale" means any sale of a security not owned by me or any sale that is consummated on settlement date by delivery of a borrowed security. I also agree that you may, at your discretion, immediately cover any short sales in My Account(s), without prior notice. My failure to designate a sale order as "short" is a representation on my part that I own the security free of restriction, and if the security is not in my possession at the time of the sale, I agree to deliver the security to you by settlement date. In case of non-delivery of a security, you are authorized to purchase the security to cover my position and charge any loss, commissions and fees to My Account(s). I agree that if you fail to receive payment for securities I have purchased you may, without prior demand or notice, sell those securities or other property held by you in any of My Account(s)s with you and any loss resulting therefrom will be charged to such account(s). I authorize you, at your discretion, to request and obtain extension(s) of my time to make payment for securities I purchase, as provided for by Federal Reserve Bank Regulation T.

AA2 (12/99)

**7. Authority to Borrow**

In case of the sale of any security or other property by you at my direction and your inability to timely deliver the same to the purchaser by reason of my failure to supply you therewith, I authorize you to purchase or borrow any security or other property necessary to make the required delivery, and I agree to be responsible for any loss or cost, including interest, which you sustain as a result of my failure to make delivery to you.

**8. Interest Charges**

I acknowledge that debit balances in my cash or margin account, including but not limited to those arising from my failure to make payment by settlement date for securities purchased, will be charged interest at the then current rate, in accordance with your usual custom. Interest will be computed on the net daily debit balance, which is computed by combining all debit balances and credit balances in each account with the exception of credit balances associated with short security positions. I acknowledge receipt of your statement regarding interest charges and that you may charge an account maintenance fee with respect to inactive accounts.

**9. Credit Information and Investigation**

I authorize you to obtain reports concerning my credit standing and business conduct at your discretion. I also authorize you and any affiliate of Deutsche Bank (including, without limitation, Deutsche Bank AG) to share among such affiliates such information and any other confidential information you and such affiliate(s) may have about me and My Account(s).

**10. Satisfaction of Indebtedness**

I agree to satisfy, upon demand, any indebtedness, including any interest and commission charges. I further agree to pay the reasonable costs and expenses of collection of any amount I owe you, including reasonable attorney's fees and court costs.

**11. Liens**

I hereby grant to you and all affiliates of Deutsche Bank AG a security interest in all securities and other property in your possession or in the possession of any of your affiliates in which I have an interest in order to secure any and all indebtedness or any other of my obligations to you or any affiliate of Deutsche Bank AG. All such securities and other property shall be held as security for the payment of any such obligations or indebtedness in any account with you in which I have an interest and you may, in your discretion, at any time and without prior notice, sell and/or transfer any or all securities and other property in order to satisfy such obligations. In enforcing this lien, you shall have the discretion to determine which securities and property are to be sold and/or which contracts are to be closed.

**12. Margin Maintenance, Calls for Additional Collateral, Liquidations and Covering Short Positions**

If I engage in margin transactions, I will maintain such securities and other property in My Account(s) for margin purposes as you shall require from time to time in your sole discretion for any reason whatsoever. You shall have the right in accordance with your general policies regarding margin maintenance requirements, as such may be modified or amended from time to time, to require additional collateral or the liquidation of any securities and other property whenever in your sole discretion you consider it necessary for your protection. You may do so under circumstances which include, but are not limited to, the failure to promptly meet any call for additional collateral, the filing of a petition in bankruptcy, the appointment of a receiver by or against me or the attachment or levy against any account with you in which I have an interest. In such event, you are authorized to sell any and all securities and other property in any of My Account(s) with you (whether carried individually or jointly with others, to buy all securities or other property which may be short in such account, to cancel any open orders and to close any or all outstanding contracts, all without demand for margin or additional margin, notice of sale or purchase, or other notice or advertisement, each of which is expressly waived. Any such sales or purchases may be made at your discretion on any exchange or other market where such business is usually transacted or at public auction or private sale, and you may be the purchaser for your own account. I understand that any prior demand, or call, or prior notice of the time and place of such sale or purchase shall not be considered a waiver of your right to sell or buy without demand or notice as provided herein.

**13. Loan or Pledge of Securities and Other Property**

Within the limitations imposed by applicable law, all securities and other property now or hereafter held, carried or maintained by you in your possession that have not been fully paid for or are held in a margin account may be lent, either to yourself or to others, pledged and repledged by you, without notice to me, either separately or in common with other securities and other property of your other customers for any amount due in any account with you in which I have an interest, or for any greater amount, and you may do so without retaining in your possession or control for delivery a like amount of similar securities or other property. I understand that while securities held for My Account(s) are loaned out, I will lose voting rights attendant to such securities.

**14. Correspondent Account; No Agency**

If My Account(s) has been introduced to you by arrangement with another broker-dealer, you are authorized to accept from such other broker-dealer, without inquiry or investigation by you (i) orders for the purchase or sale of securities or other property for My Account(s), on margin or otherwise, and (ii) any other instructions concerning My Account(s). I understand and agree that such other broker-dealer is not your agent and that you shall have no responsibility or liability to me for any acts or omissions of such other broker-dealer, its officers, employees or agents.

**15. Joint Accounts**

If this is a Joint Account, we agree that each of us shall have authority with respect to this account to deal with you as if each of us alone were the account owner, all without notice to the other account owner(s). We agree that notice to any account owner shall be deemed to be notice to all account owners. Each account owner shall be jointly and severally liable for this account. You may follow the instructions of any of us concerning this account and make deliveries to any of us, of any or all property and payment, even if such deliveries and/or payments shall be made to one of us personally, and not to all of the account owners. You shall be under no obligation to inquire into the purpose of any such demand for delivery of securities or payment, and you shall not be bound to see to the application or disposition of the securities and/or monies so delivered or paid to any of us. Notwithstanding the foregoing, you are authorized, in your discretion, to require joint action by all of the account owners with respect to any matter concerning the account, including the giving or cancellation of orders and the withdrawal of monies, securities or other property. We agree that our account will be carried on your books in the form reflected by the above account name. In the event of the death of any of us, the survivor(s) shall immediately give you written notice thereof, and you may, before or after receiving such notice, take such action, require such documents, retain such securities and/or restrict transactions in the account as you may deem advisable to protect you against any tax, liability, penalty or loss under any present or future laws or otherwise. Any cost resulting from the death of any of us, or through the exercise by any decedent's estate or representatives of any rights in the account shall be chargeable against the interest of the survivor(s) as well as against the interest of the estate of the decedent.

**16. Foreign Securities**

With respect to debt or equity securities of non-U.S. issuers or debt or deposit instruments of non-U.S. banks ("Foreign Securities"), I acknowledge and understand that: (i) Foreign Securities are, in most cases, not registered with the Securities and Exchange Commission or listed on a U.S. securities exchange; (ii) Foreign Securities, particularly those of issuers in the so-called "emerging markets" are often illiquid, are sometimes subject to legal and/or contractual transfer restrictions, and it may be difficult or impossible to dispose of such Foreign Securities prior to the maturity thereof or to determine the market price thereof for valuation purposes; (iii) Foreign Securities, and the issuer, guarantors or other obligors with respect thereto ("Obligors") are subject to a variety of risks in addition to those typically faced in the case of U.S. securities and issuers, including, among other things, currency risk, exchange controls, confiscatory taxation, withholding, limitations on the rights of security holders, civil unrest, hyperinflation, discriminatory treatment of foreign investors, etc.; (iv) there is often less information available regarding Obligors, and such information may be more difficult to interpret, than is the case with U.S. issuers whose securities are subject to the periodic reporting requirements under U.S. securities laws; (v) there may be no effective means to determine if an Obligor is in default of its obligations in respect of its debt securities or other financial obligations (and you specifically acknowledge that Foreign Securities purchased by you may be in default at the time of purchase); (vi) the Foreign Securities in question may be unrated; and (vii) such securities are not suitable for all investors.

I authorize Deutsche Banc Alex. Brown to purchase Foreign Securities (and, in the case of Foreign Securities denominated in foreign currencies, the relevant foreign currencies) from or sell Foreign Securities (and foreign exchange) to an affiliate of Deutsche Bank AG. In dealing with such affiliates, such affiliates may take their normal commissions, spreads or other fees without regard to Deutsche Banc Alex. Brown's relationship with me.

**17. Acknowledgment of Possible Conflicts of Interest**

I acknowledge that the advice provided to me by your employees may differ from the advice or the timing or nature of action recommended by or taken by other individuals or groups at Deutsche Banc Alex. Brown and/or affiliates of Deutsche Bank AG, whether acting as principal or agent. I understand that you provide investment advice, portfolio management and execution services for many clients and, in addition, act as principals in various markets. Given these different roles, individuals and groups at Deutsche Banc Alex. Brown and affiliates of Deutsche Bank AG are seldom of one view as to an investment strategy and will often pursue differing or conflicting strategies. Your employees shall have no obligation to recommend to me or inform me of strategies being pursued by you or by other clients. I also acknowledge that: Deutsche Banc Alex. Brown and affiliates of Deutsche Bank AG may perform services for or solicit business from issuers whose securities are recommended by your employees; Deutsche Banc Alex. Brown and affiliates of Deutsche Bank AG may be paid fees by Registered Investment Companies or other investment vehicles, including without limitation fees for acting as investment advisor, administrator, custodian and transfer agent; and Deutsche Banc Alex. Brown and affiliates of Deutsche Bank AG act as brokers, principals, and/or market makers in certain markets and may do so in transactions with me.

**18. No FDIC Insurance, Not Obligations of Any Bank**

I understand that the assets in My Account(s) are subject to the risk of partial or total loss due to market fluctuations or the insolvency of the issuer(s).

The assets in My Account(s) (including all related cash balances and shares of any mutual fund) are not deposits or other obligations of Deutsche Bank AG or any other bank, are not guaranteed by Deutsche Bank AG and are not insured by the Federal Deposit Insurance Corporation ("FDIC").

I may from time to time be offered investment products as to which Deutsche Bank AG is an obligor. These products may be complex, may not provide for the return of the full amount of principal invested or for the payment of a fixed rate of interest (or any interest) and will not usually be subject to FDIC insurance. I will assume they are not subject to FDIC insurance and that such products may not be protected as to principal or interest unless Deutsche Bank AG states in writing that a particular product is subject to FDIC insurance.

**19. Arbitration**

I understand that: (1) Arbitration is final and binding on the parties. (2) The parties are waiving their right to seek remedies in court, including the right to jury trial. (3) Pre-arbitration discovery is generally more limited than and different from court proceedings. (4) The arbitrators' award is not required to include factual findings or legal reasoning and any party's right to appeal or to seek modification of rulings by the arbitrators is strictly limited. (5) The panel of arbitrators would typically include a minority of arbitrators who were or are affiliated with the securities industry.

I agree to arbitrate with you any controversies which may arise, whether or not based on events occurring prior to the date of this agreement, including any controversy arising out of or relating to any account with you, to the construction, performance or breach of any agreement with you, or to transactions with or through you, only before the New York Stock Exchange or the National Association of Securities Dealers Regulation, Inc., at my election. I agree that I shall make my election by registered mail to you, at P.O. Box 515, Baltimore, MD 21202, Attention Director of Compliance. If my election is not received by you within ten (10) calendar days of receipt of a written request from you that I make an election, then you may elect the forum before which the arbitration shall be held.

Neither you nor I waive any right to seek equitable relief pending arbitration. No person shall bring a putative or certified class action to arbitration, nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action; or who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the putative class action until (1) the class certification is denied; or (2) the class is decertified; or (3) the customer is excluded from the class by the court. Such forbearance to enforce an agreement to arbitrate shall not constitute a waiver or any rights under this agreement except to the extent stated herein.

**20. Miscellaneous**

This Agreement shall be binding upon my heirs, executors, administrators, personal representatives and permitted assigns. It shall inure to the benefit of your successors and assigns to whom you may transfer My Account(s). This Agreement contains the entire understanding between us concerning the subject matter of this Agreement. I agree that Deutsche Banc Alex. Brown has the right to amend this Agreement at any time by sending written notice of such amendment to me. Any such amendment shall be effective as of the date established by Deutsche Banc Alex. Brown. If any provision of this Agreement is held to be invalid, void or unenforceable by reason of any law, rule, administrative order or judicial decision, that determination shall not affect the validity of the remaining provisions of this Agreement. This Agreement shall be deemed to have been made in the State of New York and shall be construed, and the rights of the parties determined, in accordance with the laws of the State of New York and the United States, as amended, without giving effect to the choice of law or conflict-of-laws provisions thereof.

**21. Paragraph Headings**

Paragraph headings are for convenience only and shall not affect the meaning or interpretation of any provision of this Agreement.

**Please Complete 22a or 22b as applicable.**

**22a. Certification — Taxpayer Identification Number**

**Certification Instructions:** I will cross out item (2) below if I have been notified by the IRS that I am currently subject to backup withholding because I have failed to report all interest and dividends on my tax return. If I am exempt from backup withholding, I will write the word "Exempt" here: _____ (For further information, see "Payees and Payments Exempt from Backup Withholding" on IRS Form W-9, a copy of which can be obtained from a Deutsche Banc Alex. Brown Investment Representative.)

**Under penalties of perjury, I certify that:** (1) The number shown on this form is my correct Taxpayer Identification Number (or I am waiting for a number to be issued to me), and (2) I am not subject to backup withholding because (a) I am exempt from backup withholding or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest and dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding.

BY SIGNING BELOW I ACKNOWLEDGE THAT I HAVE RECEIVED, READ AND AGREE TO THE TERMS OF THIS AGREEMENT.

The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding. If this is a Joint Account, all account owners must sign.

I ACKNOWLEDGE THAT MUTUAL FUNDS AND OTHER SECURITIES ARE NOT INSURED BY THE FDIC, ARE NOT DEPOSITS OR OTHER OBLIGATIONS OF, OR GUARANTEED BY, ANY BANK, AND ARE SUBJECT TO INVESTMENT RISK INCLUDING POSSIBLE LOSS OF THE PRINCIPAL INVESTED.

THIS AGREEMENT CONTAINS A PRE-DISPUTE ARBITRATION CLAUSE AT PARAGRAPH 19.

Signature _____ Member ___ Date 11/2/00

Social Security or Employer ID No. ___ 36-4400342 _____

Signature _____ Date ___

Social Security or Employer ID No. _____

Signature _____ Date ___

Social Security or Employer ID No. _____

**22b. Certification — Non-U.S. Resident**

Permanent Residence Address: _____

_____

Type of Beneficial Owner: _____

Country of Incorporation or Organization: _____

By signing below, I hereby certify under penalties of perjury, (1) that (a) I am the beneficial owner of all the income earned in My Account(s), (b) I am neither a citizen nor a resident of the U.S. (and I have not made an election to be treated as a resident because of my marriage to a citizen or resident), (c) I have not been and do not intend to be present in the U.S. for 183 days or more during any calendar year in which this Agreement is in effect, and (d) I am not a former citizen or long-term resident of the United States subject to section 877 (relating to certain acts of expatriation) or (2) if signing on behalf of a corporation, partnership, trust or estate, that I am authorized to sign for the payee named on My Account(s) and such payee (a) is the beneficial owner of all the income earned in My Account(s) and (b) is not a United States person and (3) that in either case, I am neither engaged, nor expect to be, or any such named payee is not and does not expect to be, engaged during the year, in a U.S. trade or business that has effectively connected income from transactions within My Account(s).

In addition, if I, or any such named payee, is claiming a United States tax treaty benefit, I hereby certify, under penalties of perjury, that I, or any such named payee, is a resident of _____ within the meaning of the income tax treaty between the United States and that country. If required, a U.S. Taxpayer Identification Number is included above. I also certify under penalties of perjury that the named payee meets the requirements of the article in the applicable treaty dealing with limitations on benefits, if any, and derives the income for which the treaty benefits are claimed.

Under penalties of perjury, I declare that I have examined the information provided for in Paragraph 22b and to the best of my knowledge and belief it is true, correct, and complete.

BY SIGNING BELOW I ACKNOWLEDGE THAT I HAVE RECEIVED, READ AND AGREE TO THE TERMS OF THIS AGREEMENT.

**The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding. If this is a Joint Account, all account owners must sign.**

I ACKNOWLEDGE THAT MUTUAL FUNDS AND OTHER SECURITIES ARE NOT INSURED BY THE FDIC, ARE NOT DEPOSITS OR OTHER OBLIGATIONS OF, OR GUARANTEED BY, ANY BANK, AND ARE SUBJECT TO INVESTMENT RISK, INCLUDING POSSIBLE LOSS OF THE PRINCIPAL INVESTED.

THIS AGREEMENT CONTAINS A PRE-DISPUTE ARBITRATION CLAUSE AT PARAGRAPH 19.

Signature _____  Date _____

Social Security or Employer ID No. _____

Signature _____  Date _____

Social Security or Employer ID No. _____

**PLEASE READ AND SIGN BELOW TO OPEN A MARGIN ACCOUNT.**

I agree to open a margin account with you and acknowledge to you that, in addition to the preceding information, I understand each of the following:

- When I purchase securities on margin, I borrow money from you to finance that purchase; I may also borrow against collateral in my margin account for other purposes.
- I will be obligated to pay interest on all sums I borrow from you.
- I may be required to deliver additional collateral consisting of cash or securities to you to maintain my loan balance, as you require.
- By using a margin account to leverage my investments, I increase my risk of loss.
- Deutsche Banc Alex. Brown will deduct all interest charges from my account.

Deutsche Banc Alex. Brown represents to me that:

- My current margin debit balance will appear on each account statement Deutsche Banc Alex. Brown sends to me.
- Deutsche Banc Alex. Brown will charge me interest on a monthly basis and will disclose on my account statement the interest rate and total interest charge.

By signing below, I authorize you to open and carry a margin account for my benefit, and acknowledge that securities in my account may be loaned to Deutsche Banc Alex. Brown as principal or loaned to others. I also acknowledge that I have received, read and agree to the terms of this Margin Agreement.

I ACKNOWLEDGE THAT MUTUAL FUNDS AND OTHER SECURITIES ARE NOT INSURED BY THE FDIC, ARE NOT DEPOSITS OR OTHER OBLIGATIONS OF, OR GUARANTEED BY, ANY BANK, AND ARE SUBJECT TO INVESTMENT RISK, INCLUDING POSSIBLE LOSS OF THE PRINCIPAL INVESTED.

THIS AGREEMENT CONTAINS A PRE-DISPUTE ARBITRATION CLAUSE AT PARAGRAPH 19.

Signature _____, Member   Date 11/2/00

Signature _____  Date _____

Signature _____  Date _____

Paragraph 22 of this Agreement includes a certification of the Taxpayer Identification Number designated for this account and a representation regarding the applicability of backup withholding. If Deutsche Banc Alex. Brown does not receive this certification, it will be required to withhold a portion of all payments to this account.

FOR OFFICE USE ONLY                    Branch Manager approval for margin accounts:

Signature _____  Date 11/7/00

# EXHIBIT 2

Deutsche Banc Alex. Brown

**Deutsche Bank** 〼

# Account Agreement

| Name(s) | V2 INVESTMENTS LLC |
|---|---|

**DB Alex. Brown LLC**
P.O. Box 515
Baltimore, MD 21203

| Address | ATTN: BILL P. TSOURAPAS |
|---|---|
| | 1301 WEST 22ND STREET, SUITE 615 |
| City | OAK BROOK, IL 60523 |

Account Number

**IMPORTANT:  PLEASE SIGN AND RETURN THIS ACCOUNT AGREEMENT IN THE ENCLOSED ENVELOPE.**

In consideration of DB Alex. Brown LLC (referred to herein as "Deutsche Banc Alex. Brown") accepting the Account(s) of the Undersigned, and agreeing to act as my broker, I agree to the following with respect to each of My Account(s) with you, in which I currently or in the future have an interest, for the extension of credit or the purchase or sale of securities, options or other property. Throughout this Agreement, "I," "me," "my," "we" and "us" and "the undersigned" refer to the person(s) whose signature(s) appears below and all others who are legally obligated on this account. "Account(s) of the Undersigned" and "My Account(s)" shall mean each and every account in the name of the undersigned and each and every account in which the undersigned may have an interest. "You" and "your" refer to DB Alex. Brown LLC, its subsidiaries, affiliates, officers, directors, agents and employees. DB Alex. Brown LLC is a subsidiary of Deutsche Bank AG. As used herein, the term "affiliate of Deutsche Bank" means Deutsche Bank AG and its subsidiaries and affiliates. Each of Deutsche Bank and its affiliates is a separately incorporated legal entity, none of which is responsible for the obligations of the others. "Securities and Other Property" shall include, but shall not be limited to, money and securities, financial instruments, commodities of every kind and nature, and all contracts and options relating to any thereof (whether for present or future delivery), owned by the undersigned or in which the undersigned has an interest. Where the context requires, the singular shall be plural and the plural shall be singular.

1. **Representations**

   Unless I have advised you otherwise in writing, I represent that I am of legal age, that I am not an employee or member of any securities exchange (or corporation of which any exchange owns a majority of the capital stock), the National Association of Securities Dealers, Inc., or of any broker-dealer, nor am I a senior officer of any bank, savings and loan institution, insurance company, registered investment company, registered investment advisory firm or institution that purchases securities, nor am I a member of the immediate family of such a person.  I further represent that I am financially capable of satisfying any obligations undertaken through My Account(s) and that no one except the persons named on the account(s) has any interest in the account(s). I will promptly notify you in writing if any of the above circumstances change. I acknowledge that the purchase and sale of securities entails substantial economic risk, and I represent to you that I knowingly and willingly assume such risk.

2. **Applicable Rules and Regulations**

   All transactions in My Account(s) shall be subject to the constitution, rules, regulations, customs and usages of the exchange or market, and its clearing house, if any, where the transactions are executed.  Transactions shall also be subject to the provisions of federal and state securities laws, as amended, and to the rules and regulations of the Securities and Exchange Commission and the Board of Governors of the Federal Reserve System.  You shall not be liable for any loss caused directly or indirectly by your compliance with such rules or regulations or by government restrictions, exchange or market rulings, suspension of trading, war, or other conditions beyond your control.

3. **Confirmations, Statements and Written Communications**

   **I agree to notify you in writing, within ten (10) days of your sending me a confirmation, of any objection I have to any transaction in My Account(s).  In the absence of such written notification, I agree that all transactions for My Account(s) will be final and binding on me.** Confirmations of transactions, as well as other communications, may be sent to the address I provided to you or to such other address I may hereafter give to you in writing, and all communications so sent, whether by mail, private carrier, facsimile, messenger or otherwise, shall be deemed given to me, whether actually received or not.  Unless I advise you in writing to the contrary, you may disclose my name and address to the issuers of securities which you hold for me.

4. **Aggregation of Orders and Average Prices**

   I authorize you, at your discretion, to aggregate orders for My Account(s) with other customer orders. I recognize that in so doing, I may receive an average price for my orders which may be different from the price(s) I might have received had my orders not been aggregated. I understand that this practice may also result in my orders being only partially completed.

5. **Cash Accounts.**

   This paragraph relates to and is effective solely with respect to cash accounts: (i) The undersigned will promptly make full cash payment for each security purchased, unless funds sufficient therefor are already held in the account; (ii) the undersigned does not contemplate selling any security before it is paid for as provided in the preceding clause; (iii) the undersigned will own each security sold at the time of sale, and unless such security is already held in the account, will promptly deliver such security thereto; and (iv) the undersigned will promptly make full cash payment of any amount which may become due in order to meet necessary requests for additional deposits or, with respect to any unissued security purchased or sold, to mark to the market.

6. **Short and Long Orders; Deliveries and Settlements**

   I agree that, in giving orders to sell, all "short" sales will be designated by me as "short" and all other sales will be designated by you as "long." "Short sale" means any sale of a security not owned by me or any sale that is consummated on settlement date by delivery of a borrowed security.  I also agree that you may, at your discretion, immediately cover any short sales in My Account(s), without prior notice.  My failure to designate a sale order as "short" is a representation on my part that I own the security free of restriction, and if the security is not in your possession at the time of the sale, I agree to deliver the security to you by settlement date.  In case of non-delivery of a security, you are authorized to purchase the security to cover my position and charge any loss, commissions and fees to My Account(s). I agree that if you fail to receive payment for securities I have purchased you may, without prior demand or notice, sell those securities or other property held by you in any of My Account(s)s with you and any loss resulting therefrom will be charged to such account(s).  I authorize you, at your discretion, to request and obtain extension(s) of my time to make payment for securities I purchase, as provided for by Federal Reserve Bank Regulation T.

AA2 (12/99)

**7. Authority to Borrow**

In case of the sale of any security or other property by you at my direction and your inability to timely deliver the same to the purchaser by reason of my failure to supply me therewith, I authorize you to purchase or borrow any security or other property necessary to make the required delivery, and I agree to be responsible for any loss or cost, including interest, which you sustain as a result of my failure to make delivery to you.

**8. Interest Charges**

I acknowledge that debit balances in my cash or margin account, including but not limited to those arising from my failure to make payment by settlement date for securities purchased, will be charged interest at the then current rate, in accordance with your usual custom. Interest will be computed on the net daily debit balance, which is computed by combining all debit balances and credit balances in each account with the exception of credit balances associated with short security positions. I acknowledge receipt of your statement regarding interest charges and that you may charge an account maintenance fee with respect to inactive accounts.

**9. Credit Information and Investigation**

I authorize you to obtain reports concerning my credit standing and business conduct at your discretion. I also authorize you and any affiliate of Deutsche Bank (including, without limitation, Deutsche Bank AG) to share among such affiliates such information and any other confidential information you and such affiliate(s) may have about me and My Account(s).

**10. Satisfaction of Indebtedness**

I agree to satisfy, upon demand, any indebtedness, including any interest and commission charges. I further agree to pay the reasonable costs and expenses of collection of any amount I owe you, including reasonable attorney's fees and court costs.

**11. Liens**

I hereby grant to you and all affiliates of Deutsche Bank AG a security interest in all securities and other property in your possession or in the possession of any of your affiliates in which I have an interest in order to secure any and all indebtedness or any other of my obligations to you or any affiliate of Deutsche Bank AG. All such securities and other property shall be held as security for the payment of any such obligations or indebtedness in any account with you in which I have an interest, and you may, in your discretion, at any time and without prior notice, sell and/or transfer any of all securities and other property in order to satisfy such obligations. In enforcing this lien, you shall have the discretion to determine which securities and property are to be sold and/or which contracts are to be closed.

**12. Margin Maintenance, Calls for Additional Collateral, Liquidations and Covering Short Positions**

If I engage in margin transactions, I will maintain such securities and other property in My Account(s) for margin purposes as you shall require from time to time in your sole discretion for any reason whatsoever. You shall have the right in accordance with your general policies regarding margin maintenance requirements, as such may be modified or amended from time to time, to require additional collateral or the liquidation of any securities and other property whenever in your sole discretion you consider it necessary for your protection. You may do so under circumstances which include, but are not limited to, the failure to promptly meet any call for additional collateral, the filing of a petition in bankruptcy, the appointment of a receiver by or against me or the attachment or levy against any account with you in which I have an interest. In such event, you are authorized to sell any and all securities and other property in any of My Account(s) with you whether carried individually or jointly with others, to buy all securities or other property which may be short in such account, to cancel any open orders and to close any or all outstanding contracts, all without demand for margin or additional margin, notice of sale or purchase, or other notice or advertisement, each of which is expressly waived. Any such sales or purchases may be made at your discretion on any exchange or other market where such business is usually transacted or at public auction or private sale, and you may be the purchaser for your own account. I understand that any prior demand, or call, or prior notice of the time and place of such sale or purchase shall not be considered a waiver of your right to sell or buy without demand or notice as provided herein.

**13. Loan or Pledge of Securities and Other Property**

Within the limitations imposed by applicable law, all securities and other property now or hereafter held, carried or maintained by you in your possession that have not been fully paid for or are held in a margin account may be lent, either to yourself or to others, pledged and repledged by you, without notice to me, either separately or in common with other securities and other property of your other customers for any amount due in any account with you in which I have an interest, or for any greater amount, and you may do so without retaining in your possession or control for delivery a like amount of similar securities or other property. I understand that while securities held for My Account(s) are loaned out, I will lose voting rights attendant to such securities.

**14. Correspondent Account; No Agency**

If My Account(s) has been introduced to you by arrangement with another broker-dealer, you are authorized to accept from such other broker-dealer, without inquiry or investigation by you (i) orders for the purchase or sale of securities or other property for My Account(s), on margin or otherwise, and (ii) any other instructions concerning My Account(s). I understand and agree that such other broker-dealer is not your agent and that you shall have no responsibility or liability to me for any acts or omissions of such other broker-dealer, its officers, employees or agents.

**15. Joint Accounts**

If this is a Joint Account, we agree that each of us shall have authority with respect to this account to deal with you as if each of us alone were the account owner, all without notice to the other account owner(s). We agree that notice to any account owner shall be deemed to be notice to all account owners. Each account owner shall be jointly and severally liable for this account. You may follow the instructions of any one of us concerning this account and make deliveries to any of us, of any or all property and payment, even if such deliveries and/or payments shall be made to one of us personally, and not to all of the account owners. You shall be under no obligation to inquire into the purpose of any such demand for delivery of securities or payment, and you shall not be bound to see to the application or disposition of the securities and/or monies so delivered or paid to any of us. Notwithstanding the foregoing, you are authorized, in your discretion, to require joint action by all of the account owners with respect to any matter concerning the account, including the giving or cancellation of orders and the withdrawal of monies, securities or other property. We agree that our account will be carried on your books in the form reflected by the above account name. In the event of the death of any of us, the survivor(s) shall immediately give you written notice thereof, and you may, before or after receiving such notice, take such action, require such documents, retain such securities and/or restrict transactions in the account as you may deem advisable to protect you against any tax, liability, penalty or loss under any present or future laws or otherwise. Any cost resulting from the death of any of us, or through the exercise by any decedent's estate or representatives of any rights in the account shall be chargeable against the interest of the survivor(s) as well as against the interest of the estate of the decedent.

**16. Foreign Securities**

With respect to debt or equity securities of non-U.S. issuers or debt or deposit instruments of non-U.S. banks ("Foreign Securities"), I acknowledge and understand that: (i) Foreign Securities are, in most cases, not registered with the Securities and Exchange Commission or listed on a U.S. securities exchange; (ii) Foreign Securities, particularly those of issuers in the so-called "emerging markets" are often illiquid, are sometimes subject to legal and/or contractual transfer restrictions, and it may be difficult or impossible to dispose of such Foreign Securities prior to the maturity thereof or to determine the market price thereof for valuation purposes; (iii) Foreign Securities, and the issuer, guarantors or other obligors with respect thereto ("Obligors") are subject to a variety or risks in addition to those typically faced in the case of U.S. securities and issuers, including, among other things, currency risk, exchange controls, confiscatory taxation, withholding, limitations on the rights of security holders, civil unrest, hyperinflation, discriminatory treatment of foreign investors, etc.; (iv) there is often less information available regarding Obligors, and such information may be more difficult to interpret, than is the case with U.S. issuers whose securities are subject to the periodic reporting requirements under U.S. securities laws; (v) there may be no effective means to determine if an Obligor is in default of its obligations in respect of its debt securities or other financial obligations (and you specifically acknowledge that Foreign Securities purchased by you may be in default at the time of purchase); (vi) the Foreign Securities in question may be unrated; and (vii) such securities are not suitable for all investors.

I authorize Deutsche Banc Alex. Brown to purchase Foreign Securities (and, in the case of Foreign Securities denominated in foreign currencies, the relevant foreign currencies) from or sell Foreign Securities (and foreign exchange) to an affiliate of Deutsche Bank AG. In dealing with such affiliates, such affiliates may take their normal commissions, spreads or other fees without regard to Deutsche Banc Alex. Brown's relationship with me.

**17. Acknowledgment of Possible Conflicts of Interest**

I acknowledge that the advice provided to me by your employees may differ from the advice or the timing or nature of action recommended by or taken by other individuals or groups at Deutsche Banc Alex. Brown and/or affiliates of Deutsche Bank AG, whether acting as principal or agent. I understand that you provide investment advice, portfolio management and execution services for many clients and, in addition, act as principals in various markets. Given these different roles, individuals and groups at Deutsche Banc Alex. Brown and affiliates of Deutsche Bank AG are seldom of one view as to an investment strategy and will often pursue differing or conflicting strategies. Your employees shall have no obligation to recommend to me or inform me of strategies being pursued by you or by other clients. I also acknowledge that: Deutsche Banc Alex. Brown and affiliates of Deutsche Bank AG may perform services for or solicit business from issuers whose securities are recommended by your employees; Deutsche Banc Alex. Brown and affiliates of Deutsche Bank AG may be paid fees by Registered Investment Companies or other investment vehicles, including without limitation fees for acting as investment advisor, administrator, custodian and transfer agent; and Deutsche Banc Alex. Brown and affiliates of Deutsche Bank AG act as brokers, principals, and/or market makers in certain markets and may do so in transactions with me.

**18. No FDIC Insurance, Not Obligations of Any Bank**

I understand that the assets in My Account(s) are subject to the risk of partial or total loss due to market fluctuations or the insolvency of the issuer(s).

The assets in My Account(s) (including all related cash balances and shares of any mutual fund) are not deposits or other obligations of Deutsche Bank AG or any other bank, are not guaranteed by Deutsche Bank AG and are not insured by the Federal Deposit Insurance Corporation ("FDIC").

I may from time to time be offered investment products as to which Deutsche Bank AG is an obligor. These products may be complex, may not provide for the return of the full amount of principal invested or for the payment of a fixed rate of interest (or any interest) and will not usually be subject to FDIC insurance. I will assume they are not subject to FDIC insurance and that such products may not be protected as to principal or interest unless Deutsche Bank AG states in writing that a particular product is subject to FDIC insurance.

**19. Arbitration**

I understand that: (1) Arbitration is final and binding on the parties. (2) The parties are waiving their right to seek remedies in court, including the right to jury trial. (3) Pre-arbitration discovery is generally more limited than and different from court proceedings. (4) The arbitrators' award is not required to include factual findings or legal reasoning and any party's right to appeal or to seek modification of rulings by the arbitrators is strictly limited. (5) The panel of arbitrators would typically include a minority of arbitrators who were or are affiliated with the securities industry.

I agree to arbitrate with you any controversies which may arise, whether or not based on events occurring prior to the date of this agreement, including any controversy arising out of or relating to any account with you, to the construction, performance or breach of any agreement with you, or to transactions with or through you, only before the New York Stock Exchange or the National Association of Securities Dealers Regulation, Inc., at my election. I agree that I shall make my election by registered mail to you, at P.O. Box 515, Baltimore, MD 21202, Attention Director of Compliance. If my election is not received by you within ten (10) calendar days of receipt of a written request from you that I make an election, then you may elect the forum before which the arbitration shall be held.

Neither you nor I waive any right to seek equitable relief pending arbitration. No person shall bring a putative or certified class action to arbitration, nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action; or who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the putative class action until (1) the class certification is denied; or (2) the class is decertified; or (3) the customer is excluded from the class by the court. Such forbearance to enforce an agreement to arbitrate shall not constitute a waiver or any rights under this agreement except to the extent stated herein.

**20. Miscellaneous**

This Agreement shall be binding upon my heirs, executors, administrators, personal representatives and permitted assigns. It shall inure to the benefit of your successors and assigns to whom you may transfer My Account(s). This Agreement contains the entire understanding between us concerning the subject matter of this Agreement. I agree that Deutsche Banc Alex. Brown has the right to amend this Agreement at any time by sending written notice of such amendment to me. Any such amendment shall be effective as of the date established by Deutsche Banc Alex. Brown. If any provision of this Agreement is held to be invalid, void or unenforceable by reason of any law, rule, administrative order or judicial decision, that determination shall not affect the validity of the remaining provisions of this Agreement. This Agreement shall be deemed to have been made in the State of New York and shall be construed, and the rights of the parties determined, in accordance with the laws of the State of New York and the United States, as amended, without giving effect to the choice of law or conflict-of-laws provisions thereof.

**21. Paragraph Headings**

Paragraph headings are for convenience only and shall not affect the meaning or interpretation of any provision of this Agreement.

**Please Complete 22a or 22b as applicable.**

**22a. Certification — Taxpayer Identification Number**

**Certification Instructions:** I will cross out item (2) below if I have been notified by the IRS that I am currently subject to backup withholding because I have failed to report all interest and dividends on my tax return. If I am exempt from backup withholding, I will write the word "Exempt" here: _____. (For further information, see "Payee and Payments Exempt from Backup Withholding" on IRS Form W-9, a copy of which can be obtained from a Deutsche Banc Alex. Brown Investment Representative.)

Under penalties of perjury, I certify that: (1) The number shown on this form is my correct Taxpayer Identification Number (or I am waiting for a number to be issued to me), and (2) I am not subject to backup withholding because (a) I am exempt from backup withholding or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding.

BY SIGNING BELOW I ACKNOWLEDGE THAT I HAVE RECEIVED, READ AND AGREE TO THE TERMS OF THIS AGREEMENT.

The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding. If this is a Joint Account, all account owners must sign.

I ACKNOWLEDGE THAT MUTUAL FUNDS AND OTHER SECURITIES ARE NOT INSURED BY THE FDIC, ARE NOT DEPOSITS OR OTHER OBLIGATIONS OF, OR GUARANTEED BY, ANY BANK, AND ARE SUBJECT TO INVESTMENT RISK, INCLUDING POSSIBLE LOSS OF THE PRINCIPAL INVESTED.

THIS AGREEMENT CONTAINS A PRE-DISPUTE ARBITRATION CLAUSE AT PARAGRAPH 19.

Signature _____ ☐ Member  Date _____

Social Security or Employer ID No. _____

Signature _____  Date _____

Social Security or Employer ID No. _____

Signature _____  Date _____

Social Security or Employer ID No. _____

**22b. Certification — Non-U.S. Resident**

Permanent Residence Address: _____

_____

Type of Beneficial Owner: _____

Country of Incorporation or Organization: _____

By signing below, I hereby certify under penalties of perjury, (1) that (a) I am the beneficial owner of all the income earned in My Account(s), (b) I am neither a citizen nor a resident of the U.S. (and I have not made an election to be treated as a resident because of my marriage to a citizen or resident), (c) I have not been and do not intend to be present in the U.S. for 183 days or more during any calendar year in which this Agreement is in effect, and (d) I am not a former citizen or long-term resident of the United States subject to section 877 (relating to certain acts of expatriation) or (2) if signing on behalf of a corporation, partnership, trust or estate, that I am authorized to sign for the payee named on My Account(s) and such payee (a) is the beneficial owner of the income earned in My Account(s) and (b) is not a United States person and (3) that in either case, I am neither engaged, nor expect to be, or any such named payee is not and does not expect to be, engaged during the year, in a U.S. trade or business that has effectively connected income from transactions within My Account(s).

In addition, if I, or any such named payee, is claiming a United States tax treaty benefit, I hereby certify, under penalties of perjury, that I, or any such named payee, is a resident of _____ within the meaning of the income tax treaty between the United States and that country. If required, a U.S. Taxpayer Identification Number is included above. I also certify under penalties of perjury that the named payee meets the requirements of the article in the applicable treaty dealing with limitations on benefits, if any, and derives the income for which the treaty benefits are claimed.

Under penalties of perjury, I declare that I have examined the information provided for in Paragraph 22b and to the best of my knowledge and belief it is true, correct, and complete.

BY SIGNING BELOW I ACKNOWLEDGE THAT I HAVE RECEIVED, READ AND AGREE TO THE TERMS OF THIS AGREEMENT.

The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding. If this is a Joint Account, all account owners must sign.

I ACKNOWLEDGE THAT MUTUAL FUNDS AND OTHER SECURITIES ARE NOT INSURED BY THE FDIC, ARE NOT DEPOSITS OR OTHER OBLIGATIONS OF, OR GUARANTEED BY, ANY BANK, AND ARE SUBJECT TO INVESTMENT RISK, INCLUDING POSSIBLE LOSS OF THE PRINCIPAL INVESTED.

THIS AGREEMENT CONTAINS A PRE-DISPUTE ARBITRATION CLAUSE AT PARAGRAPH 19.

Signature _____ Date _____

Social Security or Employer ID No. _____

Signature _____ Date _____

Social Security or Employer ID No. _____

**PLEASE READ AND SIGN BELOW TO OPEN A MARGIN ACCOUNT.**

I agree to open a margin account with you and acknowledge to you that, in addition to the preceding information, I understand each of the following:

- When I purchase securities on margin, I borrow money from you to finance that purchase; I may also borrow against collateral in my margin account for other purposes.

- I will be obligated to pay interest on all sums I borrow from you.

- I may be required to deliver additional collateral consisting of cash or securities to you to maintain my loan balance, as you require.

- By using a margin account to leverage my investments, I increase my risk of loss.

- Deutsche Banc Alex. Brown will deduct all interest charges from my account.

Deutsche Banc Alex. Brown represents to me that:

- My current margin debit balance will appear on each account statement Deutsche Banc Alex. Brown sends to me.

- Deutsche Banc Alex. Brown will charge me interest on a monthly basis and will disclose on my account statement the interest rate and total interest charge.

By signing below, I authorize you to open and carry a margin account for my benefit, and acknowledge that securities in my account may be loaned to Deutsche Banc Alex. Brown as principal or loaned to others. I also acknowledge that I have received, read and agree to the terms of this Margin Agreement.

I ACKNOWLEDGE THAT MUTUAL FUNDS AND OTHER SECURITIES ARE NOT INSURED BY THE FDIC, ARE NOT DEPOSITS OR OTHER OBLIGATIONS OF, OR GUARANTEED BY, ANY BANK, AND ARE SUBJECT TO INVESTMENT RISK, INCLUDING POSSIBLE LOSS OF THE PRINCIPAL INVESTED.

THIS AGREEMENT CONTAINS A PRE-DISPUTE ARBITRATION CLAUSE AT PARAGRAPH 19.

Signature _____ , **Member**  Date 11-2-00

Signature _____ Date _____

Signature _____ Date _____

Paragraph 22 of this Agreement includes a certification of the Taxpayer Identification Number designated for this account and a representation regarding the applicability of backup withholding. If Deutsche Banc Alex. Brown does not receive this certification, it will be required to withhold a portion of all payments to this account.

FOR OFFICE USE ONLY

Signature _____  Branch Manager approval for margin accounts:  Date 11/2/00

# EXHIBIT 3

Deutsche Banc Alex. Brown

**Deutsche Bank**

# Account Agreement

V3 INVESTMENTS LLC

Name(s)

**DB Alex. Brown LLC**
P.O. Box 515
Baltimore, MD 21203

ATTN: BILL P. TSOURAPAS

Address

1301 WEST 22ND STREET, SUITE 615

OAK BROOK, IL 60523

City                                                        Account Number

**IMPORTANT: PLEASE SIGN AND RETURN THIS ACCOUNT AGREEMENT IN THE ENCLOSED ENVELOPE.**

In consideration of DB Alex. Brown LLC (referred to herein as "Deutsche Banc Alex. Brown") accepting the Account(s) of the Undersigned, and agreeing to act as my broker, I agree to the following with respect to each of My Account(s) with you, in which I currently or in the future have an interest, for the extension of credit or the purchase or sale of securities, options or other property. Throughout this Agreement, "I," "me," "my," "we" and "us" and "the undersigned" refer to the person(s) whose signature(s) appear(s) below and all others who are legally obligated on this account. "Account(s) of the Undersigned" and "My Account(s)" shall mean each and every account in the name of the undersigned and each and every account in which the undersigned may have an interest. "You" and "your" refer to DB Alex. Brown LLC, its subsidiaries, affiliates, officers, directors, agents and employees. DB Alex. Brown LLC is a subsidiary of Deutsche Bank AG. As used herein, the term "affiliate of Deutsche Bank" means Deutsche Bank AG and its subsidiaries and affiliates. Each of Deutsche Bank and its affiliates is a separately incorporated legal entity, none of which is responsible for the obligations of the others. "Securities and Other Property" shall include, but shall not be limited to, money and securities, financial instruments, commodities of every kind and nature, and all contracts and options relating to any thereof (whether for present or future delivery), owned by the undersigned or in which the undersigned has an interest. Where the context requires, the singular shall be plural and the plural shall be singular.

1. **Representations**

   Unless I have advised you otherwise in writing, I represent that I am of legal age, that I am not an employee or member of any securities exchange (or corporation of which any exchange owns a majority of the capital stock), the National Association of Securities Dealers, Inc., or of any broker-dealer, nor am I a senior officer of any bank, savings and loan institution, insurance company, registered investment company, registered investment advisory firm or institution that purchases securities, nor am I a member of the immediate family of such a person. I further represent that I am financially capable of satisfying any obligations undertaken through My Account(s) and that no one except the persons named on the account(s) has any interest in the account(s). I will promptly notify you in writing if any of the above circumstances change. I acknowledge that the purchase and sale of securities entails substantial economic risk, and I represent to you that I knowingly and willingly assume such risk.

2. **Applicable Rules and Regulations**

   All transactions in My Account(s) shall be subject to the constitution, rules, regulations, customs and usages of the exchange or market and its clearing house, if any, where the transactions are executed. Transactions shall also be subject to the provisions of federal and state securities laws, as amended, and to the rules and regulations of the Securities and Exchange Commission and the Board of Governors of the Federal Reserve System. You shall not be liable for any loss caused directly or indirectly by your compliance with such rules or regulations or by government restrictions, exchange or market rulings, suspension of trading, war, or other conditions beyond your control.

3. **Confirmations, Statements and Written Communications**

   **I agree to notify you in writing, within ten (10) days of your sending me a confirmation, of any objection I have to any transaction in My Account(s). In the absence of such written notification, I agree that all transactions for My Account(s) will be final and binding on me.** Confirmations of transactions, as well as other communications, may be sent to the address I provided to you or to such other address I may hereafter give to you in writing, and all communications so sent, whether by mail, private carrier, facsimile, messenger or otherwise, shall be deemed given to me, whether actually received or not. Unless I advise you in writing to the contrary, you may disclose my name and address to the issuers of securities which you hold for me.

4. **Aggregation of Orders and Average Prices**

   I authorize you, at your discretion, to aggregate orders for My Account(s) with other customer orders. I recognize that in so doing, I may receive an average price for my orders which may be different from the price(s) I might have received had my orders not been aggregated. I understand that this practice may also result in my orders being only partially completed.

5. **Cash Accounts.**

   This paragraph relates to and is effective solely with respect to cash accounts: (i) The undersigned will promptly make full cash payment for each security purchased, unless funds sufficient therefor are already held in the account; (ii) the undersigned does not contemplate selling any security before it is paid for as provided in the preceding clause; (iii) the undersigned will own each security sold at the time of sale and, unless such security is already held in the account, will promptly deliver such security thereto; and (iv) the undersigned will promptly make full cash payment of any amount which may become due in order to meet necessary requests for additional deposits or, with respect to any unissued security purchased or sold, to mark to the market.

6. **Short and Long Orders; Deliveries and Settlements**

   I agree that, in giving orders to sell, all "short" sales will be designated by me as "short" and all other sales will be designated by you as "long." "Short sale" means any sale of a security not owned by me or any sale that is consummated on settlement date by delivery of a borrowed security. I also agree that you may, at your discretion, immediately cover any short sales in My Account(s), without prior notice. My failure to designate a sale order as "short" is a representation on my part that I own the security free of restriction, and if the security is not in your possession at the time of the sale, I agree to deliver the security to you by settlement date. In case of non-delivery of a security, you are authorized to purchase the security to cover my position and charge any loss, commissions and fees to My Account(s). I agree that if you fail to receive payment for securities I have purchased you may, without prior demand or notice, sell those securities or other property held by you in any of My Account(s)s with you and any loss resulting therefrom will be charged to such account(s). I authorize you, at your discretion, to request and obtain extension(s) of my time to make payment for securities I purchase, as provided for by Federal Reserve Bank Regulation T.

AA2 (12/99)

**7.  Authority to Borrow**

In case of the sale of any security or other property by you at my direction and your inability to timely deliver the same to the purchaser by reason of my failure to supply you therewith, I authorize you to purchase or borrow any security or other property necessary to make the required delivery, and I agree to be responsible for any loss or cost, including interest, which you sustain as a result of my failure to make delivery to you.

**8.  Interest Charges**

I acknowledge that debit balances in my cash or margin account, including but not limited to those arising from my failure to make payment by settlement date for securities purchased, will be charged interest at the then current rate, in accordance with your usual custom. Interest will be computed on the net daily debit balance, which is computed by combining all debit balances and credit balances in each account with the exception of credit balances associated with short security positions. I acknowledge receipt of your statement regarding interest charges and that you may charge an account maintenance fee with respect to inactive accounts.

**9.  Credit Information and Investigation**

I authorize you to obtain reports concerning my credit standing and business conduct at your discretion. I also authorize you and any affiliate of Deutsche Bank (including, without limitation, Deutsche Bank AG) to share among such affiliates such information and any other confidential information you and such affiliate(s) may have about me and My Account(s).

**10.  Satisfaction of Indebtedness**

I agree to satisfy, upon demand, any indebtedness, including any interest and commission charges. I further agree to pay the reasonable costs and expenses of collection of any amount I owe you, including reasonable attorney's fees and court costs.

**11.  Liens**

I hereby grant to you and all affiliates of Deutsche Bank AG a security interest in all securities and other property in your possession or in the possession of any of your affiliates in which I have an interest in order to secure any and all indebtedness or any other of my obligations to you or any affiliate of Deutsche Bank AG. All such securities and other property shall be held as security for the payment of any such obligations or indebtedness in any account with you in which I have an interest, and you may, in your discretion, at any time and without prior notice, sell and/or transfer any or all securities and other property in order to satisfy such obligations. In enforcing this lien, you shall have the discretion to determine which securities and property are to be sold and/or which contracts are to be closed.

**12.  Margin Maintenance, Calls for Additional Collateral, Liquidations and Covering Short Positions**

If I engage in margin transactions, I will maintain such securities and other property in My Account(s) for margin purposes as you shall require from time to time in your sole discretion for any reason whatsoever. You shall have the right in accordance with your general policies regarding margin maintenance requirements, as such may be modified or amended from time to time, to require additional collateral or the liquidation of any securities and other property whenever in your sole discretion you consider it necessary for your protection. You may do so under circumstances which include, but are not limited to, the failure to promptly meet any call for additional collateral, the filing of a petition in bankruptcy, the appointment of a receiver by or against me or the attachment or levy against any account with you in which I have an interest. In such event, you are authorized to sell any and all securities and other property in any of My Account(s) with you whether carried individually or jointly with others, to buy all securities or other property which may be short in such account, to cancel any open orders and to close any or all outstanding contracts, all without demand for margin or additional margin, notice of sale or purchase, or other notice or advertisement, each of which is expressly waived. Any such sales or purchases may be made at your discretion on any exchange or other market where such business is usually transacted or at public auction or private sale, and you may be the purchaser for your own account. I understand that any prior demand, or call, or prior notice of the time and place of such sale or purchase shall not be considered a waiver of your right to sell or buy without demand or notice as provided herein.

**13.  Loan or Pledge of Securities and Other Property**

Within the limitations imposed by applicable law, all securities and other property now or hereafter held, carried or maintained by you in your possession that have not been fully paid for or are held in a margin account may be lent, either to yourself or to others, pledged and repledged by you, without notice to me, either separately or in common with other securities and other property of your other customers for any amount due in any account with you in which I have an interest, or for any greater amount, and you may do so without retaining in your possession or control for delivery a like amount of similar securities or other property. I understand that while securities held for My Account(s) are loaned out, I will lose voting rights attendant to such securities.

**14.  Correspondent Account; No Agency**

If My Account(s) has been introduced to you by arrangement with another broker-dealer, you are authorized to accept from such other broker-dealer, without inquiry or investigation by you (i) orders for the purchase or sale of securities or other property for My Account(s), on margin or otherwise, and (ii) any other instructions concerning My Account(s). I understand and agree that such other broker-dealer is not your agent and that you shall have no responsibility or liability to me for any acts or omissions of such other broker-dealer, its officers, employees or agents.

**15.  Joint Accounts**

If this is a Joint Account, we agree that each of us shall have authority with respect to this account to deal with you as if each of us alone were the account owner, all without notice to the other account owner(s). We agree that notice to any account owner shall be deemed to be notice to all account owners. Each account owner shall be jointly and severally liable for this account. You may follow the instructions of any of us concerning this account and make deliveries to any of us, of any or all property and payment, even if such deliveries and/or payments shall be made to one of us personally, and not to all of the account owners. You shall be under no obligation to inquire into the purpose of any such demand for delivery of securities or payment, and you shall not be bound to see to the application or disposition of the securities and/or monies so delivered or paid to any of us. Notwithstanding the foregoing, you are authorized, in your discretion, to require joint action by all of the account owners with respect to any matter concerning the account, including the giving or cancellation of orders and the withdrawal of monies, securities or other property. We agree that our account will be carried on your books in the form reflected by the above account name. In the event of the death of any of us, the survivor(s) shall immediately give you written notice thereof, and you may, before or after receiving such notice, take such action, require such documents, retain such securities and/or restrict transactions in the account as you may deem advisable to protect you against any tax, liability, penalty or loss under any present or future laws or otherwise. Any cost resulting from the death of any of us, or through the exercise by any decedent's estate or representatives of any rights in the account shall be chargeable against the interest of the survivor(s) as well as against the interest of the estate of the decedent.

**16.  Foreign Securities**

With respect to debt or equity securities of non-U.S. issuers or debt or deposit instruments of non-U.S. banks ("Foreign Securities"), I acknowledge and understand that: (i) Foreign Securities are, in most cases, not registered with the Securities and Exchange Commission or listed on a U.S. securities exchange; (ii) Foreign Securities, particularly those of issuers in the so-called "emerging markets" are often illiquid, are sometimes subject to legal and/or contractual transfer restrictions, and it may be difficult or impossible to dispose of such Foreign Securities prior to the maturity thereof or to determine the market price thereof for valuation purposes; (iii) Foreign Securities, and the issuer, guarantors or other obligors with respect thereto ("Obligors") are subject to a variety of risks in addition to those typically faced in the case of U.S. securities and issuers, including, among other things, currency risk, exchange controls, confiscatory taxation, withholding, limitations on the rights of security holders, civil unrest, hyperinflation, discriminatory treatment of foreign investors, etc.; (iv) there is often less information available regarding Obligors, and such information may be more difficult to interpret, than is the case with U.S. issuers whose securities are subject to the periodic reporting requirements of U.S. securities laws; (v) there may be no effective means to compel the performance if an Obligor is in default of its obligations in respect of its debt securities or other financial obligations (and you specifically acknowledge that Foreign Securities purchased by you may be in default at the time of purchase); (vi) the Foreign Securities in question may be unrated; and (vii) such securities are not suitable for all investors.

I authorize Deutsche Banc Alex. Brown to purchase Foreign Securities (and, in the case of Foreign Securities denominated in foreign currencies, the relevant foreign currencies) from or sell Foreign Securities (and foreign exchange) to an affiliate of Deutsche Bank AG. In dealing with such affiliates, such affiliates may take their normal commissions, spreads or other fees without regard to Deutsche Banc Alex. Brown's relationship with me.

**17. Acknowledgment of Possible Conflicts of Interest**

I acknowledge that the advice provided to me by your employees may differ from the advice or the timing or nature of action recommended by or taken by other individuals or groups at Deutsche Banc Alex. Brown and/or affiliates of Deutsche Bank AG, whether acting as principal or agent. I understand that you provide investment advice, portfolio management and execution services for many clients and, in addition, act as principals in various markets. Given these different roles, individuals and groups at Deutsche Banc Alex. Brown and affiliates of Deutsche Bank AG are seldom of one view as to an investment strategy and will often pursue differing or conflicting strategies. Your employees shall have no obligation to recommend to me or inform me of strategies being pursued by you or by other clients. I also acknowledge that: Deutsche Banc Alex. Brown and affiliates of Deutsche Bank AG may perform services for or solicit business from issuers whose securities are recommended by your employees; Deutsche Banc Alex. Brown and affiliates of Deutsche Bank AG may be paid fees by Registered Investment Companies or other investment vehicles, including without limitation fees for acting as investment advisor, administrator, custodian and transfer agent; and Deutsche Banc Alex. Brown and affiliates of Deutsche Bank AG act as brokers, principals, and/or market makers in certain markets and may do so in transactions with me.

**18. No FDIC Insurance, Not Obligations of Any Bank**

I understand that the assets in My Account(s) are subject to the risk of partial or total loss due to market fluctuations or the insolvency of the issuer(s).

The assets in My Account(s) (including all related cash balances and shares of any mutual fund) are not deposits or other obligations of Deutsche Bank AG or any other bank, are not guaranteed by Deutsche Bank AG and are not insured by the Federal Deposit Insurance Corporation ("FDIC").

I may from time to time be offered investment products as to which Deutsche Bank AG is an obligor. These products may be complex, may not provide for the return of the full amount of principal invested or for the payment of a fixed rate of interest (or any interest) and will not usually be subject to FDIC insurance. I will assume they are not subject to FDIC insurance and that such products may not be protected as to principal or interest unless Deutsche Bank AG states in writing that a particular product is subject to FDIC insurance.

**19. Arbitration**

I understand that: (1) Arbitration is final and binding on the parties. (2) The parties are waiving their right to seek remedies in court, including the right to jury trial. (3) Pre-arbitration discovery is generally more limited than and different from court proceedings. (4) The arbitrators' award is not required to include factual findings or legal reasoning and any party's right to appeal or to seek modification of rulings by the arbitrators is strictly limited. (5) The panel of arbitrators would typically include a minority of arbitrators who were or are affiliated with the securities industry.

I agree to arbitrate with you any controversies which may arise, whether or not based on events occurring prior to the date of this agreement, including any controversy arising out of or relating to any account with you, to the construction, performance or breach of any agreement with you, or to transactions with or through you, only before the New York Stock Exchange or the National Association of Securities Dealers Regulation, Inc., at my election. I agree that I shall make my election by registered mail to you, at P.O. Box 515, Baltimore, MD 21202, Attention Director of Compliance. If my election is not received by you within ten (10) calendar days of receipt of a written request from you that I make an election, then you may elect the forum before which the arbitration shall be held.

Neither you nor I waive any right to seek equitable relief pending arbitration. No person shall bring a putative or certified class action to arbitration, nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action; or who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the putative class action until (1) the class certification is denied; or (2) the class is decertified; or (3) the customer is excluded from the class by the court. Such forbearance to enforce an agreement to arbitrate shall not constitute a waiver or any rights under this agreement except to the extent stated herein.

**20. Miscellaneous**

This Agreement shall be binding upon my heirs, executors, administrators, personal representatives and permitted assigns. It shall inure to the benefit of your successors and assigns to whom you may transfer My Account(s). This Agreement contains the entire understanding between us concerning the subject matter of this Agreement. I agree that Deutsche Banc Alex. Brown has the right to amend this Agreement at any time by sending written notice of such amendment to me. Any such amendment shall be effective as of the date established by Deutsche Banc Alex. Brown. If any provision of this Agreement is held to be invalid, void or unenforceable by reason of any law, rule, administrative order or judicial decision, that determination shall not affect the validity of the remaining provisions of this Agreement. This Agreement shall be deemed to have been made in the State of New York and shall be construed, and the rights of the parties determined, in accordance with the laws of the State of New York and the United States, as amended, without giving effect to the choice of law or conflict-of-laws provisions thereof.

**21. Paragraph Headings**

Paragraph headings are for convenience only and shall not affect the meaning or interpretation of any provision of this Agreement.

**Please Complete 22a or 22b as applicable.**

**22a. Certification — Taxpayer Identification Number**

**Certification Instructions:** I will cross out item (2) below if I have been notified by the IRS that I am currently subject to backup withholding because I have failed to report all interest and dividends on my tax return. If I am exempt from backup withholding, I will write the word "Exempt" here: _____. (For further information, see "Payees and Payments Exempt from Backup Withholding" on IRS Form W-9, a copy of which can be obtained from a Deutsche Banc Alex. Brown Investment Representative.)

**Under penalties of perjury, I certify that:** (1) The number shown on this form is my correct Taxpayer Identification Number (or I am waiting for a number to be issued to me), and (2) I am not subject to backup withholding because (a) I am exempt from backup withholding or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest and dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding.

BY SIGNING BELOW I ACKNOWLEDGE THAT I HAVE RECEIVED, READ AND AGREE TO THE TERMS OF THIS AGREEMENT.

The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding. If this is a joint Account, all account owners must sign.

I ACKNOWLEDGE THAT MUTUAL FUNDS AND OTHER SECURITIES ARE NOT INSURED BY THE FDIC, ARE NOT DEPOSITS OR OTHER OBLIGATIONS OF, OR GUARANTEED BY, ANY BANK, AND ARE SUBJECT TO INVESTMENT RISK, INCLUDING POSSIBLE LOSS OF THE PRINCIPAL INVESTED.

THIS AGREEMENT CONTAINS A PRE-DISPUTE ARBITRATION CLAUSE AT PARAGRAPH 19.

Signature _____ , Member  Date 11-2-00

Social Security or Employer ID No. _____

Signature _____  Date _____

Social Security or Employer ID No. _____

Signature _____  Date _____

Social Security or Employer ID No. _____

**22b. Certification — Non-U.S. Resident**

Permanent Residence Address: _____

_____

_____

Type of Beneficial Owner: _____

Country of Incorporation or Organization: _____

By signing below, I hereby certify under penalties of perjury, (1) that (a) I am the beneficial owner of all the income earned in My Account(s), (b) I am neither a citizen nor a resident of the U.S. (and I have not made an election to be treated as a resident because of my marriage to a citizen or resident), (c) I have not been and do not intend to be present in the U.S. for 183 days or more during any calendar year in which this Agreement is in effect, and (d) I am not a former citizen or long-term resident of the United States subject to section 877 (relating to certain acts of expatriation) or (2) if signing on behalf of a corporation, partnership, trust or estate, that I am authorized to sign for the payee named on My Account(s) and such payee (a) is the beneficial owner of all the income earned in My Account(s) and (b) is not a United States person and (3) that in either case, I am neither engaged, nor expect to be, or any such named payee is not and does not expect to be, engaged during the year, in a U.S. trade or business that has effectively connected income from transactions within My Account(s).

In addition, if I, or any such named payee, is claiming a United States tax treaty benefit, I hereby certify, under penalties of perjury, that I, or any such named payee, is a resident of _____ within the meaning of the income tax treaty between the United States and that country. If required, a U.S. Taxpayer Identification Number is included above. I also certify under penalties of perjury that the named payee meets the requirements of the article in the applicable treaty dealing with limitations on benefits, if any, and derives the income for which the treaty benefits are claimed.

Under penalties of perjury, I declare that I have examined the information provided for in Paragraph 22b and to the best of my knowledge and belief it is true, correct, and complete.

BY SIGNING BELOW I ACKNOWLEDGE THAT I HAVE RECEIVED, READ AND AGREE TO THE TERMS OF THIS AGREEMENT.

The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding. If this is a Joint Account, all account owners must sign.

I ACKNOWLEDGE THAT MUTUAL FUNDS AND OTHER SECURITIES ARE NOT INSURED BY THE FDIC, ARE NOT DEPOSITS OR OTHER OBLIGATIONS OF, OR GUARANTEED BY, ANY BANK, AND ARE SUBJECT TO INVESTMENT RISK, INCLUDING POSSIBLE LOSS OF THE PRINCIPAL INVESTED.

THIS AGREEMENT CONTAINS A PRE-DISPUTE ARBITRATION CLAUSE AT PARAGRAPH 19.

Signature _____ Date _____

Social Security or Employer ID No. _____

Signature _____ Date _____

Social Security or Employer ID No. _____

**PLEASE READ AND SIGN BELOW TO OPEN A MARGIN ACCOUNT.**

I agree to open a margin account with you and acknowledge to you that, in addition to the preceding information, I understand each of the following:

- When I purchase securities on margin, I borrow money from you to finance that purchase; I may also borrow against collateral in my margin account for other purposes.

- I will be obligated to pay interest on all sums I borrow from you.

- I may be required to deliver additional collateral consisting of cash or securities to you to maintain my loan balance, as you require.

- By using a margin account to leverage my investments, I increase my risk of loss.

- Deutsche Banc Alex. Brown will deduct all interest charges from my account.

Deutsche Banc Alex. Brown represents to me that:

- My current margin debit balance will appear on each account statement Deutsche Banc Alex. Brown sends to me.

- Deutsche Banc Alex. Brown will charge me interest on a monthly basis and will disclose on my account statement the interest rate and total interest charge.

By signing below, I authorize you to open and carry a margin account for my benefit, and acknowledge that securities in my account may be loaned to Deutsche Banc Alex. Brown as principal or loaned to others. I also acknowledge that I have received, read and agree to the terms of this Margin Agreement.

I ACKNOWLEDGE THAT MUTUAL FUNDS AND OTHER SECURITIES ARE NOT INSURED BY THE FDIC, ARE NOT DEPOSITS OR OTHER OBLIGATIONS OF, OR GUARANTEED BY, ANY BANK, AND ARE SUBJECT TO INVESTMENT RISK, INCLUDING POSSIBLE LOSS OF THE PRINCIPAL INVESTED.

THIS AGREEMENT CONTAINS A PRE-DISPUTE ARBITRATION CLAUSE AT PARAGRAPH 19.

Signature _____, **Member**   Date  *11-2-00*

Signature _____ Date _____

Signature _____ Date _____

Paragraph 22 of this Agreement includes a certification of the Taxpayer Identification Number designated for this account and a representation regarding the applicability of backup withholding. If Deutsche Banc Alex. Brown does not receive this certification, it will be required to withhold a portion of all payments to this account.

FOR OFFICE USE ONLY               Branch Manager approval for margin accounts:

Signature _____               Date _____

# EXHIBIT 4

Deutsche Banc Alex. Brown    **Deutsche Bank** ▞

# Account Agreement

| Name(s) | TR1 INVESTMENTS LLC |
| --- | --- |

**DB Alex. Brown LLC**
P.O. Box 515
Baltimore, MD 21203

| Address | ATTN: BILL P. TSOURAPAS |
| --- | --- |
|  | 1301 WEST 22ND STREET, SUITE 615 |

| City | OAK BROOK, IL 60523 |
| --- | --- |

| Account Number | |
| --- | --- |

---

**IMPORTANT: PLEASE SIGN AND RETURN THIS ACCOUNT AGREEMENT IN THE ENCLOSED ENVELOPE.**

In consideration of DB Alex. Brown LLC (referred to herein as "Deutsche Banc Alex. Brown") accepting the Account(s) of the Undersigned, and agreeing to act as my broker, I agree to the following with respect to each of My Account(s) with you, in which I currently or in the future have an interest, for the extension of credit or the purchase or sale of securities, options or other property. Throughout this Agreement, "I," "me," "my," "we" and "us" and "the undersigned" refer to the person(s) whose signature(s) appear(s) below and all others who are legally obligated on this account. "Account(s) of the Undersigned" and "My Account(s)" shall mean each and every account in the name of the undersigned and each and every account in which the undersigned may have an interest. "You" and "your" refer to DB Alex. Brown LLC, its subsidiaries, affiliates, officers, directors, agents and employees. DB Alex. Brown LLC is a subsidiary of Deutsche Bank AG. As used herein, the term "affiliate of Deutsche Bank" means Deutsche Bank AG and its subsidiaries and affiliates. Each of Deutsche Bank and its affiliates is a separately incorporated legal entity, none of which is responsible for the obligations of the others. "Securities and Other Property" shall include, but shall not be limited to, money and securities, financial instruments, commodities of every kind and nature, and all contracts and options relating to any thereof (whether for present or future delivery), owned by the undersigned or in which the undersigned has an interest. Where the context requires, the singular shall be plural and the plural shall be singular.

1. **Representations**

Unless I have advised you otherwise in writing, I represent that I am of legal age, that I am not an employee or member of any securities exchange (or corporation of which any exchange owns a majority of the capital stock), the National Association of Securities Dealers, Inc., or of any broker-dealer, nor am I a senior officer of any bank, savings and loan institution, insurance company, registered investment company, registered investment advisory firm or institution that purchases securities, nor am I a member of the immediate family of such a person. I further represent that I am financially capable of satisfying any obligations undertaken through My Account(s) and that no one except the persons named on the account(s) has any interest in the account(s). I will promptly notify you in writing if any of the above circumstances change. I acknowledge that the purchase and sale of securities entails substantial economic risk, and I represent to you that I knowingly and willingly assume such risk.

2. **Applicable Rules and Regulations**

All transactions in My Account(s) shall be subject to the constitution, rules, regulations, customs and usages of the exchange or market, and its clearing house, if any, where the transactions are executed. Transactions shall also be subject to the provisions of federal and state securities laws, as amended, and to the rules and regulations of the Securities and Exchange Commission and the Board of Governors of the Federal Reserve System. You shall not be liable for any loss caused directly or indirectly by your compliance with such rules or regulations or by government restrictions, exchange or market rulings, suspension of trading, war, or other conditions beyond your control.

3. **Confirmations, Statements and Written Communications**

**I agree to notify you in writing, within ten (10) days of your sending me a confirmation, of any objection I have to any transaction in My Account(s). In the absence of such written notification, I agree that all transactions for My Account(s) will be final and binding on me.** Confirmations of transactions, as well as other communications, may be sent to the address I provided to you or to such other address I may hereafter give to you in writing, and all communications so sent, whether by mail, private carrier, facsimile, messenger or otherwise, shall be deemed given to me, whether actually received or not. Unless I advise you in writing to the contrary, you may disclose my name and address to the issuers of securities which you hold for me.

4. **Aggregation of Orders and Average Prices**

I authorize you, at your discretion, to aggregate orders for My Account(s) with other customer orders. I recognize that in so doing, I may receive an average price for my orders which may be different from the price(s) I might have received had my orders not been aggregated. I understand that this practice may also result in my orders being only partially completed.

5. **Cash Accounts.**

This paragraph relates to and is effective solely with respect to cash accounts: (i) The undersigned will promptly make full cash payment for each security purchased, unless funds sufficient therefor are already held in the account; (ii) the undersigned does not contemplate selling any security before it is paid for as provided in the preceding clause; (iii) the undersigned will own each security sold at the time of sale, and, unless such security is already held in the account, will promptly deliver such security thereto; and (iv) the undersigned will make full cash payment of any amount which may become due in order to meet necessary requests for additional deposits or, with respect to any unissued security purchased or sold, to mark to the market.

6. **Short and Long Orders; Deliveries and Settlements**

I agree that, in giving orders to sell, all "short" sales will be designated by me as "short" and all other sales will be designated by you as "long." "Short sale" means any sale of a security not owned by me or any sale that is consummated on settlement date by delivery of a borrowed security. I also agree that you may, at your discretion, immediately cover any short sales in My Account(s), without prior notice. My failure to designate a sale order as "short" is a representation on my part that I own the security free of restriction, and if the security is not in your possession at the time of the sale, I agree to deliver the security to you by settlement date. In case of non-delivery of a security, you are authorized to purchase the security to cover my position and charge any loss, commissions and fees to My Account(s). I agree that if you fail to receive payment for securities I have purchased you may, without prior demand or notice, sell those securities or other property held by you in any of My Account(s) with you and any loss resulting therefrom will be charged to such account(s). I authorize you, at your discretion, to request and obtain extension(s) of my time to make payment for securities I purchase, as provided for by Federal Reserve Bank Regulation T.

AA2 (12/99)

**7. Authority to Borrow**

In case of the sale of any security or other property by you at my direction and your inability to timely deliver the same to the purchaser by reason of my failure to supply you therewith, I authorize you to purchase or borrow any security or other property necessary to make the required delivery, and I agree to be responsible for any loss or cost, including interest, which you sustain as a result of my failure to make delivery to you.

**8. Interest Charges**

I acknowledge that debit balances in my cash or margin account, including but not limited to those arising from my failure to make payment by settlement date for securities purchased, will be charged interest at the then current rate, in accordance with your usual custom. Interest will be computed on the net daily debit balance, which is computed by combining all debit balances and credit balances in each account with the exception of credit balances associated with short security positions. I acknowledge receipt of your statement regarding interest charges and that you may charge an account maintenance fee with respect to inactive accounts.

**9. Credit Information and Investigation**

I authorize you to obtain reports concerning my credit standing and business conduct at your discretion. I also authorize you and any affiliate of Deutsche Bank (including, without limitation, Deutsche Bank AG) to share among such affiliates such information and any other confidential information you and such affiliate(s) may have about me and My Account(s).

**10. Satisfaction of Indebtedness**

I agree to satisfy, upon demand, any indebtedness, including any interest and commission charges. I further agree to pay the reasonable costs and expenses of collection of any amount I owe you, including reasonable attorney's fees and court costs.

**11. Liens**

I hereby grant to you and all affiliates of Deutsche Bank AG a security interest in all securities and other property in your possession or in the possession of any of your affiliates in which I have an interest in order to secure any and all indebtedness or any other of my obligations to you or any affiliate of Deutsche Bank AG. All such securities and other property shall be held as security for the payment of any such obligations or indebtedness in any account with you in which I have an interest, and you may, in your discretion, at any time and without prior notice, sell and/or transfer any or all securities and other property in order to satisfy such obligations. In enforcing this lien, you shall have the discretion to determine which securities and property are to be sold and/or which contracts are to be closed.

**12. Margin Maintenance, Calls for Additional Collateral, Liquidations and Covering Short Positions**

If I engage in margin transactions, I will maintain such securities and other property in My Account(s) for margin purposes as you shall require from time to time in your sole discretion for any reason whatsoever. You shall have the right in accordance with your general policies regarding margin maintenance requirements, as such may be modified or amended from time to time, to require additional collateral or the liquidation of any securities and other property whenever in your sole discretion you consider it necessary for your protection. You may do so under circumstances which include, but are not limited to, the failure to promptly meet any call for additional collateral, the filing of a petition in bankruptcy, the appointment of a receiver by or against me or the attachment or levy against any account with you in which I have an interest. In such event, you are authorized to sell any and all securities and other property in any of My Account(s) with you whether carried individually or jointly with others, to buy all securities or other property which may be short in such account, to cancel any open orders and to close any or all outstanding contracts, all without demand for margin or additional margin, notice of sale or purchase, or other notice or advertisement, each of which is expressly waived. Any such sales or purchases may be made at your discretion on any exchange or other market where such business is usually transacted or at public auction or private sale, and you may be the purchaser for your own account. I understand that any prior demand, or call, or prior notice of the time and place of such sale or purchase shall not be considered a waiver of your right to sell or buy without demand or notice as provided herein.

**13. Loan or Pledge of Securities and Other Property**

Within the limitations imposed by applicable law, all securities and other property now or hereafter held, carried or maintained by you in your possession that have not been fully paid for or are held in a margin account may be lent, either to yourself or to others, pledged and repledged by you, without notice to me, either separately or in common with other securities and other property of your other customers for any amount due in any account with you in which I have an interest, or for any greater amount, and you may do so without retaining in your possession or control for delivery a like amount of similar securities or other property. I understand that while securities held for My Account(s) are loaned out, I will lose voting rights attendant to such securities.

**14. Correspondent Account; No Agency**

If My Account(s) has been introduced to you by arrangement with another broker-dealer, you are authorized to accept from such other broker-dealer, without inquiry or investigation by you (i) orders for the purchase or sale of securities or other property for My Account(s), on margin or otherwise, and (ii) any other instructions concerning My Account(s). I understand and agree that such other broker-dealer is not your agent and that you shall have no responsibility or liability to me for any acts or omissions of such other broker-dealer, its officers, employees or agents.

**15. Joint Accounts**

If this is a Joint Account, we agree that each of us shall have authority with respect to this account to deal with you as if each of us alone were the account owner, all without notice to the other account owner(s). We agree that notice to any account owner shall be deemed to be notice to all account owners. Each account owner shall be jointly and severally liable for this account. You may follow the instructions of any of us concerning this account and make deliveries to any of us, of any or all property and payment, even if such deliveries and/or payments shall be made to one of us personally, and not to all of the account owners. You shall be under no obligation to inquire into the purpose of any such demand for delivery of securities or payment, and you shall not be bound to see to the application or disposition of the securities and/or monies so delivered or paid to any of us. Notwithstanding the foregoing, you are authorized, in your discretion, to require joint action by all of the account owners with respect to any matter concerning the account, including the giving or cancellation of orders and the withdrawal of monies, securities or other property. We agree that our account will be carried on your books in the form reflected by the above account name. In the event of the death of any of us, the survivor(s) shall immediately give you written notice thereof, and you may, before or after receiving such notice, take such action, require such documents, retain such securities and/or restrict transactions in the account as you may deem advisable to protect you against any tax, liability, penalty or loss under any present or future laws or otherwise. Any cost resulting from the death of any of us, or through the exercise by any decedent's estate or representatives of any rights in the account shall be chargeable against the interest of the survivor(s) as well as against the interest of the estate of the decedent.

**16. Foreign Securities**

With respect to debt or equity securities of non-U.S. issuers or debt or deposit instruments of non-U.S. banks ("Foreign Securities"), I acknowledge and understand that: (i) Foreign Securities are, in most cases, not registered with the Securities and Exchange Commission or listed on a U.S. securities exchange; (ii) Foreign Securities, particularly those of issuers in the so-called "emerging markets" are often illiquid, are sometimes subject to legal and/or contractual transfer restrictions, and it may be difficult or impossible to dispose of such Foreign Securities prior to the maturity thereof or to determine the market price thereof for valuation purposes; (iii) Foreign Securities, and the issuer, guarantors or other obligors with respect thereto ("Obligors") are subject to a variety or risks in addition to those typically faced in the case of U.S. securities and issuers, including, among other things, currency risk, exchange controls, confiscatory taxation, withholding, limitations on the rights of security holders, civil unrest, hyperinflation, discriminatory treatment of foreign investors, etc.; (iv) there is often less information available regarding Obligors, and such information may be more difficult to interpret, than is the case with U.S. issuers whose securities are subject to the periodic reporting requirements under U.S. securities laws; (v) there may be no effective means to determine if an Obligor is in default of its obligations in respect of its debt securities or other financial obligations (and you specifically acknowledge that Foreign Securities purchased by you may be in default at the time of purchase); (vi) the Foreign Securities in question may be unrated; and (vii) such securities are not suitable for all investors.

I authorize Deutsche Banc Alex. Brown to purchase Foreign Securities (and, in the case of Foreign Securities denominated in foreign currencies, the relevant foreign currencies) from or sell Foreign Securities (and foreign exchange) to an affiliate of Deutsche Bank AG. In dealing with such affiliates, such affiliates may take their normal commissions, spreads or other fees without regard to Deutsche Banc Alex. Brown's relationship with me.

**17. Acknowledgment of Possible Conflicts of Interest**

I acknowledge that the advice provided to me by your employees may differ from the advice or the timing or nature of action recommended by or taken by other individuals or groups at Deutsche Banc Alex. Brown and/or affiliates of Deutsche Bank AG, whether acting as principal or agent. I understand that you provide investment advice, portfolio management and execution services for many clients and, in addition, act as principals in various markets. Given these different roles, individuals and groups at Deutsche Banc Alex. Brown and affiliates of Deutsche Bank AG are seldom of one view as to an investment strategy and will often pursue differing or conflicting strategies. Your employees shall have no obligation to recommend to me or inform me of strategies being pursued by you or by other clients. I also acknowledge that: Deutsche Banc Alex. Brown and affiliates of Deutsche Bank AG may perform services for or solicit business from issuers whose securities are recommended by your employees; Deutsche Banc Alex. Brown and affiliates of Deutsche Bank AG may be paid fees by Registered Investment Companies or other investment vehicles, including without limitation fees for acting as investment advisor, administrator, custodian and transfer agent; and Deutsche Banc Alex. Brown and affiliates of Deutsche Bank AG act as brokers, principals, and/or market makers in certain markets and may do so in transactions with me.

**18. No FDIC Insurance, Not Obligations of Any Bank**

I understand that the assets in My Account(s) are subject to the risk of partial or total loss due to market fluctuations or the insolvency of the issuer(s).

The assets in My Account(s) (including all related cash balances and shares of any mutual fund) are not deposits or other obligations of Deutsche Bank AG or any other bank, are not guaranteed by Deutsche Bank AG and are not insured by the Federal Deposit Insurance Corporation ("FDIC").

I may from time to time be offered investment products as to which Deutsche Bank AG is an obligor. These products may be complex, may not provide for the return of the full amount of principal invested or for the payment of a fixed rate of interest (or any interest) and will not usually be subject to FDIC insurance. I will assume they are not subject to FDIC insurance and that such products may not be protected as to principal or interest unless Deutsche Bank AG states in writing that a particular product is subject to FDIC insurance.

**19. Arbitration**

I understand that: (1) Arbitration is final and binding on the parties. (2) The parties are waiving their right to seek remedies in court, including the right to jury trial. (3) Pre-arbitration discovery is generally more limited than and different from court proceedings. (4) The arbitrators' award is not required to include factual findings or legal reasoning and any party's right to appeal or to seek modification of rulings by the arbitrators is strictly limited. (5) The panel of arbitrators would typically include a minority of arbitrators who were or are affiliated with the securities industry.

I agree to arbitrate with you any controversies which may arise, whether or not based on events occurring prior to the date of this agreement, including any controversy arising out of or relating to any account with you, to the construction, performance or breach of any agreement with you, or to transactions with or through you, only before the New York Stock Exchange or the National Association of Securities Dealers Regulation, Inc., at my election. I agree that I shall make my election by registered mail to you, at P.O. Box 515, Baltimore, MD 21202, Attention Director of Compliance. If my election is not received by you within ten (10) calendar days of receipt of a written request from you that I make an election, then you may elect the forum before which the arbitration shall be held.

Neither you nor I waive any right to seek equitable relief pending arbitration. No person shall bring a putative or certified class action to arbitration, nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action; or who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the putative class action until (1) the class certification is denied; or (2) the class is decertified; or (3) the customer is excluded from the class by the court. Such forbearance to enforce an agreement to arbitrate shall not constitute a waiver or any rights under this agreement except to the extent stated herein.

**20. Miscellaneous**

This Agreement shall be binding upon my heirs, executors, administrators, personal representatives and permitted assigns. It shall inure to the benefit of your successors and assigns to whom you may transfer My Account(s). This Agreement contains the entire understanding between us concerning the subject matter of this Agreement. I agree that Deutsche Banc Alex. Brown has the right to amend this Agreement at any time by sending written notice of such amendment to me. Any such amendment shall be effective as of the date established by Deutsche Banc Alex. Brown. If any provision of this Agreement is held to be invalid, void or unenforceable by reason of any law, rule, administrative order or judicial decision, that determination shall not affect the validity of the remaining provisions of this Agreement. This Agreement shall be deemed to have been made in the State of New York and shall be construed, and the rights of the parties determined, in accordance with the laws of the State of New York and the United States, as amended, without giving effect to the choice of law or conflict-of-laws provisions thereof.

**21. Paragraph Headings**

Paragraph headings are for convenience only and shall not affect the meaning or interpretation of any provision of this Agreement.

**Please Complete 22a or 22b as applicable.**

**22a. Certification — Taxpayer Identification Number**

**Certification Instructions:** I will cross out item (2) below if I have been notified by the IRS that I am currently subject to backup withholding because I have failed to report all interest and dividends on my tax return. If I am exempt from backup withholding, I will write the word "Exempt" here: _____. (For further information, see "Payees and Payments Exempt from Backup Withholding" on IRS Form W-9, a copy of which can be obtained from a Deutsche Banc Alex. Brown Investment Representative.)

**Under penalties of perjury, I certify that:** (1) The number shown on this form is my correct Taxpayer Identification Number (or I am waiting for a number to be issued to me), and (2) I am not subject to backup withholding because (a) I am exempt from backup withholding or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding.

BY SIGNING BELOW I ACKNOWLEDGE THAT I HAVE RECEIVED, READ AND AGREE TO THE TERMS OF THIS AGREEMENT.

**The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding. If this is a Joint Account, all account owners must sign.**

I ACKNOWLEDGE THAT MUTUAL FUNDS AND OTHER SECURITIES ARE NOT INSURED BY THE FDIC, ARE NOT DEPOSITS OR OTHER OBLIGATIONS OF, OR GUARANTEED BY, ANY BANK, AND ARE SUBJECT TO INVESTMENT RISK, INCLUDING POSSIBLE LOSS OF THE PRINCIPAL INVESTED.

THIS AGREEMENT CONTAINS A PRE-DISPUTE ARBITRATION CLAUSE AT PARAGRAPH 19.

Signature _____  CO-TRUSTEE; MEMBER  Date 1/2/00

Social Security or Employer ID No. _____ 310-44 0 0 353

Signature _____  CO-TRUSTEE; MEMBER  Date 1/2/00

Social Security or Employer ID No. _____

Signature _____  Date _____

Social Security or Employer ID No. _____

**22b. Certification — Non-U.S. Resident**

Permanent Residence Address: _____

_____

Type of Beneficial Owner: _____

Country of Incorporation or Organization: _____

By signing below, I hereby certify under penalties of perjury, (1) that (a) I am the beneficial owner of all the income earned in My Account(s), (b) I am neither a citizen nor a resident of the U.S. (and I have not made an election to be treated as a resident because of my marriage to a citizen or resident), (c) I have not been and do not intend to be present in the U.S. for 183 days or more during any calendar year in which this Agreement is in effect, and (d) I am not a former citizen or long-term resident of the United States subject to section 877 (relating to certain acts of expatriation) or (2) if signing on behalf of a corporation, partnership, trust or estate, that I am authorized to sign for the payee named on My Account(s) and such payee (a) is the beneficial owner of all the income earned in My Account(s) and (b) is not a United States person and (3) that in either case, I am neither engaged, nor expect to be, or any such named payee is not and does not expect to be, engaged during the year, in a U.S. trade or business that has effectively connected income from transactions within My Account(s).

In addition, if I, or any such named payee, is claiming a United States tax treaty benefit, I hereby certify, under penalties of perjury, that I, or any such named payee, is a resident of _____ within the meaning of the income tax treaty between the United States and that country. If required, a U.S. Taxpayer Identification Number is included above. I also certify under penalties of perjury that the named payee meets the requirements of the article in the applicable treaty dealing with limitations on benefits, if any, and derives the income for which the treaty benefits are claimed.

Under penalties of perjury, I declare that I have examined the information provided for in Paragraph 22b and to the best of my knowledge and belief it is true, correct and complete.

BY SIGNING BELOW I ACKNOWLEDGE THAT I HAVE RECEIVED, READ AND AGREE TO THE TERMS OF THIS AGREEMENT.

The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding. If this is a Joint Account, all account owners must sign.

I ACKNOWLEDGE THAT MUTUAL FUNDS AND OTHER SECURITIES ARE NOT INSURED BY THE FDIC, ARE NOT DEPOSITS OR OTHER OBLIGATIONS OF, OR GUARANTEED BY, ANY BANK, AND ARE SUBJECT TO INVESTMENT RISK, INCLUDING POSSIBLE LOSS OF THE PRINCIPAL INVESTED.

THIS AGREEMENT CONTAINS A PRE-DISPUTE ARBITRATION CLAUSE AT PARAGRAPH 19.

Signature _____ Date _____

Social Security or Employer ID No. _____

Signature _____ Date _____

Social Security or Employer ID No. _____

**PLEASE READ AND SIGN BELOW TO OPEN A MARGIN ACCOUNT.**

I agree to open a margin account with you and acknowledge to you that, in addition to the preceding information, I understand each of the following:

- When I purchase securities on margin, I borrow money from you to finance that purchase; I may also borrow against collateral in my margin account for other purposes.

- I will be obligated to pay interest on all sums I borrow from you.

- I may be required to deliver additional collateral consisting of cash or securities to you to maintain my loan balance, as you require.

- By using a margin account to leverage my investments, I increase my risk of loss.

- Deutsche Banc Alex. Brown will deduct all interest charges from my account.

Deutsche Banc Alex. Brown represents to me that:

- My current margin debit balance will appear on each account statement Deutsche Banc Alex. Brown sends to me.

- Deutsche Banc Alex. Brown will charge me interest on a monthly basis and will disclose on my account statement the interest rate and total interest charge.

By signing below, I authorize you to open and carry a margin account for my benefit, and acknowledge that securities in my account may be loaned to Deutsche Banc Alex. Brown as principal or loaned to others. I also acknowledge that I have received, read and agree to the terms of this Margin Agreement.

I ACKNOWLEDGE THAT MUTUAL FUNDS AND OTHER SECURITIES ARE NOT INSURED BY THE FDIC, ARE NOT DEPOSITS OR OTHER OBLIGATIONS OF, OR GUARANTEED BY, ANY BANK, AND ARE SUBJECT TO INVESTMENT RISK, INCLUDING POSSIBLE LOSS OF THE PRINCIPAL INVESTED.

THIS AGREEMENT CONTAINS A PRE-DISPUTE ARBITRATION CLAUSE AT PARAGRAPH 19.

Signature _____ CO-TRUSTEE; MEMBER  Date 11/2/00

Signature _____ CO-TRUSTEE; MEMBER  Date 11/2/00

Signature _____ Date _____

Paragraph 22 of this Agreement includes a certification of the Taxpayer Identification Number designated for this account and a representation regarding the applicability of backup withholding. If Deutsche Banc Alex. Brown does not receive this certification, it will be required to withhold a portion of all payments to this account.

FOR OFFICE USE ONLY                Branch Manager approval for margin accounts:

Signature _____ Date 11/7/00

# EXHIBIT 5

Deutsche Banc Alex. Brown

**Deutsche Bank** ∕▚

# Account Agreement

TR2 INVESTMENTS LLC

Name(s)

**DB Alex. Brown LLC**
P.O. Box 515
Baltimore, MD 21203

ATTN: BILL P. TSOURAPAS

Address

1301 WEST 22ND STREET, SUITE 615

OAK BROOK, IL 60523

City

*223-18581-19*

Account Number

**IMPORTANT: PLEASE SIGN AND RETURN THIS ACCOUNT AGREEMENT IN THE ENCLOSED ENVELOPE.**

In consideration of DB Alex. Brown LLC (referred to herein as "Deutsche Banc Alex. Brown") accepting the Account(s) of the Undersigned, and agreeing to act as my broker, I agree to the following with respect to each of My Account(s) with you, in which I currently or in the future have an interest, for the extension of credit or the purchase or sale of securities, options or other property. Throughout this Agreement, "I," "me," "my," "we" and "us" and "the undersigned" refer to the person(s) whose signature(s) appear(s) below and all others who are legally obligated on this account. "Account(s) of the Undersigned" and "My Account(s)" shall mean each and every account in the name of the undersigned and each and every account in which the undersigned may have an interest. "You" and "your" refer to DB Alex. Brown LLC, its subsidiaries, affiliates, officers, directors, agents and employees. DB Alex. Brown LLC is a subsidiary of Deutsche Bank AG. As used herein, the term "affiliate of Deutsche Bank" means Deutsche Bank AG and its subsidiaries and affiliates. Each of Deutsche Bank and its affiliates is a separately incorporated legal entity, none of which is responsible for the obligations of the others. "Securities and Other Property" shall include, but shall not be limited to, money and securities, financial instruments, commodities of every kind and nature, and all contracts and options relating to any thereof (whether for present or future delivery), owned by the undersigned or in which the undersigned has an interest. Where the context requires, the singular shall be plural and the plural shall be singular.

1. **Representations**

   Unless I have advised you otherwise in writing, I represent that I am of legal age, that I am not an employee or member of any securities exchange (or corporation of which any exchange owns a majority of the capital stock), the National Association of Securities Dealers, Inc., or of any broker-dealer, nor am I a senior officer of any bank, savings and loan institution, insurance company, registered investment company, registered investment advisory firm or institution that purchases securities, nor am I a member of the immediate family of such a person. I further represent that I am financially capable of satisfying any obligations undertaken through My Account(s) and that no one except the persons named on the account(s) has any interest in the account(s). I will promptly notify you in writing if any of the above circumstances change. I acknowledge that the purchase and sale of securities entails substantial economic risk, and I represent to you that I knowingly and willingly assume such risk.

2. **Applicable Rules and Regulations**

   All transactions in My Account(s) shall be subject to the constitution, rules, regulations, customs and usages of the exchange or market, and its clearing house, if any, where the transactions are executed. Transactions shall also be subject to the provisions of federal and state securities laws, as amended, and to the rules and regulations of the Securities and Exchange Commission and the Board of Governors of the Federal Reserve System. You shall not be liable for any loss caused directly or indirectly by your compliance with such rules or regulations or by government restrictions, exchange or market rulings, suspension of trading, war, or other conditions beyond your control.

3. **Confirmations, Statements and Written Communications**

   **I agree to notify you in writing, within ten (10) days of your sending me a confirmation, of any objection I have to any transaction in My Account(s). In the absence of such written notification, I agree that all transactions for My Account(s) will be final and binding on me.** Confirmations of transactions, as well as other communications, may be sent to the address I provided to you or to such other address I may hereafter give to you in writing, and all communications so sent, whether by mail, private carrier, facsimile, messenger or otherwise, shall be deemed given to me, whether actually received or not. Unless I advise you in writing to the contrary, you may disclose my name and address to the issuers of securities which you hold for me.

4. **Aggregation of Orders and Average Prices**

   I authorize you, at your discretion, to aggregate orders for My Account(s) with other customer orders. I recognize that in so doing, I may receive an average price for my orders which may be different from the price(s) I might have received had my orders not been aggregated. I understand that this practice may also result in my orders being only partially completed.

5. **Cash Accounts.**

   This paragraph relates to and is effective solely with respect to cash accounts: (i) The undersigned will promptly make full cash payment for each security purchased, unless funds sufficient therefor are already held in the account; (ii) the undersigned does not contemplate selling any security before it is paid for as provided in the preceding clause; (iii) the undersigned will own each security sold at the time of sale, unless such security is already held in the account, will promptly deliver such security thereto; and (iv) the undersigned will promptly make full cash payment of any amount which may become due in order to meet necessary requests for additional deposits or, with respect to any unissued security purchased or sold, to mark to the market.

6. **Short and Long Orders; Deliveries and Settlements**

   I agree that, in giving orders to sell, all "short" sales will be designated by me as "short" and all other sales will be designated by you as "long." "Short sale" means any sale of a security not owned by me or any sale that is consummated on settlement date by delivery of a borrowed security. I also agree that you may, at your discretion, immediately cover any short sales in My Account(s), without prior notice. My failure to designate a sale order as "short" is a representation on my part that I own the security free of restriction, and if the security is not in your possession at the time of the sale, I agree to deliver the security to you by settlement date. In case of non-delivery of a security, you are authorized to purchase the security to cover my position and charge any loss, commissions and fees to My Account(s). I agree that if you fail to receive payment for securities I have purchased you may, without prior demand or notice, sell those securities or other property held by you in any of My Account(s)s with you and any loss resulting therefrom will be charged to such account(s). I authorize you, at your discretion, to request and obtain extension(s) of my time to make payment for securities I purchase, as provided for by Federal Reserve Bank Regulation T.

AA2 (12/99)

7. **Authority to Borrow**

In case of the sale of any security or other property by you at my direction and your inability to timely deliver the same to the purchaser by reason of my failure to supply you therewith, I authorize you to purchase or borrow any security or other property necessary to make the required delivery, and I agree to be responsible for any loss or cost, including interest, which you sustain as a result of my failure to make delivery to you.

8. **Interest Charges**

I acknowledge that debit balances in my cash or margin account, including but not limited to those arising from my failure to make payment by settlement date for securities purchased, will be charged interest at the then current rate, in accordance with your usual custom. Interest will be computed on the net daily debit balance, which is computed by combining all debit balances and credit balances in each account with the exception of credit balances associated with short security positions. I acknowledge receipt of your statement regarding interest charges and that you may charge an account maintenance fee with respect to inactive accounts.

9. **Credit Information and Investigation**

I authorize you to obtain reports concerning my credit standing and business conduct at your discretion. I also authorize you and any affiliate of Deutsche Bank (including, without limitation, Deutsche Bank AG) to share among such affiliates such information and any other confidential information you and such affiliate(s) may have about me and My Account(s).

10. **Satisfaction of Indebtedness**

I agree to satisfy, upon demand, any indebtedness, including any interest and commission charges. I further agree to pay the reasonable costs and expenses of collection of any amount I owe you, including reasonable attorney's fees and court costs.

11. **Liens**

I hereby grant to you and all affiliates of Deutsche Bank AG a security interest in all securities and other property in your possession or in the possession of any of your affiliates in which I have an interest in order to secure any and all indebtedness or any other of my obligations to you or any affiliate of Deutsche Bank AG. All such securities and other property shall be held as security for the payment of any such obligations or indebtedness in any account with you in which I have an interest, and you may, in your discretion, at any time and without prior notice, sell and/or transfer any or all securities and other property in order to satisfy such obligations. In enforcing this lien, you shall have the discretion to determine which securities and property are to be sold and/or which contracts are to be closed.

12. **Margin Maintenance, Calls for Additional Collateral, Liquidations and Covering Short Positions**

If I engage in margin transactions, I will maintain such securities and other property in My Account(s) for margin purposes as you shall require from time to time in your sole discretion for any reason whatsoever. You shall have the right in accordance with your general policies regarding margin maintenance requirements, as such may be modified or amended from time to time, to require additional collateral or the liquidation of any securities and other property whenever in your sole discretion you consider it necessary for your protection. You may do so under circumstances which include, but are not limited to, the failure to promptly meet any call for additional collateral, the filing of a petition in bankruptcy, the appointment of a receiver by or against me or the attachment or levy against any account with you in which I have an interest. In such event, you are authorized to sell any and all securities and other property in any of My Account(s) with you whether carried individually or jointly with others, to buy all securities or other property which may be short in such account, to cancel any open orders and to close any or all outstanding contracts, all without demand for margin or additional margin, notice of sale or purchase, or other notice or advertisement, each of which is expressly waived. Any such sales or purchases may be made at your discretion on any exchange or other market where such business is usually transacted or at public auction or private sale, and you may be the purchaser for your own account. I understand that any prior demand, or call, or prior notice of the time and place of such sale or purchase shall not be considered a waiver of your right to sell or buy without demand or notice as provided herein.

13. **Loan or Pledge of Securities and Other Property**

Within the limitations imposed by applicable law, all securities and other property now or hereafter held, carried or maintained by you in your possession that have not been fully paid for or are held in a margin account may be lent, either to yourself or to others, pledged and repledged by you, without notice to me, either separately or in common with other securities and other property of your other customers for any amount due in any account with you in which I have an interest, or for any greater amount, and you may do so without retaining in your possession or control for delivery a like amount of similar securities or other property. I understand that while securities held for My Account(s) are loaned out, I will lose voting rights attendant to such securities.

14. **Correspondent Account; No Agency**

If My Account(s) has been introduced to you by arrangement with another broker-dealer, you are authorized to accept from such other broker-dealer, without inquiry or investigation by you (i) orders for the purchase or sale of securities or other property for My Account(s), on margin or otherwise, and (ii) any other instructions concerning My Account(s). I understand and agree that such other broker-dealer is not your agent and that you shall have no responsibility or liability to me for any acts or omissions of such other broker-dealer, its officers, employees or agents.

15. **Joint Accounts**

If this is a Joint Account, we agree that each of us shall have authority with respect to this account to deal with you as if each of us alone were the account owner, all without notice to the other account owner(s). We agree that notice to any account owner shall be deemed to be notice to all account owners. Each account owner shall be jointly and severally liable for this account. You may follow the instructions of any of us concerning this account and make deliveries to any of us, of any or all property and payment, even if such deliveries and/or payments shall be made to one of us personally, and not to all of the account owners. You shall be under no obligation to inquire into the purpose of any such demand for delivery of securities or payment, and you shall not be bound to see to the application or disposition of the securities and/or monies so delivered or paid to any of us. Notwithstanding the foregoing, you are authorized, in your discretion, to require joint action by all of the account owners with respect to any matter concerning the account, including the giving or cancellation of orders and the withdrawal of monies, securities or other property. We agree that our account will be carried on our books in the form reflected by the above account name. In the event of the death of any of us, the survivor(s) shall immediately give you written notice thereof, and you may, before or after receiving such notice, take such action, require such documents, retain such securities and/or restrict transactions in the account as you may deem advisable to protect you against any tax, liability, penalty or loss under any present or future laws or otherwise. Any cost resulting from the death of any of us, or through the exercise by any decedent's estate or representatives of any rights in the account shall be chargeable against the interest of the survivor(s) as well as against the interest of the estate of the decedent.

16. **Foreign Securities**

With respect to debt or equity securities of non-U.S. issuers or debt or deposit instruments of non-U.S. banks ("Foreign Securities"), I acknowledge and understand that: (i) Foreign Securities are, in most cases, not registered with the Securities and Exchange Commission or listed on a U.S. securities exchange; (ii) Foreign Securities, particularly those of issuers in the so-called "emerging markets" are often illiquid, are sometimes subject to legal and/or contractual transfer restrictions, and it may be difficult or impossible to dispose of such Foreign Securities prior to the maturity thereof or to determine the market price thereof for valuation purposes; (iii) Foreign Securities, and the issuer, guarantors or other obligors with respect thereto ("Obligors") are subject to a variety or risks in addition to those typically faced in the case of U.S. securities and issuers, including, among other things, currency risk, exchange controls, confiscatory taxation, withholding, limitations on the rights of security holders, civil unrest, hyperinflation, discriminatory treatment of foreign investors, etc.; (iv) there is often less information available regarding Obligors, and such information may be more difficult to interpret, than is the case with U.S. issuers whose securities are subject to the periodic reporting requirements under U.S. securities laws; (v) there may be no effective means to determine if an Obligor is in default of its obligations in respect of its debt securities or other financial obligations (and you specifically acknowledge that Foreign Securities purchased by you may be in default at the time of purchase); (vi) the Foreign Securities in question may be unrated; and (vii) such securities are not suitable for all investors.

I authorize Deutsche Banc Alex. Brown to purchase Foreign Securities (and, in the case of Foreign Securities denominated in foreign currencies, the relevant foreign currencies) from or sell Foreign Securities (and foreign exchange) to an affiliate of Deutsche Bank AG. In dealing with such affiliates, such affiliates may take their normal commissions, spreads or other fees without regard to Deutsche Banc Alex. Brown's relationship with me.

**17. Acknowledgment of Possible Conflicts of Interest**

I acknowledge that the advice provided to me by your employees may differ from the advice or the timing or nature of action recommended by or taken by other individuals or groups at Deutsche Banc Alex. Brown and/or affiliates of Deutsche Bank AG, whether acting as principal or agent. I understand that you provide investment advice, portfolio management and execution services for many clients and, in addition, act as principals in various markets. Given these different roles, individuals and groups at Deutsche Banc Alex. Brown and affiliates of Deutsche Bank AG are seldom of one view as to an investment strategy and will often pursue differing or conflicting strategies. Your employees shall have no obligation to recommend to me or inform me of strategies being pursued by you or by other clients. I also acknowledge that: Deutsche Banc Alex. Brown and affiliates of Deutsche Bank AG may perform services for or solicit business from issuers whose securities are recommended by your employees; Deutsche Banc Alex. Brown and affiliates of Deutsche Bank AG may be paid fees by Registered Investment Companies or other investment vehicles, including without limitation fees for acting as investment advisor, administrator, custodian and transfer agent; and Deutsche Banc Alex. Brown and affiliates of Deutsche Bank AG act as brokers, principals, and/or market makers in certain markets and may do so in transactions with me.

**18. No FDIC Insurance, Not Obligations of Any Bank**

I understand that the assets in My Account(s) are subject to the risk of partial or total loss due to market fluctuations or the insolvency of the issuer(s).

The assets in My Account(s) (including all related cash balances and shares of any mutual fund) are not deposits or other obligations of Deutsche Bank AG or any other bank, are not guaranteed by Deutsche Bank AG and are not insured by the Federal Deposit Insurance Corporation ("FDIC").

I may from time to time be offered investment products as to which Deutsche Bank AG is an obligor. These products may be complex, may not provide for the return of the full amount of principal invested or for the payment of a fixed rate of interest (or any interest) and will not usually be subject to FDIC insurance. I will assume they are not subject to FDIC insurance and that such products may not be protected as to principal or interest unless Deutsche Bank AG states in writing that a particular product is subject to FDIC insurance.

**19. Arbitration**

I understand that: (1) Arbitration is final and binding on the parties. (2) The parties are waiving their right to seek remedies in court, including the right to jury trial. (3) Pre-arbitration discovery is generally more limited than and different from court proceedings. (4) The arbitrators' award is not required to include factual findings or legal reasoning and any party's right to appeal or to seek modification of rulings by the arbitrators is strictly limited. (5) The panel of arbitrators would typically include a minority of arbitrators who were or are affiliated with the securities industry.

I agree to arbitrate with you any controversies which may arise, whether or not based on events occurring prior to the date of this agreement, including any controversy arising out of or relating to any account with you, to the construction, performance or breach of any agreement with you, or to transactions with or through you, only before the New York Stock Exchange or the National Association of Securities Dealers Regulation, Inc., at my election. I agree that I shall make my election by registered mail to you, at P.O. Box 515, Baltimore, MD 21202, Attention Director of Compliance. If my election is not received by you within ten (10) calendar days of receipt of a written request from you that I make an election, then you may elect the forum before which the arbitration shall be held.

Neither you nor I waive any right to seek equitable relief pending arbitration. No person shall bring a putative or certified class action to arbitration, nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action; or who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the putative class action until (1) the class certification is denied; or (2) the class is decertified; or (3) the customer is excluded from the class by the court. Such forbearance to enforce an agreement to arbitrate shall not constitute a waiver or any rights under this agreement except to the extent stated herein.

**20. Miscellaneous**

This Agreement shall be binding upon my heirs, executors, administrators, personal representatives and permitted assigns. It shall inure to the benefit of your successors and assigns to whom you may transfer My Account(s). This Agreement contains the entire understanding between us concerning the subject matter of this Agreement. I agree that Deutsche Banc Alex. Brown has the right to amend this Agreement at any time by sending written notice of such amendment to me. Any such amendment shall be effective as of the date established by Deutsche Banc Alex. Brown. If any provision of this Agreement is held to be invalid, void or unenforceable by reason of any law, rule, administrative or judicial decision, that determination shall not affect the validity of the remaining provisions of this Agreement. This Agreement shall be deemed to have been made in the State of New York and shall be construed, and the rights of the parties determined, in accordance with the laws of the State of New York and the United States, as amended, without giving effect to the choice of law or conflict-of-laws provisions thereof.

**21. Paragraph Headings**

Paragraph headings are for convenience only and shall not affect the meaning or interpretation of any provision of this Agreement.

**Please Complete 22a or 22b as applicable.**

**22a. Certification — Taxpayer Identification Number**

**Certification Instructions:** I will cross out Item 2 below if I have been notified by the IRS that I am currently subject to backup withholding because I have failed to report all interest and dividends on my tax return. If I am exempt from backup withholding, I will write the word "Exempt" here: _____. (For further information, see "Payees and Payments Exempt from Backup Withholding" on IRS Form W-9, a copy of which can be obtained from a Deutsche Banc Alex. Brown Investment Representative.)

**Under penalties of perjury, I certify that: (1) The number shown on this form is my correct Taxpayer Identification Number (or I am waiting for a number to be issued to me), and (2) I am not subject to backup withholding because (a) I am exempt from backup withholding or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest and dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding.**

BY SIGNING BELOW I ACKNOWLEDGE THAT I HAVE RECEIVED, READ AND AGREE TO THE TERMS OF THIS AGREEMENT.

**The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding. If this is a Joint Account, all account owners must sign.**

I ACKNOWLEDGE THAT MUTUAL FUNDS AND OTHER SECURITIES ARE NOT INSURED BY THE FDIC, ARE NOT DEPOSITS OR OTHER OBLIGATIONS OF, OR GUARANTEED BY, ANY BANK, AND ARE SUBJECT TO INVESTMENT RISK, INCLUDING POSSIBLE LOSS OF THE PRINCIPAL INVESTED. THIS AGREEMENT CONTAINS A PRE-DISPUTE ARBITRATION CLAUSE AT PARAGRAPH 19.

Signature _____    CO-TRUSTEE; MEMBER    Date _____

Social Security or Employer ID No. _____

Signature _____    CO-TRUSTEE; MEMBER    Date 11/8/6

Social Security or Employer ID No. _____

Signature _____    Date _____

Social Security or Employer ID No. _____

**22b. Certification — Non-U.S. Resident**

Permanent Residence Address: _____

_____

Type of Beneficial Owner: _____

Country of Incorporation or Organization: _____

By signing below, I hereby certify under penalties of perjury (1) that (a) I am the beneficial owner of all the income earned in My Account(s), (b) I am neither a citizen nor a resident of the U.S. (and I have not made an election to be treated as a resident because of my marriage to a citizen or resident, (c) I have not been and do not intend to be present in the U.S. for 183 days or more during any calendar year in which this Agreement is in effect, and (d) I am not a former citizen or long-term resident of the United States subject to section 877 (relating to certain acts of expatriation) or (2) if signing on behalf of a corporation, partnership, trust or estate, that I am authorized to sign for the payee named on My Account(s) and such payee (a) is the beneficial owner of all the income earned in My Account(s) and (b) is not a United States person and (3) that in either case, I am neither engaged, nor expect to be, or any such named payee is not and does not expect to be, engaged during the year, in a U.S. trade or business that has effectively connected income from transactions within My Account(s).

In addition, if I, or any such named payee, is claiming a United States tax treaty benefit, I hereby certify, under penalties of perjury, that I, or any such named payee, is a resident of _____ within the meaning of the income tax treaty between the United States and that country. If required, a U.S. Taxpayer Identification Number is included above. I also certify under penalties of perjury that the named payee meets the requirements of the article in the applicable treaty dealing with limitations on benefits, if any, and derives the income for which the treaty benefits are claimed.

Under penalties of perjury, I declare that I have examined the information provided for in Paragraph 22b and to the best of my knowledge and belief it is true, correct, and complete.

BY SIGNING BELOW I ACKNOWLEDGE THAT I HAVE RECEIVED, READ AND AGREE TO THE TERMS OF THIS AGREEMENT.

The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding. If this is a Joint Account, all account owners must sign.

I ACKNOWLEDGE THAT MUTUAL FUNDS AND OTHER SECURITIES ARE NOT INSURED BY THE FDIC, ARE NOT DEPOSITS OR OTHER OBLIGATIONS OF, OR GUARANTEED BY, ANY BANK, AND ARE SUBJECT TO INVESTMENT RISK, INCLUDING POSSIBLE LOSS OF THE PRINCIPAL INVESTED.

THIS AGREEMENT CONTAINS A PRE-DISPUTE ARBITRATION CLAUSE AT PARAGRAPH 19.

Signature _____ Date_____

Social Security or Employer ID No. _____

Signature _____ Date _____

Social Security or Employer ID No. _____

## PLEASE READ AND SIGN BELOW TO OPEN A MARGIN ACCOUNT.

I agree to open a margin account with you and acknowledge to you that, in addition to the preceding information, I understand each of the following:

- When I purchase securities on margin, I borrow money from you to finance that purchase; I may also borrow against collateral in my margin account for other purposes.
- I will be obligated to pay interest on all sums I borrow from you.
- I may be required to deliver additional collateral consisting of cash or securities to you to maintain my loan balance, as you require.
- By using a margin account to leverage my investments, I increase my risk of loss.
- Deutsche Banc Alex. Brown will deduct all interest charges from my account.

Deutsche Banc Alex. Brown represents to me that:

- My current margin debit balance will appear on each account statement Deutsche Banc Alex. Brown sends to me.
- Deutsche Banc Alex. Brown will charge me interest on a monthly basis and will disclose on my account statement the interest rate and total interest charge.

By signing below, I authorize you to open and carry a margin account for my benefit, and acknowledge that securities in my account may be loaned to Deutsche Banc Alex. Brown as principal or loaned to others. I also acknowledge that I have received, read and agree to the terms of this Margin Agreement.

I ACKNOWLEDGE THAT MUTUAL FUNDS AND OTHER SECURITIES ARE NOT INSURED BY THE FDIC, ARE NOT DEPOSITS OR OTHER OBLIGATIONS OF, OR GUARANTEED BY, ANY BANK, AND ARE SUBJECT TO INVESTMENT RISK, INCLUDING POSSIBLE LOSS OF THE PRINCIPAL INVESTED.

THIS AGREEMENT CONTAINS A PRE-DISPUTE ARBITRATION CLAUSE AT PARAGRAPH 19.

Signature _____ CO-TRUSTEE; MEMBER Date 11/2/00

Signature _____ CO-TRUSTEE; MEMBER Date 11/2/00

Signature _____ Date _____

Paragraph 22 of this Agreement includes a certification of the Taxpayer Identification Number designated for this account and a representation regarding the applicability of backup withholding. If Deutsche Banc Alex. Brown does not receive this certification, it will be required to withhold a portion of all payments to this account.

---

FOR OFFICE USE ONLY                 Branch Manager approval for margin accounts:

Signature _____ Date 11/2/00

# EXHIBIT 6

Deutsche Banc Alex. Brown

**Deutsche Bank** ◪

# Account Agreement

Name(s)
TR3 INVESTMENTS LLC

**DB Alex. Brown LLC**
P.O. Box 515
Baltimore, MD 21203

Address
ATTN: BILL P. TSOURAPAS

1301 WEST 22ND STREET, SUITE 615

City
OAK BROOK, IL 60523

Account Number
*223-78582-18*

**IMPORTANT: PLEASE SIGN AND RETURN THIS ACCOUNT AGREEMENT IN THE ENCLOSED ENVELOPE.**

In consideration of DB Alex. Brown LLC (referred to herein as "Deutsche Banc Alex. Brown") accepting the Account(s) of the Undersigned, and agreeing to act as my broker, I agree to the following with respect to each of My Account(s) with you, in which I currently or in the future have an interest, for the extension of credit or the purchase or sale of securities, options or other property. Throughout this Agreement, "I," "me," "my," "we" and "us" and "the undersigned" refer to the person(s) whose signature(s) appear(s) below and all others who are legally obligated on this account. "Account(s) of the Undersigned" and "My Account(s)" shall mean each and every account in the name of the undersigned and each and every account in which the undersigned may have an interest. "You" and "your" refer to DB Alex. Brown LLC, its subsidiaries, affiliates, officers, directors, agents and employees. DB Alex. Brown LLC is a subsidiary of Deutsche Bank AG. As used herein, the term "affiliate of Deutsche Bank" means Deutsche Bank AG and its subsidiaries and affiliates. Each of Deutsche Bank and its affiliates is a separately incorporated legal entity, none of which is responsible for the obligations of the others. "Securities and Other Property" shall include, but shall not be limited to, money and securities, financial instruments, commodities of every kind and nature, and all contracts and options relating to any thereof (whether for present or future delivery), owned by the undersigned or in which the undersigned has an interest. Where the context requires, the singular shall be plural and the plural shall be singular.

1. **Representations**

   Unless I have advised you otherwise in writing, I represent that I am of legal age, that I am not an employee or member of any securities exchange (or corporation of which any exchange owns a majority of the capital stock), the National Association of Securities Dealers, Inc., or of any broker-dealer, nor am I a senior officer of any bank, savings and loan institution, insurance company, registered investment company, registered investment advisory firm or institution that purchases securities, nor am I a member of the immediate family of such a person. I further represent that I am financially capable of satisfying any obligations undertaken through My Account(s) and that no one except the persons named on the account(s) has any interest in the account(s). I will promptly notify you in writing if any of the above circumstances change. I acknowledge that the purchase and sale of securities entails substantial economic risk, and I represent to you that I knowingly and willingly assume such risk.

2. **Applicable Rules and Regulations**

   All transactions in My Account(s) shall be subject to the constitution, rules, regulations, customs and usages of the exchange or market, and its clearing house, if any, where the transactions are executed. Transactions shall also be subject to the provisions of federal and state securities laws, as amended, and to the rules and regulations of the Securities and Exchange Commission and the Board of Governors of the Federal Reserve System. You shall not be liable for any loss caused directly or indirectly by your compliance with such rules or regulations or by government restrictions, exchange or market rulings, suspension of trading, war, or other conditions beyond your control.

3. **Confirmations, Statements and Written Communications**

   **I agree to notify you in writing, within ten (10) days of your sending me a confirmation, of any objection I have to any transaction in My Account(s). In the absence of such written notification, I agree that all transactions for My Account(s) will be final and binding on me.** Confirmations of transactions, as well as other communications, may be sent to the address I provided to you or to such other address I may hereafter give to you in writing, and all communications so sent, whether by mail, private carrier, facsimile, messenger or otherwise, shall be deemed given to me, whether actually received or not. Unless I advise you in writing to the contrary, you may disclose my name and address to the issuers of securities which you hold for me.

4. **Aggregation of Orders and Average Prices**

   I authorize you, at your discretion, to aggregate orders for My Account(s) with other customer orders. I recognize that in so doing, I may receive an average price for my orders which may be different from the price(s) I might have received had my orders not been aggregated. I understand that this practice may also result in my orders being only partially completed.

5. **Cash Accounts.**

   This paragraph relates to and is effective solely with respect to cash accounts: (i) The undersigned will promptly make full cash payment for each security purchased, unless funds sufficient therefor are already held in the account; (ii) the undersigned does not contemplate selling any security before it is paid for as provided in the preceding clause; (iii) the undersigned will own each security sold at the time of sale, and, unless such security is already held in the account, will promptly deliver such security thereto; and (iv) the undersigned will promptly make full cash payment of any amount which may become due in order to meet necessary requests for additional deposits or, with respect to any unissued security purchased or sold, to mark to the market.

6. **Short and Long Orders; Deliveries and Settlements**

   I agree that, in giving orders to sell, all "short" sales will be designated by me as "short" and all other sales will be designated by you as "long". "Short sale" means any sale of a security not owned by me or any sale that is consummated on settlement date by delivery of a borrowed security. I also agree that you may, at your discretion, immediately cover any short sales in My Account(s), without prior notice. My failure to designate a sale order as "short" is a representation on my part that I own the security free of restriction, and if the security is not in your possession at the time of the sale, I agree to deliver the security to you by settlement date. In case of non-delivery of a security, you are authorized to purchase the security to cover my position and charge any loss, commissions and fees to My Account(s). I agree that if you fail to receive payment for securities I have purchased you may, without prior demand or notice, sell those securities or other property held by you in any of My Account(s) with you and any loss resulting therefrom will be charged to such account(s). I authorize you, at your discretion, to request and obtain extension(s) of my time to make payment for securities I purchase, as provided by Federal Reserve Bank Regulation T.

AA2 (12/99)

**7. Authority to Borrow**

In case of the sale of any security or other property by you at my direction and your inability to timely deliver the same to the purchaser by reason of my failure to supply you therewith, I authorize you to purchase or borrow any security or other property necessary to make the required delivery, and I agree to be responsible for any loss or cost, including interest, which you sustain as a result of my failure to make delivery to you.

**8. Interest Charges**

I acknowledge that debit balances in my cash or margin account, including but not limited to those arising from my failure to make payment by settlement date for securities purchased, will be charged interest at the then current rate, in accordance with your usual custom. Interest will be computed on the net daily debit balance, which is computed by combining all debit balances and credit balances in each account with the exception of debit balances associated with short security positions. I acknowledge receipt of your statement regarding interest charges and that you may charge an account maintenance fee with respect to inactive accounts.

**9. Credit Information and Investigation**

I authorize you to obtain reports concerning my credit standing and business conduct at your discretion. I also authorize you and any affiliate of Deutsche Bank (including, without limitation, Deutsche Bank AG) to share among such affiliates such information and any other confidential information you and such affiliate(s) may have about me and My Account(s).

**10. Satisfaction of Indebtedness**

I agree to satisfy, upon demand, any indebtedness, including any interest and commission charges. I further agree to pay the reasonable costs and expenses of collection of any amount I owe you, including reasonable attorney's fees and court costs.

**11. Liens**

I hereby grant to you and all affiliates of Deutsche Bank AG a security interest in all securities and other property in your possession or in the possession of any of your affiliates in which I have an interest in order to secure any and all indebtedness or any other of my obligations to you or any affiliate of Deutsche Bank AG. All such securities and other property shall be held as security for the payment of any such obligations or indebtedness in any account with you in which I have an interest, and you may, in your discretion, at any time and without prior notice, sell and/or transfer any or all securities and other property in order to satisfy such obligations. In enforcing this lien, you shall have the discretion to determine which securities and property are to be sold and/or which contracts are to be closed.

**12. Margin Increases, Calls for Additional Collateral, Liquidations and Covering Short Positions**

If I engage in margin transactions, I will maintain such securities and other property in My Account(s) for margin purposes as you shall require from time to time in your sole discretion for any reason whatsoever. You shall have the right in accordance with your general policies regarding margin maintenance requirements, as such may be modified or amended from time to time, to require additional collateral or the liquidation of any securities and other property whenever in your sole discretion you consider it necessary for your protection. You may do so under circumstances which include, but are not limited to, the failure to promptly meet any call for additional collateral, the filing of a petition in bankruptcy, the appointment of a receiver by or against me or the attachment or levy against any account with you in which I have an interest. In such event, you are authorized to sell any and all securities and other property in any of My Account(s) with you whether carried individually or jointly with others, to buy all securities or other property which may be short in such account, to cancel any open orders and to close any or all outstanding contracts, all without demand for margin or additional margin, notice of sale or purchase, or other notice or advertisement, each of which is expressly waived. Any such sales or purchases may be made at your discretion on any exchange or other market where such business is usually transacted or at public auction or private sale, and you may be the purchaser for your own account. I understand that any prior demand, or call, or prior notice of the time and place of such sale or purchase shall not be considered a waiver of your right to sell or buy without demand or notice as provided herein.

**13. Loan or Pledge of Securities and Other Property**

Within the limitations imposed by applicable law, all securities and other property now or hereafter held, carried or maintained by you in your possession that have not been fully paid for or are held in a margin account may be lent, either to yourself or to others, pledged and repledged by you, without notice to me, either separately or in common with other securities and other property of your other customers for any amount due in any account with you in which I have an interest, or for any greater amount, and you may do so without retaining in your possession or control for delivery a like amount of similar securities or other property. I understand that while securities held for My Account(s) are loaned out, I will lose voting rights attendant to such securities.

**14. Correspondent Account; No Agency**

If My Account(s) has been introduced to you by arrangement with another broker-dealer, you are authorized to accept from such other broker-dealer, without inquiry or investigation by you (i) orders for the purchase or sale of securities or other property for My Account(s), on margin or otherwise, and (ii) any other instructions concerning My Account(s). I understand and agree that such other broker-dealer is not your agent and that you shall have no responsibility or liability to me for any acts or omissions of such other broker-dealer, its officers, employees or agents.

**15. Joint Accounts**

If this is a Joint Account, we agree that each of us shall have authority with respect to this account to deal with you as if each of us alone were the account owner, all without notice to the other account owner(s). We agree that notice to any account owner shall be deemed to be notice to all account owners. Each account owner shall be jointly and severally liable for this account. You may follow the instructions of any of us concerning this account and make deliveries to any of us, of any or all property and payment, even if such deliveries and/or payments shall be made to one of us personally, and not to all of the account owners. You shall be under no obligation to inquire into the purpose of any such demand for delivery of securities or payment, and you shall not be bound to see to the application or disposition of the securities and/or monies so delivered or paid to any of us. Notwithstanding the foregoing, you are authorized, in your discretion, to require joint action by all of the account owners with respect to any matter concerning the account, including the giving or cancellation of orders and the withdrawal of monies, securities or other property. We agree that our account will be carried on your books in the form reflected by the above account name. In the event of the death of any of us, the survivor(s) shall immediately give you written notice thereof, and you may, before or after receiving such notice, take such action, require such documents, retain such securities and/or restrict transactions in the account as you may deem advisable to protect you against any tax, liability, penalty or loss under any present or future laws or otherwise. Any cost resulting from the death of any of us, or through the exercise by any decedent's estate or representatives of any rights in the account shall be chargeable against the interest of the survivor(s) as well as against the interest of the estate of the decedent.

**16. Foreign Securities**

With respect to debt or equity securities of non-U.S. issuers or debt or deposit instruments of non-U.S. banks ("Foreign Securities"), I acknowledge and understand that: (i) Foreign Securities are, in most cases, not registered with the Securities and Exchange Commission or listed on a U.S. securities exchange; (ii) Foreign Securities, particularly those of issuers in the so-called "emerging markets" are often illiquid, are sometimes subject to legal and/or contractual transfer restrictions, and it may be difficult or impossible to dispose of such Foreign Securities prior to the maturity thereof or to determine the market price thereof for valuation purposes; (iii) Foreign Securities, and the issuer, guarantors or other obligors with respect thereto ("Obligors") are subject to a variety of risks in addition to those typically faced in the case of U.S. securities and issuers, including, among other things, currency risk, exchange controls, confiscatory taxation, withholding, limitations on the rights of security holders, civil unrest, hyperinflation, discriminatory treatment of foreign investors, etc.; (iv) there is often less information available regarding Obligors, and such information may be more difficult to interpret, than is the case with U.S. issuers whose securities are subject to the periodic reporting requirements under U.S. securities laws; (v) there may be no effective means to determine if an Obligor is in default of its obligations in respect of its debt securities or other financial obligations and you specifically acknowledge that Foreign Securities purchased by you may be in default at the time of purchase); (vi) the Foreign Securities in question may be unrated; and (vii) such securities are not suitable for all investors.

I authorize Deutsche Banc Alex. Brown to purchase Foreign Securities (and, in the case of Foreign Securities denominated in foreign currencies, the relevant foreign currencies) from or sell Foreign Securities (and foreign exchange) to an affiliate of Deutsche Bank AG. In dealing with such affiliates, such affiliates may take their normal commissions, spreads or other fees without regard to Deutsche Banc Alex. Brown's relationship with me.

### 17. Acknowledgment of Possible Conflicts of Interest

I acknowledge that the advice provided to me by your employees may differ from the advice or the timing or nature of action recommended by or taken by other individuals or groups at Deutsche Banc Alex. Brown and/or affiliates of Deutsche Bank AG, whether acting as principal or agent. I understand that you provide investment advice, portfolio management and execution services for many clients and, in addition, act as principals in various markets. Given these different roles, individuals and groups at Deutsche Banc Alex. Brown and affiliates of Deutsche Bank AG are seldom of one view as to an investment strategy and will often pursue differing or conflicting strategies. Your employees shall have no obligation to recommend to me or inform me of strategies being pursued by you or by other clients. I also acknowledge that: Deutsche Banc Alex. Brown and affiliates of Deutsche Bank AG may perform services for or solicit business from issuers whose securities are recommended by your employees; Deutsche Banc Alex. Brown and affiliates of Deutsche Bank AG may be paid fees by Registered Investment Companies or other investment vehicles, including without limitation fees for acting as investment advisor, administrator, custodian and transfer agent; and Deutsche Banc Alex. Brown and affiliates of Deutsche Bank AG act as brokers, principals, and/or market makers in certain markets and may do so in transactions with me.

### 18. No FDIC Insurance, Not Obligations of Any Bank

I understand that the assets in My Account(s) are subject to the risk of partial or total loss due to market fluctuations or the insolvency of the issuer(s).

The assets in My Account(s) (including all related cash balances and shares of any mutual fund) are not deposits or other obligations of Deutsche Bank AG or any other bank, are not guaranteed by Deutsche Bank AG and are not insured by the Federal Deposit Insurance Corporation ("FDIC").

I may from time to time be offered investment products as to which Deutsche Bank AG is an obligor. These products may be complex, may not provide for the return of the full amount of principal invested or for the payment of a fixed rate of interest (or any interest) and will not usually be subject to FDIC insurance. I will assume they are not subject to FDIC insurance and that such products may not be protected as to principal or interest unless Deutsche Bank AG states in writing that a particular product is subject to FDIC insurance.

### 19. Arbitration

I understand that: (1) Arbitration is final and binding on the parties. (2) The parties are waiving their right to seek remedies in court, including the right to jury trial. (3) Pre-arbitration discovery is generally more limited than and different from court proceedings. (4) The arbitrators' award is not required to include factual findings or legal reasoning and any party's right to appeal or to seek modification of rulings by the arbitrators is strictly limited. (5) The panel of arbitrators would typically include a minority of arbitrators who were or are affiliated with the securities industry.

I agree to arbitrate with you any controversies which may arise, whether or not based on events occurring prior to the date of this agreement, including any controversy arising out of or relating to any account with you, to the construction, performance or breach of any agreement with you, or to transactions with or through you, only before the New York Stock Exchange or the National Association of Securities Dealers Regulation, Inc., at my election. I agree that I shall make my election by registered mail to you, at P.O. Box 515, Baltimore, MD 21202, Attention Director of Compliance. If my election is not received by you within ten (10) calendar days of receipt of a written request from you that I make an election, then you may elect the forum before which the arbitration shall be held.

Neither you nor I waive any right to seek equitable relief pending arbitration. No person shall bring a putative or certified class action to arbitration, nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action; or who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the putative class action until (1) the class certification is denied; or (2) the class is decertified; or (3) the customer is excluded from the class by the court. Such forbearance to enforce an agreement to arbitrate shall not constitute a waiver or any rights under this agreement except to the extent stated herein.

### 20. Miscellaneous

This Agreement shall be binding upon my heirs, executors, administrators, personal representatives and permitted assigns. It shall inure to the benefit of your successors and assigns to whom you may transfer My Account(s). This Agreement contains the entire understanding between us concerning the subject matter of this Agreement. I agree that Deutsche Banc Alex. Brown has the right to amend this Agreement at any time by sending written notice of such amendment to me. Any such amendment shall be effective as of the date established by Deutsche Banc Alex. Brown. If any provision of this Agreement is held to be invalid, void or unenforceable by reason of any law, rule, administrative order or judicial decision, that determination shall not affect the validity of the remaining provisions of this Agreement. This Agreement shall be deemed to have been made in the State of New York and shall be construed, and the rights of the parties determined, in accordance with the laws of the State of New York and the United States, as amended, without giving effect to the choice of law or conflict-of-laws provisions thereof.

### 21. Paragraph Headings

Paragraph headings are for convenience only and shall not affect the meaning or interpretation of any provision of this Agreement.

**Please Complete 22a or 22b as applicable.**

### 22a. Certification — Taxpayer Identification Number

**Certification Instructions:** I will cross out item (2) below if I have been notified by the IRS that I am currently subject to backup withholding because I have failed to report all interest and dividends on my tax return. If I am exempt from backup withholding, I will write the word "Exempt" here: _____. (For further information, see "Payees and Payments Exempt from Backup Withholding" on IRS Form W-9, a copy of which can be obtained from a Deutsche Banc Alex. Brown Investment Representative.)

**Under penalties of perjury, I certify that:** (1) The number shown on this form is my correct Taxpayer Identification Number (or I am waiting for a number to be issued to me), and (2) I am not subject to backup withholding because (a) I am exempt from backup withholding or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest and dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding.

BY SIGNING BELOW I ACKNOWLEDGE THAT I HAVE RECEIVED, READ AND AGREE TO THE TERMS OF THIS AGREEMENT.

**The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding. If this is a Joint Account, all account owners must sign.**

I ACKNOWLEDGE THAT MUTUAL FUNDS AND OTHER SECURITIES ARE NOT INSURED BY THE FDIC, ARE NOT DEPOSITS OR OTHER OBLIGATIONS OF, OR GUARANTEED BY, ANY BANK, AND ARE SUBJECT TO INVESTMENT RISK, INCLUDING POSSIBLE LOSS OF THE PRINCIPAL INVESTED.

THIS AGREEMENT CONTAINS A PRE-DISPUTE ARBITRATION CLAUSE AT PARAGRAPH 19.

| | | |
|---|---|---|
| Signature _____ | CO-TRUSTEE; MEMBER | Date 11/2/00 |
| Social Security or Employer ID No. 316-44003560 | | |
| Signature _____ | CO-TRUSTEE; MEMBER | Date 11/2/00 |
| Social Security or Employer ID No. _____ | | |
| Signature _____ | | Date _____ |
| Social Security or Employer ID No. _____ | | |

**22b. Certification — Non-U.S. Resident**

Permanent Residence Address: _____

_____

Type of Beneficial Owner: _____

Country of Incorporation or Organization: _____

By signing below, I hereby certify under penalties of perjury, (1) that (a) I am the beneficial owner of all the income earned in My Account(s), (b) I am neither a citizen nor a resident of the U.S. (and I have not made an election to be treated as a resident because of my marriage to a citizen or resident), (c) I have not been and do not intend to be present in the U.S. for 183 days or more during any calendar year in which this Agreement is in effect, and (d) I am not a former citizen or long-term resident of the United States subject to section 877 (relating to certain acts of expatriation) or (2) if signing on behalf of a corporation, partnership, trust or estate, that I am authorized to sign for the payee named on My Account(s) and such payee (a) is the beneficial owner of all the income earned in My Account(s) and (b) is not a United States person and (3) that in either case, I am neither engaged, nor expect to be, or any such named payee is not and does not expect to be, engaged during the year, in a U.S. trade or business that has effectively connected income from transactions within My Account(s).

In addition, if I, or any such named payee, is claiming a United States tax treaty benefit, I hereby certify, under penalties of perjury, that I, or any such named payee, is a resident of _____ within the meaning of the income tax treaty between the United States and that country. If required, a U.S. Taxpayer Identification Number is included above. I also certify under penalties of perjury that the named payee meets the requirements of the article in the applicable treaty dealing with limitations on benefits, if any, and derives the income for which the treaty benefits are claimed.

Under penalties of perjury, I declare that I have examined the information provided for in Paragraph 22b and to the best of my knowledge and belief it is true, correct, and complete.

BY SIGNING BELOW I ACKNOWLEDGE THAT I HAVE RECEIVED, READ AND AGREE TO THE TERMS OF THIS AGREEMENT.

The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding. If this is a Joint Account, all account owners must sign.

I ACKNOWLEDGE THAT MUTUAL FUNDS AND OTHER SECURITIES ARE NOT INSURED BY THE FDIC, ARE NOT DEPOSITS OR OTHER OBLIGATIONS OF, OR GUARANTEED BY, ANY BANK, AND ARE SUBJECT TO INVESTMENT RISK, INCLUDING POSSIBLE LOSS OF THE PRINCIPAL INVESTED.

THIS AGREEMENT CONTAINS A PRE-DISPUTE ARBITRATION CLAUSE AT PARAGRAPH 19.

Signature _____ Date _____

Social Security or Employer ID No. _____

Signature _____ Date _____

Social Security or Employer ID No. _____

**PLEASE READ AND SIGN BELOW TO OPEN A MARGIN ACCOUNT.**

I agree to open a margin account with you and acknowledge to you that, in addition to the preceding information, I understand each of the following:

- When I purchase securities on margin, I borrow money from you to finance that purchase; I may also borrow against collateral in my margin account for other purposes.
- I will be obligated to pay interest on all sums I borrow from you.
- I may be required to deliver additional collateral consisting of cash or securities to you to maintain my loan balance, as you require.
- By using a margin account to leverage my investments, I increase my risk of loss.
- Deutsche Banc Alex. Brown will deduct all interest charges from my account.

Deutsche Banc Alex. Brown represents to me that:

- My current margin debit balance will appear on each account statement Deutsche Banc Alex. Brown sends to me.
- Deutsche Banc Alex. Brown will charge me interest on a monthly basis and will disclose on my account statement the interest rate and total interest charge.

By signing below, I authorize you to open and carry a margin account for my benefit, and acknowledge that securities in my account may be loaned to Deutsche Banc Alex. Brown as principal or loaned to others. I also acknowledge that I have received, read and agree to the terms of this Margin Agreement.

I ACKNOWLEDGE THAT MUTUAL FUNDS AND OTHER SECURITIES ARE NOT INSURED BY THE FDIC, ARE NOT DEPOSITS OR OTHER OBLIGATIONS OF, OR GUARANTEED BY, ANY BANK, AND ARE SUBJECT TO INVESTMENT RISK, INCLUDING POSSIBLE LOSS OF THE PRINCIPAL INVESTED.

THIS AGREEMENT CONTAINS A PRE-DISPUTE ARBITRATION CLAUSE AT PARAGRAPH 19.

Signature _____ CO-TRUSTEE; MEMBER Date 11/2/00

Signature _____ CO-TRUSTEE; MEMBER Date 11/2/00

Signature _____ Date _____

Paragraph 22 of this Agreement includes a certification of the Taxpayer Identification Number designated for this account and a representation regarding the applicability of backup withholding. If Deutsche Banc Alex. Brown does not receive this certification, it will be required to withhold a portion of all payments to this account.

---

FOR OFFICE USE ONLY

Signature _____    Branch Manager approval for margin accounts: _____ Date 11/7/00

# EXHIBIT 7

Deutsche Banc Alex. Brown                                                    **Deutsche Bank** ◪

# Account Agreement

| Name(s) | LA FRANCAISE BAKERY, INC. |
| --- | --- |

**DB Alex. Brown LLC**
P.O. Box 515
Baltimore, MD 21203

| Address | ATTN: BILL P. TSOURAPAS |
| --- | --- |
| | 1301 WEST 22ND STREET, SUITE 615 |
| City | OAK BROOK, IL 60523 |

*223-78584-16 104*

Account Number

---

**IMPORTANT: PLEASE SIGN AND RETURN THIS ACCOUNT AGREEMENT IN THE ENCLOSED ENVELOPE.**

---

In consideration of DB Alex. Brown LLC (referred to herein as "Deutsche Banc Alex. Brown") accepting the Account(s) of the Undersigned, and agreeing to act as my broker, I agree to the following with respect to each of My Account(s) with you, in which I currently or in the future have an interest, for the extension of credit or the purchase or sale of securities, options or other property. Throughout this Agreement, "I," "me," "my," "we" and "us" and "the undersigned" refer to the person(s) whose signature(s) appear(s) below and all others who are legally obligated on this account. "Account(s) of the Undersigned" and "My Account(s)" shall mean each and every account in the name of the undersigned and each and every account in which the undersigned may have an interest. "You" and "your" refer to DB Alex. Brown LLC, its subsidiaries, affiliates, officers, directors, agents and employees. DB Alex. Brown LLC is a subsidiary of Deutsche Bank AG. As used herein, the term "affiliate of Deutsche Bank" means Deutsche Bank AG and its subsidiaries and affiliates. Each of Deutsche Bank and its affiliates is a separately incorporated legal entity, none of which is responsible for the obligations of the others. "Securities and Other Property" shall include, but shall not be limited to, money and securities, financial instruments, commodities of every kind and nature, and all contracts and options relating to any thereof (whether for present or future delivery), owned by the undersigned or in which the undersigned has an interest. Where the context requires, the singular shall be plural and the plural shall be singular.

### 1. Representations

Unless I have advised you otherwise in writing, I represent that I am of legal age, that I am not an employee or member of any securities exchange (or corporation of which any exchange owns a majority of the capital stock), the National Association of Securities Dealers, Inc., or of any broker-dealer, nor am I a senior officer of any bank, savings and loan institution, insurance company, registered investment company, registered investment advisory firm or institution that purchases securities, nor am I a member of the immediate family of such a person. I further represent that I am financially capable of satisfying any obligations undertaken through My Account(s) and that no one except the persons named on the account(s) has any interest in the account(s). I will promptly notify you in writing if any of the above circumstances change. I acknowledge that the purchase and sale of securities entails substantial economic risk, and I represent to you that I knowingly and willingly assume such risk.

### 2. Applicable Rules and Regulations

All transactions in My Account(s) shall be subject to the constitution, rules, regulations, customs and usages of the exchange or market, and its clearing house, if any, where the transactions are executed. Transactions shall also be subject to the provisions of federal and state securities laws, as amended, and to the rules and regulations of the Securities and Exchange Commission and the Board of Governors of the Federal Reserve System. You shall not be liable for any loss caused directly or indirectly by your compliance with such rules or regulations or by government restrictions, exchange or market rulings, suspension of trading, war, or other conditions beyond your control.

### 3. Confirmations, Statements and Written Communications

**I agree to notify you in writing, within ten (10) days of your sending me a confirmation, of any objection I have to any transaction in My Account(s). In the absence of such written notification, I agree that all transactions for My Account(s) will be final and binding on me.** Confirmations of transactions, as well as other communications, may be sent to the address I provided to you or to such other address I may hereafter give to you in writing, and all communications so sent, whether by mail, private carrier, facsimile, messenger or otherwise, shall be deemed given to me, whether actually received or not. Unless I advise you in writing to the contrary, you may disclose my name and address to the issuers of securities which you hold for me.

### 4. Aggregation of Orders and Average Prices

I authorize you, at your discretion, to aggregate orders for My Account(s) with other customer orders. I recognize that in so doing, I may receive an average price for my orders which may be different from the price(s) I might have received had my orders not been aggregated. I understand that this practice may also result in my orders being only partially completed.

### 5. Cash Accounts.

This paragraph relates to and is effective solely with respect to cash accounts: (i) The undersigned will promptly make full cash payment for each security purchased, unless funds sufficient therefor are already held in the account; (ii) the undersigned does not contemplate selling any security before it is paid for as provided in the preceding clause; (iii) the undersigned will own each security sold at the time of sale and, unless such security is already held in the account, will promptly deliver such security thereto; and (iv) the undersigned will promptly make full cash payment of any amount which may become due in order to meet necessary requests for additional deposits or, with respect to any unissued security purchased or sold, to mark to the market.

### 6. Short and Long Orders; Deliveries and Settlements

I agree that, in giving orders to sell, all "short" sales will be designated by me as "short" and all other sales will be designated by you as "long." "Short sale" means any sale of a security not owned by me or any sale that is consummated on settlement date by delivery of a borrowed security. I also agree that you may, at your discretion, immediately cover any short sales in My Account(s), without prior notice. My failure to designate a sale order as "short" is a representation on my part that I own the security free of restriction, and if the security is not in your possession at the time of the sale, I agree to deliver the security to you by settlement date. In case of non-delivery of a security, you are authorized to purchase the security to cover my position and charge any loss, commissions and fees to My Account(s). I agree that if you fail to receive payment for securities I have purchased you may, without prior demand or notice, sell those securities or other property held by you in any of My Account(s)s with you and any loss resulting therefrom will be charged to such account(s). I authorize you, at your discretion, to request and obtain extension(s) of my time to make payment for securities I purchase, as provided for by Federal Reserve Bank Regulation T.

AA2 (12/99)

**7. Authority to Borrow**

In case of the sale of any security or other property by you at my direction and your inability to timely deliver the same to the purchaser by reason of my failure to supply you therewith, I authorize you to purchase or borrow any security or other property necessary to make the required delivery, and I agree to be responsible for any loss or cost, including interest, which you sustain as a result of my failure to make delivery to you.

**8. Interest Charges**

I acknowledge that debit balances in my cash or margin account, including but not limited to those arising from my failure to make payment by settlement date for securities purchased, will be charged interest at the then current rate, in accordance with your usual custom. Interest will be computed on the net daily debit balance, which is computed by combining all debit balances and credit balances in each account with the exception of credit balances associated with short security positions. I acknowledge receipt of your statement regarding interest charges and that you may charge an account maintenance fee with respect to inactive accounts.

**9. Credit Information and Investigation**

I authorize you to obtain reports concerning my credit standing and business conduct at your discretion. I also authorize you and any affiliate of Deutsche Bank (including, without limitation, Deutsche Bank AG) to share among such affiliates such information and any other confidential information you and such affiliate(s) may have about me and My Account(s).

**10. Satisfaction of Indebtedness**

I agree to satisfy, upon demand, any indebtedness, including any interest and commission charges. I further agree to pay the reasonable costs and expenses of collection of any amount I owe you, including reasonable attorney's fees and court costs.

**11. Liens**

I hereby grant to you and all affiliates of Deutsche Bank AG a security interest in all securities and other property in your possession or in the possession of any of your affiliates in which I have an interest in order to secure any and all indebtedness or any other of my obligations to you or any affiliate of Deutsche Bank AG. All such securities and other property shall be held as security for the payment of any such obligations or indebtedness in any account with you in which I have an interest, and you may, in your discretion, at any time and without prior notice, sell and/or transfer any or all securities and other property in order to satisfy such obligations. In enforcing this lien, you shall have the discretion to determine which securities and property are to be sold and/or which contracts are to be closed.

**12. Margin Maintenance, Calls for Additional Collateral, Liquidations and Covering Short Positions**

If I engage in margin transactions, I will maintain such securities and other property in My Account(s) for margin purposes as you shall require from time to time in your sole discretion for any reason whatsoever. You shall have the right in accordance with your general policies regarding margin maintenance requirements, as such may be modified or amended from time to time, to require additional collateral or the liquidation of any securities and other property whenever in your sole discretion you consider it necessary for your protection. You may do so under circumstances which include, but are not limited to, the failure to promptly meet any call for additional collateral, the filing of a petition in bankruptcy, the appointment of a receiver by or against me or the attachment or levy against any account with you in which I have an interest. In such event, you are authorized to sell any and all securities and other property in any of My Account(s) with you whether carried individually or jointly with others, to buy all securities or other property which may be short in such account, to cancel any open orders and to close any or all outstanding contracts, all without demand for margin or additional margin, notice of sale or purchase, or other notice or advertisement, each of which is expressly waived. Any such sales or purchases may be made at your discretion on any exchange or other market where such business is usually transacted or at public auction or private sale, and you may be the purchaser for your own account. I understand that any prior demand, or call, or prior notice of the time and place of such sale or purchase shall not be considered a waiver of your right to sell or buy without demand or notice as provided herein.

**13. Loan or Pledge of Securities and Other Property**

Within the limitations imposed by applicable law, all securities and other property now or hereafter held, carried or maintained by you in your possession that have not been fully paid for or are held in a margin account may be lent, either to yourself or to others, pledged and repledged by you, without notice to me, either separately or in common with other securities and other property of your other customers for any amount due in any account with you in which I have an interest, or for any greater amount, and you may do so without retaining in your possession or control for delivery a like amount of similar securities or other property. I understand that while securities held for My Account(s) are loaned out, I will lose voting rights attendant to such securities.

**14. Correspondent Account; No Agency**

If My Account(s) has been introduced to you by arrangement with another broker-dealer, you are authorized to accept from such other broker-dealer, without inquiry or investigation by you (i) orders for the purchase or sale of securities or other property for My Account(s), on margin or otherwise, and (ii) any other instructions concerning My Account(s). I understand and agree that such other broker-dealer is not your agent and that you shall have no responsibility or liability to me for any acts or omissions of such other broker-dealer, its officers, employees or agents.

**15. Joint Accounts**

If this is a Joint Account, we agree that each of us shall have authority with respect to this account to deal with you as if each of us alone were the account owner, all without notice to the other account owner(s). We agree that notice to any account owner shall be deemed to be notice to all account owners. Each account owner shall be jointly and severally liable for this account. You may follow the instructions of any of us concerning this account and make deliveries to any of us, of any or all property and payment, even if such deliveries and/or payments shall be made to one of us personally, and not to all of the account owners. You shall be under no obligation to inquire into the purpose of any such demand for delivery of securities or payment, and you shall not be bound to see to the application or disposition of the securities and/or monies so delivered or paid to any of us. Notwithstanding the foregoing, you are authorized, in your discretion, to require joint action by all of the account owners with respect to any matter concerning the account, including the giving or cancellation of orders and the withdrawal of monies, securities or other property. We agree that our account will be carried on your books in the form reflected by the above account name. In the event of the death of any of us, the survivor(s) shall immediately give you written notice thereof, and you may, before or after receiving such notice, take such action, require such documents, retain such securities and/or restrict transactions in the account as you may deem advisable to protect you against any tax, liability, penalty or loss under any present or future laws or otherwise. Any cost resulting from the death of any of us, or through the exercise by any decedent's estate or representatives of any rights in the account shall be chargeable against the interest of the survivor(s) as well as against the interest of the estate of the decedent.

**16. Foreign Securities**

With respect to debt or equity securities of non-U.S. issuers or debt or deposit instruments of non-U.S. banks ("Foreign Securities"), I acknowledge and understand that: (i) Foreign Securities are, in most cases, not registered with the Securities and Exchange Commission or listed on a U.S. securities exchange; (ii) Foreign Securities, particularly those of issuers in the so-called "emerging markets" are often illiquid, are sometimes subject to legal and/or contractual transfer restrictions, and it may be difficult or impossible to dispose of Foreign Securities prior to the maturity thereof or to determine the market price thereof for valuation purposes; (iii) Foreign Securities, and the issuer, guarantors or other obligors with respect thereto ("Obligors") are subject to a variety or risks in addition to those typically faced in the case of U.S. securities and issuers, including, among other things, currency risk, exchange controls, confiscatory taxation, withholding, limitations on the rights of security holders, civil unrest, hyperinflation, discriminatory treatment of foreign investors, etc.; (iv) there is often less information available regarding Obligors, and such information may be more difficult to interpret, than is the case with U.S. issuers whose securities are subject to the periodic reporting requirements under U.S. securities laws; (v) there may be no effective means to determine if an Obligor is in default of its obligations in respect of its debt securities or other financial obligations (and you specifically acknowledge that Foreign Securities purchased by you may be in default at the time of purchase); (vi) the Foreign Securities in question may be unrated; and (vii) such securities are not suitable for all investors.

I authorize Deutsche Banc Alex. Brown to purchase Foreign Securities (and, in the case of Foreign Securities denominated in foreign currencies, the relevant foreign currencies) from or sell Foreign Securities (and foreign exchange) to an affiliate of Deutsche Bank AG. In dealing with such affiliates, such affiliates may take their normal commissions, spreads or other fees without regard to Deutsche Banc Alex. Brown's relationship with me.

### 17. Acknowledgment of Possible Conflicts of Interest

I acknowledge that the advice provided to me by your employees may differ from the advice or the timing or nature of action recommended by or taken by other individuals or groups at Deutsche Banc Alex. Brown and/or affiliates of Deutsche Bank AG, whether acting as principal or agent. I understand that you provide investment advice, portfolio management and execution services for many clients and, in addition, act as principals in various markets. Given these different roles, individuals and groups at Deutsche Banc Alex. Brown and affiliates of Deutsche Bank AG are seldom of one view as to an investment strategy and will often pursue differing or conflicting strategies. Your employees shall have no obligation to recommend to me or inform me of strategies being pursued by you or by other clients. I also acknowledge that: Deutsche Banc Alex. Brown and affiliates of Deutsche Bank AG may perform services for or solicit business from issuers whose securities are recommended by your employees; Deutsche Banc Alex. Brown and affiliates of Deutsche Bank AG may be paid fees by Registered Investment Companies or other investment vehicles, including without limitation fees for acting as investment advisor, administrator, custodian and transfer agent; and Deutsche Banc Alex. Brown and affiliates of Deutsche Bank AG act as brokers, principals, and/or market makers in certain markets and may do so in transactions with me.

### 18. No FDIC Insurance, Not Obligations of Any Bank

I understand that the assets in My Account(s) are subject to the risk of partial or total loss due to market fluctuations or the insolvency of the issuer(s).

The assets in My Account(s) (including all related cash balances and shares of any mutual fund) are not deposits or other obligations of Deutsche Bank AG or any other bank, are not guaranteed by Deutsche Bank AG and are not insured by the Federal Deposit Insurance Corporation ("FDIC").

I may from time to time be offered investment products as to which Deutsche Bank AG is an obligor. These products may be complex, may not provide for the return of the full amount of principal invested or for the payment of a fixed rate of interest (or any interest) and will not usually be subject to FDIC insurance. I will assume they are not subject to FDIC insurance and that such products may not be protected as to principal or interest unless Deutsche Bank AG states in writing that a particular product is subject to FDIC insurance.

### 19. Arbitration

I understand that: (1) Arbitration is final and binding on the parties.  (2) The parties are waiving their right to seek remedies in court, including the right to jury trial.  (3) Pre-arbitration discovery is generally more limited than and different from court proceedings.  (4) The arbitrators' award is not required to include factual findings or legal reasoning and any party's right to appeal or to seek modification of rulings by the arbitrators is strictly limited.  (5) The panel of arbitrators would typically include a minority of arbitrators who were or are affiliated with the securities industry.

I agree to arbitrate with you any controversies which may arise, whether or not based on events occurring prior to the date of this agreement, including any controversy arising out of or relating to any account with you, to the construction, performance or breach of any agreement with you, or to transactions with or through you, only before the New York Stock Exchange or the National Association of Securities Dealers Regulation, Inc., at my election.  I agree that I shall make my election by registered mail to you, at P.O. Box 515, Baltimore, MD 21202, Attention Director of Compliance.  If my election is not received by you within ten (10) calendar days of receipt of a written request from you that I make an election, then you may elect the forum before which the arbitration shall be held.

Neither you nor I waive any right to seek equitable relief pending arbitration.  No person shall bring a putative or certified class action to arbitration, nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action; or who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the putative class action until (1) the class certification is denied; or (2) the class is decertified; or (3) the customer is excluded from the class by the court.  Such forbearance to enforce an agreement to arbitrate shall not constitute a waiver or any rights under this agreement except to the extent stated herein.

### 20. Miscellaneous

This Agreement shall be binding upon my heirs, executors, administrators, personal representatives and permitted assigns.  It shall inure to the benefit of your successors and assigns to whom you may transfer My Account(s). This Agreement contains the entire understanding between us concerning the subject matter of this Agreement.  I agree that Deutsche Banc Alex. Brown has the right to amend this Agreement at any time by sending written notice of such amendment to me. Any such amendment shall be effective as of the date established by Deutsche Banc Alex. Brown. If any provision of this Agreement is held to be invalid, void or unenforceable by reason of any law, rule, administrative order or judicial decision, that determination shall not affect the validity of the remaining provisions of this Agreement.  This Agreement shall be deemed to have been made in the State of New York and shall be construed, and the rights of the parties determined, in accordance with the laws of the State of New York and the United States, as amended, without giving effect to the choice of law or conflict-of-laws provisions thereof.

### 21. Paragraph Headings

Paragraph headings are for convenience only and shall not affect the meaning or interpretation of any provision of this Agreement.

**Please Complete 22a or 22b as applicable.**

### 22a. Certification — Taxpayer Identification Number

**Certification Instructions: I will cross out item (2) below if I have been notified by the IRS that I am currently subject to backup withholding because I have failed to report all interest and dividends on my tax return. If I am exempt from backup withholding, I will write the word "Exempt" here: _____. (For further information, see "Payees and Payments Exempt from Backup Withholding" on IRS Form W-9, a copy of which can be obtained from a Deutsche Banc Alex. Brown Investment Representative.)**

**Under penalties of perjury, I certify that: (1) The number shown on this form is my correct Taxpayer Identification Number (or I am waiting for a number to be issued to me), and (2) I am not subject to backup withholding because (a) I am exempt from backup withholding or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest and dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding.**

**BY SIGNING BELOW I ACKNOWLEDGE THAT I HAVE RECEIVED, READ AND AGREE TO THE TERMS OF THIS AGREEMENT.**

**The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding. If this is a Joint Account, all account owners must sign.**

I ACKNOWLEDGE THAT MUTUAL FUNDS AND OTHER SECURITIES ARE NOT INSURED BY THE FDIC, ARE NOT DEPOSITS OR OTHER OBLIGATIONS OF, OR GUARANTEED BY, ANY BANK, AND ARE SUBJECT TO INVESTMENT RISK, INCLUDING POSSIBLE LOSS OF THE PRINCIPAL INVESTED.

THIS AGREEMENT CONTAINS A PRE-DISPUTE ARBITRATION CLAUSE AT PARAGRAPH 19.

Signature _____    **OFFICER**    Date _____

Social Security or Employer ID No.  36-3264328

Signature _____    Date _____

Social Security or Employer ID No. _____

Signature _____    Date _____

Social Security or Employer ID No. _____

**22b. Certification — Non-U.S. Resident**

Permanent Residence Address: _____

_____

_____

Type of Beneficial Owner: _____

Country of Incorporation or Organization: _____

By signing below, I hereby certify under penalties of perjury, (1) that (a) I am the beneficial owner of all the income earned in My Account(s), (b) I am neither a citizen nor a resident of the U.S. (and I have not made an election to be treated as a resident because of my marriage to a citizen or resident), (c) I have not been and do not intend to be present in the U.S. for 183 days or more during any calendar year in which this Agreement is in effect, and (d) I am not a former citizen or long-term resident of the United States subject to section 877 (relating to certain acts of expatriation) or (2) if signing on behalf of a corporation, partnership, trust or estate, that I am authorized to sign for the payee named on My Account(s) and such payee (a) is the beneficial owner of all the income earned in My Account(s) and (b) is not a United States person and (3) that in either case, I am neither engaged, nor expect to be, or any such named payee is not and does not expect to be, engaged during the year, in a U.S. trade or business that has effectively connected income from transactions within My Account(s).

In addition, if I, or any such named payee, is claiming a United States tax treaty benefit, I hereby certify, under penalties of perjury, that I, or any such named payee, is a resident of _____ within the meaning of the income tax treaty between the United States and that country. If required, a U.S. Taxpayer Identification Number is included above. I also certify under penalties of perjury that the named payee meets the requirements of the article in the applicable treaty dealing with limitations on benefits, if any, and derives the income for which the treaty benefits are claimed.

Under penalties of perjury, I declare that I have examined the information provided for in Paragraph 22b and to the best of my knowledge and belief it is true, correct, and complete.

BY SIGNING BELOW I ACKNOWLEDGE THAT I HAVE RECEIVED, READ AND AGREE TO THE TERMS OF THIS AGREEMENT.

The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding. If this is a Joint Account, all account owners must sign.

I ACKNOWLEDGE THAT MUTUAL FUNDS AND OTHER SECURITIES ARE NOT INSURED BY THE FDIC, ARE NOT DEPOSITS OR OTHER OBLIGATIONS OF, OR GUARANTEED BY, ANY BANK, AND ARE SUBJECT TO INVESTMENT RISK, INCLUDING POSSIBLE LOSS OF THE PRINCIPAL INVESTED.

THIS AGREEMENT CONTAINS A PRE-DISPUTE ARBITRATION CLAUSE AT PARAGRAPH 19.

Signature _____ Date _____

Social Security or Employer ID No. _____

Signature _____ Date _____

Social Security or Employer ID No. _____

**PLEASE READ AND SIGN BELOW TO OPEN A MARGIN ACCOUNT.**

I agree to open a margin account with you and acknowledge to you that, in addition to the preceding information, I understand each of the following:

- When I purchase securities on margin, I borrow money from you to finance that purchase; I may also borrow against collateral in my margin account for other purposes.

- I will be obligated to pay interest on all sums I borrow from you.

- I may be required to deliver additional collateral consisting of cash or securities to you to maintain my loan balance, as you require.

- By using a margin account to leverage my investments, I increase my risk of loss.

- Deutsche Banc Alex. Brown will deduct all interest charges from my account.

Deutsche Banc Alex. Brown represents to me that:

- My current margin debit balance will appear on each account statement Deutsche Banc Alex. Brown sends to me.

- Deutsche Banc Alex. Brown will charge me interest on a monthly basis and will disclose on my account statement the interest rate and total interest charge.

By signing below, I authorize you to open and carry a margin account for my benefit, and acknowledge that securities in my account may be loaned to Deutsche Banc Alex. Brown as principal or loaned to others. I also acknowledge that I have received, read and agree to the terms of this Margin Agreement.

I ACKNOWLEDGE THAT MUTUAL FUNDS AND OTHER SECURITIES ARE NOT INSURED BY THE FDIC, ARE NOT DEPOSITS OR OTHER OBLIGATIONS OF, OR GUARANTEED BY, ANY BANK, AND ARE SUBJECT TO INVESTMENT RISK, INCLUDING POSSIBLE LOSS OF THE PRINCIPAL INVESTED.

THIS AGREEMENT CONTAINS A PRE-DISPUTE ARBITRATION CLAUSE AT PARAGRAPH 19.

Signature _____, OFFICER    Date _11-2-00_

Signature _____ Date _____

Signature _____ Date _____

Paragraph 22 of this Agreement includes a certification of the Taxpayer Identification Number designated for this account and a representation regarding the applicability of backup withholding. If Deutsche Banc Alex. Brown does not receive this certification, it will be required to withhold a portion of all payments to this account.

FOR OFFICE USE ONLY          Branch Manager approval for margin accounts:

Signature _____    Date _11/7/00_

# EXHIBIT 8

Deutsche Banc Alex. Brown

**Deutsche Bank** 

# Account Agreement

TRINITY INVESTMENT PARTNERSHIP

Name(s)

**DB Alex. Brown LLC**
P.O. Box 515
Baltimore, MD 21203

ATTN: BILL P. TSOURAPAS

Address
1301 WEST 22ND STREET, SUITE 615

OAK BROOK, IL 60523

City

Account Number

**IMPORTANT: PLEASE SIGN AND RETURN THIS ACCOUNT AGREEMENT IN THE ENCLOSED ENVELOPE.**

In consideration of DB Alex. Brown LLC (referred to herein as "Deutsche Banc Alex. Brown") accepting the Account(s) of the Undersigned, and agreeing to act as my broker, I agree to the following with respect to each of My Account(s) with you, in which I currently or in the future have an interest, for the extension of credit or the purchase or sale of securities, options or other property. Throughout this Agreement, "I," "me," "my," "we" and "us" and "the undersigned" refer to the person(s) whose signature(s) appear(s) below and all others who are legally obligated on this account. "Account(s) of the Undersigned" and "My Account(s)" shall mean each and every account in the name of the undersigned and each and every account in which the undersigned may have an interest. "You" and "your" refer to DB Alex. Brown LLC, its subsidiaries, affiliates, officers, directors, agents and employees. DB Alex. Brown LLC is a subsidiary of Deutsche Bank AG. As used herein, the term "affiliate of Deutsche Bank" means Deutsche Bank AG and its subsidiaries and affiliates. Each of Deutsche Bank and its affiliates is a separately incorporated legal entity, none of which is responsible for the obligations of the others. "Securities and Other Property" shall include, but shall not be limited to, money and securities, financial instruments, commodities of every kind and nature, and all contracts and options relating to any thereof (whether for present or future delivery), owned by the undersigned or in which the undersigned has an interest. Where the context requires, the singular shall be plural and the plural shall be singular.

1. **Representations**

   Unless I have advised you otherwise in writing, I represent that I am of legal age, that I am not an employee or member of any securities exchange (or corporation of which any exchange owns a majority of the capital stock), the National Association of Securities Dealers, Inc., or of any broker-dealer, nor am I a senior officer of any bank, savings and loan institution, insurance company, registered investment company, registered investment advisory firm or institution that purchases securities, nor am I a member of the immediate family of such a person. I further represent that I am financially capable of satisfying any obligations undertaken through My Account(s) and that no one except the persons named on the account(s) has any interest in the account(s). I will promptly notify you in writing if any of the above circumstances change. I acknowledge that the purchase and sale of securities entails substantial economic risk, and I represent to you that I knowingly and willingly assume such risk.

2. **Applicable Rules and Regulations**

   All transactions in My Account(s) shall be subject to the constitution, rules, regulations, customs and usages of the exchange or market, and its clearing house, if any, where the transactions are executed. Transactions shall also be subject to the provisions of federal and state securities laws, as amended, and to the rules and regulations of the Securities and Exchange Commission and the Board of Governors of the Federal Reserve System. You shall not be liable for any loss caused directly or indirectly by your compliance with such rules or regulations or by government restrictions, exchange or market rulings, suspension of trading, war, or other conditions beyond your control.

3. **Confirmations, Statements and Written Communications**

   **I agree to notify you in writing, within ten (10) days of your sending me a confirmation, of any objection I have to any transaction in My Account(s). In the absence of such written notification, I agree that all transactions for My Account(s) will be final and binding on me.** Confirmations of transactions, as well as other communications, may be sent to the address I provided to you or to such other address I may hereafter give to you in writing, and all communications so sent, whether by mail, private carrier, facsimile, messenger or otherwise, shall be deemed given to me, whether actually received or not. Unless I advise you in writing to the contrary, you may disclose my name and address to the issuers of securities which you hold for me.

4. **Aggregation of Orders and Average Prices**

   I authorize you, at your discretion, to aggregate orders for My Account(s) with other customer orders. I recognize that in so doing, I may receive an average price for my orders which may be different from the price(s) I might have received had my orders not been aggregated. I understand that this practice may also result in my orders being only partially completed.

5. **Cash Accounts.**

   This paragraph relates to and is effective solely with respect to cash accounts: (i) The undersigned will promptly make full cash payment for each security purchased, unless funds sufficient therefor are already held in the account; (ii) the undersigned does not contemplate selling any security before it is paid for as provided in the preceding clause; (iii) the undersigned will own each security sold at the time of sale, and, unless such security is already held in the account, will promptly deliver such security thereto; and (iv) the undersigned will promptly make full cash payment of any amount which may become due in order to meet necessary requests for additional deposits or, with respect to any unissued security purchased or sold, to mark to the market.

6. **Short and Long Orders; Deliveries and Settlements**

   I agree that, in giving orders to sell, all "short" sales will be designated by me as "short" and all other sales will be designated by you as "long". "Short sale" means any sale of a security not owned by me or any sale that is consummated on settlement date by delivery of a borrowed security. I also agree that you may, at your discretion, immediately cover any short sales in My Account(s), without prior notice. My failure to designate a sale order as "short" is a representation on my part that I own the security free of restriction, and if the security is not in your possession at the time of the sale, I agree to deliver the security to you by settlement date. In case of non-delivery of a security, you are authorized to purchase the security to cover my position and charge any loss, commissions and fees to My Account(s). I agree that if you fail to receive payment for securities I have purchased you may, without prior demand or notice, sell those securities or other property held by you in any of My Account(s)s with you and any loss resulting therefrom will be charged to such account(s). I authorize you, at your discretion, to request and obtain extension(s) of my time to make payment for securities I purchase, as provided for by Federal Reserve Bank Regulation T.

AA2 (12/99)

**7.  Authority to Borrow**

In case of the sale of any security or other property by you at my direction and your inability to timely deliver the same to the purchaser by reason of my failure to supply you therewith, I authorize you to purchase or borrow any security or other property necessary to make the required delivery, and I agree to be responsible for any loss or cost, including interest, which you sustain as a result of my failure to make delivery to you.

**8.  Interest Charges**

I acknowledge that debit balances in my cash or margin account, including but not limited to those arising from my failure to make payment by settlement date for securities purchased, will be charged interest at the then current rate, in accordance with your usual custom. Interest will be computed on the net daily debit balance, which is computed by combining all debit balances and credit balances in each account with the exception of credit balances associated with short security positions. I acknowledge receipt of your statement regarding interest charges and that you may charge an account maintenance fee with respect to inactive accounts.

**9.  Credit Information and Investigation**

I authorize you to obtain reports concerning my credit standing and business conduct at your discretion. I also authorize you and any affiliate of Deutsche Bank (including, without limitation, Deutsche Bank AG) to share among such affiliates such information and any other confidential information you and such affiliate(s) may have about me and My Account(s).

**10.  Satisfaction of Indebtedness**

I agree to satisfy, upon demand, any indebtedness, including any interest and commission charges. I further agree to pay the reasonable costs and expenses of collection of any amount I owe you, including reasonable attorney's fees and court costs.

**11.  Liens**

I hereby grant to you and all affiliates of Deutsche Bank AG a security interest in all securities and other property in your possession or in the possession of any of your affiliates in which I have an interest in order to secure any and all indebtedness or any other of my obligations to you or any affiliate of Deutsche Bank AG. All such securities and other property shall be held as security for the payment of any such obligations or indebtedness in any account with you in which I have an interest, and you may, in your discretion, at any time and without prior notice, sell and/or transfer any or all securities and other property in order to satisfy such obligations. In enforcing this lien, you shall have the discretion to determine which securities and property are to be sold and/or which contracts are to be closed.

**12.  Margin Maintenance, Calls for Additional Collateral, Liquidations and Covering Short Positions**

If I engage in margin transactions, I will maintain such securities and other property in My Account(s) for margin purposes as you shall require from time to time in your sole discretion for any reason whatsoever. You shall have the right in accordance with your general policies regarding margin maintenance requirements, as such may be modified or amended from time to time, to require additional collateral or the liquidation of any securities and other property whenever in your sole discretion you consider it necessary for your protection. You may do so under circumstances which include, but are not limited to, the failure to promptly meet any call for additional collateral, the filing of a petition in bankruptcy, the appointment of a receiver by or against me or the attachment or levy against any account with you in which I have an interest. In such event, you are authorized to sell any and all securities and other property in any of My Account(s) with you whether carried individually or jointly with others, to buy all securities or other property which may be short in such account, to cancel any open orders and to close any or all outstanding contracts, all without demand for margin or additional margin, notice of sale or purchase, or other notice or advertisement, each of which is expressly waived. Any such sales or purchases may be made at your discretion on any exchange or other market where such business is usually transacted or at public auction or private sale, and you may be the purchaser for your own account. I understand that any prior demand, or call, or prior notice of the time and place of such sale or purchase shall not be considered a waiver of your right to sell or buy without demand or notice as provided herein.

**13.  Loan or Pledge of Securities and Other Property**

Within the limitations imposed by applicable law, all securities and other property now or hereafter held, carried or maintained by you in your possession that have not been fully paid for or are held in a margin account may be lent, either to yourself or to others, pledged and repledged by you, without notice to me, either separately or in common with other securities and other property of your other customers for any amount due in any account with you in which I have an interest, or for any greater amount, and you may do so without retaining in your possession or control for delivery a like amount of similar securities or other property. I understand that while securities held for My Account(s) are loaned out, I will lose voting rights attendant to such securities.

**14.  Correspondent Account; No Agency**

If My Account(s) has been introduced to you by arrangement with another broker-dealer, you are authorized to accept from such other broker-dealer, without inquiry or investigation by you (i) orders for the purchase or sale of securities or other property for My Account(s), on margin or otherwise, and (ii) any other instructions concerning My Account(s). I understand and agree that such other broker-dealer is not your agent and that you shall have no responsibility or liability to me for any acts or omissions of such other broker-dealer, its officers, employees or agents.

**15.  Joint Accounts**

If this is a Joint Account, we agree that each of us shall have authority with respect to this account to deal with you as if each of us alone were the account owner, all without notice to the other account owner(s). We agree that notice to any account owner shall be deemed to be notice to all account owners. Each account owner shall be jointly and severally liable for this account. You may follow the instructions of any of us concerning this account and make deliveries to any of us, of any or all property and payment, even if such deliveries and/or payments shall be made to one of us personally, and not to all of the account owners. You shall be under no obligation to inquire into the purpose of any such demand for delivery of securities or payment, and you shall not be bound to see to the application or disposition of the securities and/or monies so delivered or paid to any of us. Notwithstanding the foregoing, you are authorized, in your discretion, to require joint action by all of the account owners with respect to any matter concerning the account, including the giving or cancellation of orders and the withdrawal of monies, securities or other property. We agree that our account will be carried on your books in the form reflected by the above account name. In the event of the death of any of us, the survivor(s) shall immediately give you written notice thereof, and you may, before or after receiving such notice, take such action, require such documents, retain such securities and/or restrict transactions in the account as you may deem advisable to protect you against any tax, liability, penalty or loss under any present or future laws or otherwise. Any cost resulting from the death of any of us, or through the exercise by any decedent's estate or representatives of any rights in the account shall be chargeable against the interest of the survivor(s) as well as against the interest of the estate of the decedent.

**16.  Foreign Securities**

With respect to debt or equity securities of non-U.S. issuers or debt or deposit instruments of non-U.S. banks ("Foreign Securities"), I acknowledge and understand that: (i) Foreign Securities are, in most cases, not registered with the Securities and Exchange Commission or listed on a U.S. securities exchange; (ii) Foreign Securities, particularly those of issuers in the so-called "emerging markets" are often illiquid, are sometimes subject to legal and/or contractual transfer restrictions, and it may be difficult or impossible to dispose of such Foreign Securities prior to the maturity thereof or to determine the market price thereof for valuation purposes; (iii) Foreign Securities, and the issuer, guarantors or other obligors with respect thereto ("Obligors") are subject to a variety or risks in addition to those typically faced in the case of U.S. securities and issuers, including, among other things, currency risk, exchange controls, confiscatory taxation, withholding, limitations on the rights of security holders, civil unrest, hyperinflation, discriminatory treatment of foreign investors, etc.; (iv) there is often less information available regarding Obligors, and such information may be more difficult to interpret, than is the case with U.S. issuers whose securities are subject to the periodic reporting requirements under U.S. securities laws; (v) there may be no effective means to determine if an Obligor is in default of its obligations in respect of its debt securities or other financial obligations and you specifically acknowledge that Foreign Securities purchased by you may be in default at the time of purchase); (vi) the Foreign Securities in question may be unrated; and (vii) such securities are not suitable for all investors.

I authorize Deutsche Banc Alex. Brown to purchase Foreign Securities (and, in the case of Foreign Securities denominated in foreign currencies, the relevant foreign currencies) from or sell Foreign Securities (and foreign exchange) to an affiliate of Deutsche Bank AG. In dealing with such affiliates, such affiliates may take their normal commissions, spreads or other fees without regard to Deutsche Banc Alex. Brown's relationship with me.

**17. Acknowledgment of Possible Conflicts of Interest**

I acknowledge that the advice provided to me by your employees may differ from the advice or the timing or nature of action recommended by or taken by other individuals or groups at Deutsche Banc Alex. Brown and/or affiliates of Deutsche Bank AG, whether acting as principal or agent. I understand that you provide investment advice, portfolio management and execution services for many clients and, in addition, act as principals in various markets. Given these different roles, individuals and groups at Deutsche Banc Alex. Brown and affiliates of Deutsche Bank AG are seldom of one view as to an investment strategy and will often pursue differing or conflicting strategies. Your employees shall have no obligation to recommend to me or inform me of strategies being pursued by you or by other clients. I also acknowledge that: Deutsche Banc Alex. Brown and affiliates of Deutsche Bank AG may perform services for or solicit business from issuers whose securities are recommended by your employees; Deutsche Banc Alex. Brown and affiliates of Deutsche Bank AG may be paid fees by Registered Investment Companies or other investment vehicles, including without limitation fees for acting as investment advisor, administrator, custodian and transfer agent; and Deutsche Banc Alex. Brown and affiliates of Deutsche Bank AG act as brokers, principals, and/or market makers in certain markets and may do so in transactions with me.

**18. No FDIC Insurance, Not Obligations of Any Bank**

I understand that the assets in My Account(s) are subject to the risk of partial or total loss due to market fluctuations or the insolvency of the issuer(s).

The assets in My Account(s) (including all related cash balances and shares of any mutual fund) are not deposits or other obligations of Deutsche Bank AG or any other bank, are not guaranteed by Deutsche Bank AG and are not insured by the Federal Deposit Insurance Corporation ("FDIC").

I may from time to time be offered investment products as to which Deutsche Bank AG is an obligor. These products may be complex, may not provide for the return of the full amount of principal invested or for the payment of a fixed rate of interest (or any interest) and will not usually be subject to FDIC insurance. I will assume they are not subject to FDIC insurance and that such products may not be protected as to principal or interest unless Deutsche Bank AG states in writing that a particular product is subject to FDIC insurance.

**19. Arbitration**

I understand that: (1) Arbitration is final and binding on the parties. (2) The parties are waiving their right to seek remedies in court, including the right to jury trial. (3) Pre-arbitration discovery is generally more limited than and different from court proceedings. (4) The arbitrators' award is not required to include factual findings or legal reasoning and any party's right to appeal or to seek modification of rulings by the arbitrators is strictly limited. (5) The panel of arbitrators would typically include a minority of arbitrators who were or are affiliated with the securities industry.

I agree to arbitrate with you any controversies which may arise, whether or not based on events occurring prior to the date of this agreement, including any controversy arising out of or relating to any account with you, to the construction, performance or breach of any agreement with you, or to transactions with or through you, only before the New York Stock Exchange or the National Association of Securities Dealers Regulation, Inc., at my election. I agree that I shall make my election by registered mail to you, at P.O. Box 515, Baltimore, MD 21202, Attention Director of Compliance. If my election is not received by you within ten (10) calendar days of receipt of a written request from you that I make an election, then you may elect the forum before which the arbitration shall be held.

Neither you nor I waive any right to seek equitable relief pending arbitration. No person shall bring a putative or certified class action to arbitration, nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action; or who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the putative class action until (1) the class certification is denied; or (2) the class is decertified; or (3) the customer is excluded from the class by the court. Such forbearance to enforce an agreement to arbitrate shall not constitute a waiver or any rights under this agreement except to the extent stated herein.

**20. Miscellaneous**

This Agreement shall be binding upon my heirs, executors, administrators, personal representatives and permitted assigns. It shall inure to the benefit of your successors and assigns to whom you may transfer My Account(s). This Agreement contains the entire understanding between us concerning the subject matter of this Agreement. I agree that Deutsche Banc Alex. Brown has the right to amend this Agreement at any time by sending written notice of such amendment to me. Any such amendment shall be effective as of the date established by Deutsche Banc Alex. Brown. If any provision of this Agreement is held to be invalid, void or unenforceable by reason of any law, rule, administrative order or judicial decision, that determination shall not affect the validity of the remaining provisions of this Agreement. This Agreement shall be deemed to have been made in the State of New York and shall be construed, and the rights of the parties determined, in accordance with the laws of the State of New York and the United States, as amended, without giving effect to the choice of law or conflict-of-laws provisions thereof.

**21. Paragraph Headings**

Paragraph headings are for convenience only and shall not affect the meaning or interpretation of any provision of this Agreement.

**Please Complete 22a or 22b as applicable.**

**22a. Certification — Taxpayer Identification Number**

**Certification Instructions:** I will cross out item (2) below if I have been notified by the IRS that I am currently subject to backup withholding because I have failed to report all interest and dividends on my tax return. If I am exempt from backup withholding, I will write the word "Exempt" here _____. (For further information, see "Payees and Payments Exempt from Backup Withholding" on IRS Form W-9, a copy of which can be obtained from a Deutsche Banc Alex. Brown Investment Representative.)

Under penalties of perjury, I certify that: (1) The number shown on this form is my correct Taxpayer Identification Number (or I am waiting for a number to be issued to me), and (2) I am not subject to backup withholding because (a) I am exempt from backup withholding or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest and dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding.

BY SIGNING BELOW I ACKNOWLEDGE THAT I HAVE RECEIVED, READ AND AGREE TO THE TERMS OF THIS AGREEMENT.

**The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding. If this is a Joint Account, all account owners must sign.**

I ACKNOWLEDGE THAT MUTUAL FUNDS AND OTHER SECURITIES ARE NOT INSURED BY THE FDIC, ARE NOT DEPOSITS OR OTHER OBLIGATIONS OF, OR GUARANTEED BY, ANY BANK, AND ARE SUBJECT TO INVESTMENT RISK, INCLUDING POSSIBLE LOSS OF THE PRINCIPAL INVESTED.

THIS AGREEMENT CONTAINS A PRE-DISPUTE ARBITRATION CLAUSE AT PARAGRAPH 19.

| | | |
|---|---|---|
| Signature _____ | Member; Partner | Day _____ |
| Social Security or Employer ID N° _____ | | |
| Signature _____ | | Date _____ |
| Social Security or Employer ID No. _____ | | |
| Signature _____ | | Date _____ |
| Social Security or Employer ID No. _____ | | |

**22b. Certification — Non-U.S. Resident**

Permanent Residence Address: _____

_____

Type of Beneficial Owner: _____

Country of Incorporation or Organization: _____

By signing below, I hereby certify under penalties of perjury, (1) that (a) I am the beneficial owner of all the income earned in My Account(s), (b) I am neither a citizen nor a resident of the U.S. (and I have not made an election to be treated as a resident because of my marriage to a citizen or resident), (c) I have not been and do not intend to be present in the U.S. for 183 days or more during any calendar year in which this Agreement is in effect, and (d) I am not a former citizen or long-term resident of the United States subject to section 877 (relating to certain acts of expatriation) or (2) if signing on behalf of a corporation, partnership, trust or estate, that I am authorized to sign for the payee named on My Account(s) and such payee (a) is the beneficial owner of all the income earned in My Account(s) and (b) is not a United States person and (3) that in either case, I am neither engaged, nor expect to be, or any such named payee is not and does not expect to be, engaged during the year, in a U.S. trade or business that has effectively connected income from transactions within My Account(s).

In addition, if I, or any such named payee, is claiming a United States tax treaty benefit, I hereby certify, under penalties of perjury, that I, or any such named payee, is a resident of _____ within the meaning of the income tax treaty between the United States and that country. If required, a U.S. Taxpayer Identification Number is included above. I also certify under penalties of perjury that the named payee meets the requirements of the article in the applicable treaty dealing with limitations on benefits, if any, and derives the income for which the treaty benefits are claimed.

Under penalties of perjury, I declare that I have examined the information provided for in Paragraph 22b and to the best of my knowledge and belief it is true, correct, and complete.

BY SIGNING BELOW I ACKNOWLEDGE THAT I HAVE RECEIVED, READ AND AGREE TO THE TERMS OF THIS AGREEMENT.

The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding. If this is a Joint Account, all account owners must sign.

I ACKNOWLEDGE THAT MUTUAL FUNDS AND OTHER SECURITIES ARE NOT INSURED BY THE FDIC, ARE NOT DEPOSITS OR OTHER OBLIGATIONS OF, OR GUARANTEED BY, ANY BANK, AND ARE SUBJECT TO INVESTMENT RISK, INCLUDING POSSIBLE LOSS OF THE PRINCIPAL INVESTED.

THIS AGREEMENT CONTAINS A PRE-DISPUTE ARBITRATION CLAUSE AT PARAGRAPH 19.

Signature _____ Date _____

Social Security or Employer ID No. _____

Signature _____ Date _____

Social Security or Employer ID No. _____

**PLEASE READ AND SIGN BELOW TO OPEN A MARGIN ACCOUNT.**

I agree to open a margin account with you and acknowledge to you that, in addition to the preceding information, I understand each of the following:

- When I purchase securities on margin, I borrow money from you to finance that purchase; I may also borrow against collateral in my margin account for other purposes.

- I will be obligated to pay interest on all sums I borrow from you.

- I may be required to deliver additional collateral consisting of cash or securities to you to maintain my loan balance, as you require.

- By using a margin account to leverage my investments, I increase my risk of loss.

- Deutsche Banc Alex. Brown will deduct all interest charges from my account.

Deutsche Banc Alex. Brown represents to me that:

- My current margin debit balance will appear on each account statement Deutsche Banc Alex. Brown sends to me.

- Deutsche Banc Alex. Brown will charge me interest on a monthly basis and will disclose on my account statement the interest rate and total interest charge.

By signing below, I authorize you to open and carry a margin account for my benefit, and acknowledge that securities in my account may be loaned to Deutsche Banc Alex. Brown as principal or loaned to others. I also acknowledge that I have received, read and agree to the terms of this Margin Agreement.

I ACKNOWLEDGE THAT MUTUAL FUNDS AND OTHER SECURITIES ARE NOT INSURED BY THE FDIC, ARE NOT DEPOSITS OR OTHER OBLIGATIONS OF, OR GUARANTEED BY, ANY BANK, AND ARE SUBJECT TO INVESTMENT RISK, INCLUDING POSSIBLE LOSS OF THE PRINCIPAL INVESTED.

THIS AGREEMENT CONTAINS A PRE-DISPUTE ARBITRATION CLAUSE AT PARAGRAPH 19.

Signature _____, Member, Partner   Date 11/2/00

Signature _____ Date _____

Signature _____ Date _____

Paragraph 22 of this Agreement includes a certification of the Taxpayer Identification Number designated for this account and a representation regarding the applicability of backup withholding. If Deutsche Banc Alex. Brown does not receive this certification, it will be required to withhold a portion of all payments to this account.

---

FOR OFFICE USE ONLY          Branch Manager approval for margin accounts:

Signature _____   Date _____

# EXHIBIT 9

Civil Action Cover Sheet - Case Initiation

(Rev. 2/8/06) CCL 0520

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, LAW DIVISION

Konstantinos Vadevoulis, Jim Vadevoulis, Paul
Vadevoulis, PDJ Inc., f/k/a LaFrancaise Bakery, Inc.,
an Illinois corporation, Plaintiffs,

v.

William Tsourapas and EVC, Inc., d/b/a Exit Value
Consulting, Inc., an Illinois Corporation, Defendants.

}

No.

2008L001758
CALENDAR/ROOM 0
TIME 00:00

## CIVIL ACTION COVER SHEET - CASE INITITATION

A Civil Action Cover Sheet - Case Initiation shall be filed with the
complaint in all civil actions. The information contained herein is
for administrative purposes only and cannot be introduced into
evidence. Please check the box in front of the appropriate case type
which best characterizes your action. ONLY ONE (1) CASE TYPE
MAY BE CHECKED WITH THIS COVER SHEET.

Jury Demand  ☑ Yes  ☐ No

### PERSONAL INJURY/WRONGFUL DEATH
CASE TYPES:
- ☐ 027  Motor Vehicle
- ☐ 040  Medical Malpractice
- ☐ 047  Asbestos
- ☐ 048  Dram Shop
- ☐ 049  Product Liability
- ☐ 051  Construction Injuries
  (including Structural Work Act, Road
  Construction Injuries Act and negligence)
- ☐ 052  Railroad/FELA
- ☐ 053  Pediatric Lead Exposure
- ☐ 061  Other Personal Injury/Wrongful Death
- ☐ 063  Intentional Tort
- ☐ 064  Miscellaneous Statutory Action
  (Please Specify Below**)
- ☐ 065  Premises Liability
- ☐ 078  Fen-phen/Redux Litigation
- ☐ 199  Silicone Implant

### TAX & MISCELLANEOUS REMEDIES
CASE TYPES:
- ☐ 007  Confession of Judgment
- ☐ 008  Replevin
- ☐ 009  Tax
- ☐ 015  Condemnation
- ☐ 017  Detinue
- ☐ 029  Unemployment Compensation
- ☐ 036  Administrative Review Action
- ☐ 085  Petition to Register Foreign Judgment
- ☐ 099  All Other Extraordinary Remedies

### COMMERCIAL LITIGATION
CASE TYPES:
- ☑ 002  Breach of Contract
- ☐ 070  Professional Malpractice
  (other than legal or medical)
- ☐ 071  Fraud
- ☐ 072  Consumer Fraud
- ☐ 073  Breach of Warranty
- ☐ 074  Statutory Action
  (Please Specify Below**)
- ☐ 075  Other Commercial Litigation
  (Please Specify Below**)
- ☐ 076  Retaliatory Discharge

### OTHER ACTIONS
CASE TYPES:
- ☐ 062  Property Damage
- ☐ 066  Legal Malpractice
- ☐ 077  Libel/Slander
- ☐ 079  Petition for Qualified Orders
- ☐ 084  Petition to Issue Subpoena
- ☐ 100  Petition for Discovery

**  _____

By: Scott F. Hessell/Sperling & Slater, P.C.
    (Attorney) 22288              (Pro Se)

## DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

# IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT - LAW DIVISION

| | |
|---|---|
| Konstantinos Vadevoulis, Jim Vadevoulis, Paul Vadevoulis, PDJ Inc., f/k/a LaFrancaise Bakery, Inc., an Illinois corporation, | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) No.: ) |
| William Tsourapas and EVC, Inc., d/b/a Exit Value Consulting, Inc., an Illinois corporation, | ) Jury Trial Demanded ) ) ) |
| Defendants. | ) |

2008L001738
CALENDAR/ROOM V
TIME 00:00
Breach of Contract

## COMPLAINT

Plaintiffs Konstantinos Vadevoulis, Jim Vadevoulis, and Paul Vadevoulis (collectively the "Vadevoulises"), and PDJ Inc., f/k/a LaFrancaise Bakery, Inc., hereby complain against defendant William Tsourapas and EVC, Inc. as follows:

### Nature of the Case

1.      The Vadevoulises asked Tsourapas to provide tax, estate planning, and transactional advice in connection with the sale of LaFrancaise. Although this contract was never reduced to writing, Tsourapas agreed. Plaintiffs agreed to pay Tsourapas reasonable compensation for these services, but the parties never agreed on a set amount. At the closing of LaFrancaise, Tsourapas (who had control over LaFrancaise funds) arranged to pay himself $300,000 for these services—an amount plaintiffs never approved. Moreover, Tsourapas arranged for the Vadevoulises and/or LaFrancaise to pay $400,000 for "escrow insurance" that was of no benefit to the Vadevoulises or LaFrancaise. It is believed some or all of this $400,000 was kicked back to Tsourapas.

Finally, Tsourapas arranged for plaintiffs to participate in a tax strategy arranged by

Jenkens & Gilchrist. The tax strategy, however, was designed not to minimize plaintiffs'

taxes, but to maximize fees for Tsourapas and Jenkens, including over $1.3 million

plaintiffs knowingly paid to Jenkens, but also including over $161,000 in secret,

undisclosed referral fees Jenkens paid to Tsourapas. Another kickback. When the tax

strategy failed, plaintiffs were hit with millions in back taxes, and over a million in

penalties and interest. With this complaint, plaintiffs sue defendants for breach of

Tsourapas' agreement to provide valid, effective, and valuable tax, estate planning, and

transactional services to plaintiffs. Plaintiffs also assert breach of fiduciary duty, fraud,

fraudulent concealment, conspiracy, and unjust enrichment claims against defendants.

### Parties and Other Relevant Persons

2.      Konstantinos ("Dino") Vadevoulis is a resident of Greece. Dino

Vadevoulis is married to Perikleia ("Lilly") Vadevoulis.

3.      Jim Vadevoulis is a resident of Riverwoods, Lake County, Illinois. Jim

Vadevoulis is married to Joann Vadevoulis.

4.      Paul Vadevoulis is a resident of Glenview, Cook County, Illinois. Paul

is married to Magdalene ("May") Vadevoulis.

5.      PDJ Inc., formerly known as LaFrancaise Bakery, Inc., is an Illinois

corporation. PDJ is owned by Dino, Jim, and Paul Vadevoulis and is an S corporation

for federal tax purposes.

6.      The Dino Vadevoulis Descendants Trust dated October 28, 2000 is an

Illinois trust created on or about October 28, 2000. Defendant Tsourapas is a co-

Trustee of this trust.

7.     The Jim Vadevoulis Descendants Trust dated October 28, 2000 is an Illinois trust created on or about October 28, 2000.  Defendant Tsourapas is a co-Trustee of this trust.

8.     The Paul Vadevoulis Descendants Trust dated October 28, 2000 is an Illinois trust created on or about October 28, 2000.  Defendant Tsourapas is a co-Trustee of this trust.

9.     V1 Investments LLC is a Delaware limited liability corporation that was formed on or about October 20, 2000.  Dino Vadevoulis was a member of V1.

10.     V2 Investments LLC is a Delaware limited liability corporation that was formed on or about October 20, 2000.  Paul Vadevoulis was a member of V2.

11.     V3 Investments LLC is a Delaware limited liability corporation that was formed on or about October 20, 2000.  Jim Vadevoulis was a member of V3.

12.     TR1 Investments LLC is a Delaware limited liability corporation that was formed on or about November 2, 2000.  The Dino Vadevoulis Descendants Trust dated October 28, 2000 was a member of TR1.

13.     TR2 Investments LLC is a Delaware limited liability corporation that was formed on or about November 2, 2000.  The Paul Vadevoulis Descendants Trust dated October 28, 2000 was a member of TR2.

14.     TR3 Investments LLC is a Delaware limited liability corporation that was formed on or about November 2, 2000.  The Jim Vadevoulis Descendants Trust dated October 28, 2000 was a member of TR3.

15.     Trinity Investment Partnership is an Illinois general partnership that was formed on or about October 28, 2000.  V1, V2, V3, TR1, TR2, and TR3 were partners in Trinity.

16.     John Veleris is a resident of Wilmette, Illinois.

17.     William Tsourapas is a resident of Chicago, Cook County, Illinois. Tsourapas is not a lawyer.

18.     Forest Lake Partners LLC is an Illinois limited liability corporation. Forest Lake is owned by Veleris and Tsourapas.

19.     Exit Value Consulting, Inc. ("EVC") is an Illinois corporation.  EVC is owned by Tsourapas.

## Jurisdiction and Venue

20.     This court has jurisdiction and venue over this action pursuant to the Illinois Code of Civil Procedure, 735 ILCS 5/2-101 *et seq.*  At all relevant times, defendants conducted business in Cook County, and the causes of action asserted herein arose at least in part in Cook County.  At all relevant times, Tsourapas has resided in Cook County.

## Background

21.     In 1998, LaFrancaise hired Veleris to serve as Vice President.  Among other things, Veleris was tasked with assisting the Vadevoulises in selling LaFrancaise.

22.     During 1998 or 1999, Veleris and Tsourapas formed Forest Lake Partners, LLC.  (Previously, Tsourapas had been a banker at LaSalle Bank in Chicago.)  Among other things, Forest Lake was to provide advice and services with respect to business transactions.

4

23.     During 1999 or 2000, LaFrancaise contracted with Forest Lake Partners, LLC to help prepare LaFrancaise to be sold by performing, among other things, due diligence services. LaFrancaise verbally agreed to pay Forest Lake Partners $125,000 for these services.

24.     During 1999 and 2000, Forest Lake Partners, including Tsourapas, helped prepare LaFrancaise to be sold. In December 2000, LaFrancaise was sold to SCIS Food Services, Inc.

25.     In addition, during 2000, the Vadevoulises asked Tsourapas to provide advice concerning tax and estate planning issues. Tsourapas agreed. The parties never agreed in advance how much Tsourapas would be paid for these services. At one point, Tsourapas asked to be paid $300,000 for these services. Although LaFrancaise and the Vadevoulises agreed to provide reasonable compensation to Tsourapas for these services, they refused to pay him the $300,000 he requested. Tsourapas moved forward to provide these services even though his compensation for providing such services had not been set.

26.     At the December 22, 2000 closing of the sale of LaFrancaise to SCIS, Forest Lake Partners was paid the $125,000 the Vadevoulises had orally agreed to pay. Unbeknownst to LaFrancaise or the Vadevoulises, however, Tsourapas arranged to pay himself $300,000 via EVC, Inc. out of the proceeds of the LaFrancaise sale. (Because of Tsourapas' involvement with the transaction, he had control over the flow of funds out of LaFrancaise.) Ironically, this is the amount Tsourapas had requested, and LaFrancaise and the Vadevoulises had refused to pay. It wasn't until after the $300,000 had already been wired to EVC that LaFrancaise and the Vadevoulises discovered the transfer.

27.    In addition, as part of the LaFrancaise transaction, Tsourapas caused

LaFrancaise and/or the Vadevoulises to pay Near North Insurance Brokerage $400,000 for

"escrow insurance." Tsourapas arranged for this insurance through a friend named

Donald Zienty. Zienty was a Vice President at Near North Insurance. Near North

Insurance is no longer in business. Its owner, Michael Segal, was convicted of federal

racketeering and is now in jail. The Vadevoulises did not know about and did not approve

the purchase of this insurance. Although they have tried to secure a copy of the policy for

this supposed escrow insurance, to this day, the Vadevoulises have never seen a copy.

Indeed, it appears as if the Vadevoulises paid $400,000 for no insurance at all. Upon

information and belief, Tsourapas received (or benefited from the receipt) of most (if not

all) of the $400,000.

28.    In 2000 and 2001, Jenkens & Gilchrist was a large law firm with hundreds

of attorneys and offices in nine major U.S. cities, including in Chicago. In 2000, pursuant

to the agreement between the parties, Tsourapas arranged for Jenkens to provide tax and

estate planning services to the Vadevoulises.

29.    At the recommendation of Tsourapas and Jenkens, the Vadevoulises

entered into a "Son of Boss" tax strategy in 2000.

30.    Tsourapas and Jenkens informed the Vadevoulises that the tax strategy

was a valid and legitimate means of minimizing taxes with respect to the Vadevoulises'

capital gains in connection with the LaFrancaise transaction.

31.    Tsourapas and Jenkens recommended the formation of V1, V2, V3, TR1,

TR2, TR3, and Trinity in order for the Vadevoulises to effectuate the tax strategy.

Jenkens orchestrated the formation of these entities.

32.    Although complicated, the tax strategy Tsourapas and Jenkens recommended with respect to the Vadevoulises was supposed to work as follows. On November 27, 2000, TR1, TR2, and TR3 each entered into separate options contracts with Deutsche Bank to purchase Japanese Yen at a strike price of 96.40 Yen per 1.00 Euro with a settlement date of December 15, 2000 (the "Long Options"). At the same time, these entities each entered into separate options contracts with Deutsche Bank to sell Japanese Yen with a strike price of 96.42 Yen per 1.00 Euro with a settlement date of December 15, 2000 (the "Short Options"). The entities paid about the same amount for the Long Options as they received for the Short Options.

33.    On November 28, 2000, TR1, TR2, and TR3 each contributed the options to Trinity as a contribution to capital. At the time, the options were "out of the money" and on December 1, 2000, the entities reached agreements with Deutsche Bank to terminate the options contracts.

34.    On various dates in December 2000, Trinity purchased shares of various common stock. On December 12, 2000, Trinity purchased Canadian dollars.

35.    On December 26, 2000, TR1, TR2, and TR3 contributed their interest in Trinity to LaFrancaise. That same day, Trinity was dissolved and liquidated. In liquidation, all of the currency and stock were distributed to LaFrancaise.

36.    On December 27, 2000, LaFrancaise sold all of its interest in the foreign currency and stock, which it received on liquidation from Trinity.

37.    According to Tsourapas and Jenkens, this series of events would lead to, among other things, the following tax treatment: (a) TR1, TR2, and TR3 should be disregarded as entities for federal tax purposes; (b) the Options investments should be

treated as non-taxable and separate for tax purposes; and (c) the basis for TR1, TR2, and TR3's contribution to Trinity should include the Long Option (*i.e.*, a loss), but not the Short Option (*i.e.*, a gain). In sum, the strategy was supposed to generate a legitimate tax loss that the Vadevoulises and Veleris could offset against capital gains realized in connection with the LaFrancaise transaction.

38.    The Vadevoulises (via LaFrancaise) paid Jenkens $1,346,878 to participate in the strategy. The Vadevoulises split this fee three ways. Thus, each brother paid $448,949.33. In addition, the Vadevoulises paid Jenkens tens of thousands of dollars for estate planning advice.

39.    Unbeknownst to the Vadevoulises, the reason Tsourapas had recommended Jenkens was because Jenkens secretly agreed to pay Tsourapas referral fees for the tax and estate planning work Jenkens provided. During 2001, Jenkens paid Tsourapas (via EVC) (a) $137,687.80 as a result of the Vadevoulises tax strategy; and (b) $15,000 as a result of estate planning work performed for the Vadevoulises. Tsourapas arranged for all of these fees to be paid to EVC.

40.    At the time, the Vadevoulises believed that Tsourapas was providing them with independent advice concerning the transaction and their tax situation. They did not know that Tsourapas had an undisclosed stake in the tax and legal strategies Tsourapas recommended they pursue via Jenkens. Had the Vadevoulises known that Jenkens was paying secret, undisclosed referral fees to Tsourapas, they would not have followed the tax and estate planning advice Jenkens gave, including Jenkens advice to engage in the "Son of Boss" tax strategy.

41.     Jenkens' payment of fees to Tsourapas meant that Jenkens split the fees it charged the Vadevoulises. In so doing, Jenkens shared legal fees with a non-lawyer in violation of Rule 5.4 of the Illinois Rules of Professional Conduct. In addition, the arrangement violated Rule 7.2(b) of the Illinois Rules of Professional Conduct, which precludes a lawyer from giving "anything of value to a person for recommending or having recommended the lawyer's services." By this arrangement, Tsourapas engaged in the unauthorized practice of law in violation of Illinois law.

42.     The Vadevoulises filed their 2000 tax returns with respect to the tax strategy in the Spring of 2001. These tax returns turned out to be incorrect.

43.     In June of 2003, the IRS formalized its position regarding certain tax strategies, including the tax strategies in which plaintiffs participated, by issuing new regulations (the "Regulations") retroactive to October 18, 1999, and through Office of Chief Counsel Notice CC-2003-020 (the "OCC Notice"). The Regulations invalidated tax strategies, including the tax strategies Tsourapas and Jenkens recommended to plaintiffs and the OCC Notice explained the IRS' position why.

44.     In late 2003/early 2004, the IRS notified the Vadevoulises that there was a problem with respect to their tax strategies.

45.     On or about May 5, 2004, in Notice 2004-46, the IRS, in furtherance of its previous pronouncements, offered to settle the audits of plaintiffs and other like-situated taxpayers by those parties paying to the IRS (a) all of the taxes avoided by use of these transactions; (b) all interest due; (c) a 10% penalty; and (d) a loss of 50% of the fees and other "out of pocket" costs deducted. If taxpayers did not accept the offer, the IRS

indicated it would assess all tax due and interest, lose all deductions, and impose a 40%

penalty.

46.    As a result of the faulty tax transaction, plaintiffs participated in IRS

settlement initiative 2004-46 and had to file amended tax returns with federal and state tax

authorities.  As a result of the settlement, plaintiffs had to pay millions of dollars in more

taxes.  They also had to pay millions of dollars in penalties and interest that they would

not have had to pay had they not employed the tax strategy.

47.    It wasn't until 2004 that the Vadevoulises realized that they had been

injured with respect to the tax transaction that Tsourapas had arranged.  Moreover, it

wasn't until 2004 that the Vadevoulises realized that Jenkens had paid Tsourapas secret,

undisclosed referral fees in connection with the tax strategy.

48.    The Vadevoulises paid millions of dollars in additional taxes because the

tax strategy didn't work.  In addition, the Vadevoulises paid the following penalties:

(a) Dino Vadevoulis paid $214,764, (b) Jim paid $214,260, and (c) Paul paid $199,500.00.

49.    Prior to May 2004, a class of plaintiffs sued Jenkens & Gilchrist for

Jenkens improper marketing of tax shelters.  Eventually, Jenkens agreed to settle the

*Denney v. Jenkens & Gilchrist* litigation for $70 million and in January 2007 a final

judgment was entered.  Eventually, Jenkens admitted that certain of its lawyers had

"developed and marketed fraudulent tax sheleters, with fraudulent tax opinions."  Jenkens

agreed to pay the IRS $76 million for "its promotion of abusive and fraudulent tax shelters

and violation of the tax law concerning tax shelter registration and maintenance and

turnover to the IRS of tax shelter investor lists."  Moreover, in large part as a result of its

widespread marketing of tax shelters, Jenkens & Gilchrist dissolved. Consequently, Jenkens is no longer a practicing law firm.

## Count I
## (Breach of Contract)

50.   Plaintiffs reallege and reincorporates paragraphs 1 through 49 of the general allegations (*see* pages 1-10) as if fully set forth herein.

51.   The Vadevoulises and/or LaFrancaise asked Tsourapas to provide them with tax, estate planning, and transactional advice in connection with the Vadevoulises sale of LaFrancaise in 2000. Tsourapas orally agreed. Although not in writing, the parties' agreement constituted a valid and enforceable contract.

52.   Although the Vadevoulises agreed to provide Tsourapas with reasonable compensation for this advice and Tsourapas agreed to provide competent advice, the parties never agreed on a specific amount. Implicit in this contract was that Tsourapas would provide reasonable, competent, and disinterested tax, estate planning, and transactional advice. Also implicit was that Tsourapas would recommend only tax, estate planning, and transasactional strategies that were necessary, appropriate, and of value to the Vadevoulises.

53.   The Vadevoulises and/or LaFrancaise performed all of their obligations under their contract with Tsourapas.

54.   At the closing of LaFrancaise, Tsourapas arranged to pay himself $300,000 out of the sales proceeds for the tax and estate planning advice he had provided to the Vadevoulises. The Vadevoulises never agreed to this amount and did not know that this amount had been paid to Tsourapas until after the fact.

55.    Also at the closing, Tsourapas arranged for the purchase of supposed "escrow insurance" for the sum of $400,000. The Vadevoulises never agreed to purchase such insurance, never received a copy of any such policy, and neither they nor LaFrancaise received any benefits from this supposed insurance.

56.    Finally, at and shortly after the closing, Tsourapas arranged for plaintiffs to participate in the Jenkens tax strategy, which not only turned out to be of no value to plaintiffs, but cost plaintiffs millions of dollars.

57.    Given (a) that Tsourapas caused the $300,000 to be paid to himself without approval of the Vadevoulises, (b) that neither the Vadevoulises nor LaFrancaise received any benefit from the supposed "escrow insurance," (c) the faulty tax and estate planning advice Tsourapas gave to the Vadevoulises, and (d) that Jenkens was paying Tsourapas a secret, undisclosed referral fee for this advice, the amounts Tsourapas received pursuant to or as a result of the contract were not reasonable. Indeed, under such circumstances, the fees were excessive.

58.    By arranging to be paid $300,000 from LaFrancaise, some or all of the $400,000 paid to Near North, and at least $152,687.80 from Jenkens, Tsourapas breached his agreement with the Vadevoulises and/or LaFrancaise to provide competent advice for a reasonable fee.

59.    As a result of Tsourapas' breach, the Vadevoulises have suffered damages, including, but not limited to: (a) the $300,000 Tsourapas paid to himself; (b) the $400,000 paid for escrow insurance; (c) at least $1.3 million in fees paid to Jenkens; (d) millions in back taxes; (e) $628,524 in penalties; and (f) substantial interest paid to the IRS and the State of Illinois.

WHEREFORE, plaintiffs respectfully request that the Court order the following relief:

A.    An award of compensatory damages to be established definitively at trial;

B.    An award of appropriate prejudgment interest; and

C.    Such other relief as this Court deems reasonable, necessary and just.

### Count II
### (Breach of Fiduciary Duty—Undisclosed Referral Fees)

60.    Plaintiffs reallege and reincorporates paragraphs 1 through 49 of the general allegations (*see* pages 1-10) as if fully set forth herein.

61.    As an agent, trustee, and/or advisor of plaintiffs and plaintiffs' families, Tsourapas owed fiduciary duties to plaintiffs.

62.    Plaintiffs relied upon Tsourapas' experience and expertise. Plaintiffs knew little about tax and estate planning themselves.

63.    Tsourapas had a duty to disclose the referral fees he was to receive from Jenkens to plaintiffs in advance of the transactions he arranged. Moreover, failing to disclose the fees prior to the transaction, Tsourapas had a duty to pay to plaintiffs the referral fees he received from Jenkens.

64.    Tsourapas' arrangement to receive referral fess from Jenkens was a material fact. At a minimum, disclosure of the arrangement would have affected plaintiffs' decision to enter into the tax strategy.

65.    The referral fees stemmed directly from services Jenkens purported to provide plaintiffs, and for which Jenkens charged plaintiffs in excess of $1.3 million dollars in fees.

66.     Had Tsourapas disclosed the referral fee arrangement to plaintiffs in advance, they would not have engaged in the tax strategy, and would have saved themselves over $1.3 million in fees and millions in interest, penalties, and/or other damages.

WHEREFORE, plaintiffs respectfully request that the Court order the following relief:

A.     The payment of all referral fees to plaintiffs;

B.     An award of additional compensatory damages to be established definitively at trial;

C.     An award of appropriate prejudgment interest;

D.     An award of punitive or exemplary damages; and

E.     Such other relief as this Court deems reasonable, necessary and just.

### Count III
### (Fraud)

67.     Plaintiffs reallege and reincorporates paragraphs 1 through 49 of the general allegations (see pages 1-10) as if fully set forth herein.

68.     In connection with the tax strategies Tsourapas arranged for plaintiffs to employ, Tsourapas made false statements of material fact.  Among other things, Tsourapas told plaintiffs that he was recommending strategies formulated and implemented by Jenkens because of Jenkens expertise and because of the quality of Jenkens tax and estate planning advice and services.  Moreover, Tsourapas told plaintiffs that the tax strategies were a valid and legitimate way of minimizing taxes.

69.     These statements were false, and Tsourapas knew they were false when he made them.  In fact, Tsourapas was recommending Jenkens because they had agreed to

pay him secret, undisclosed referral fees. And the tax strategies were not valid nor legitimate and did not work. Such strategies were conceived as a means of generating fees for Jenkens and Tsourapas, but with no real prospect of providing the benefits promised to plaintiffs.

70.     In connection with the sale of LaFrancaise, Tsourapas made other false statements of material fact. Among other things, Tsourapas represented to the Vadevoulises that the expenses incurred in connection with the transaction, including purchases of insurance, were reasonable and legitimate.

71.     With respect to the escrow insurance, however, this statement was false, and Tsourapas knew it was false when he made it. Upon information and belief, the insurance was bogus. And even if it was real, such insurance was not needed and/or was grossly overpriced. Upon information and belief, Tsourapas pocketed much of the $400,000 the Vadevoulises and/or LaFrancaise paid for this insurance himself.

72.     Tsourapas made these statements with the intent to induce plaintiffs to engage in the tax strategies, and to induce the Vadevoulises to allow Tsourapas to cause the Vadevoulises and/or LaFrancaise to pay certain expenses, including the cost of the escrow insurance.

73.     Plaintiffs relied on these statements by engaging in the tax strategy. And the Vadevoulises and/or LaFrancaise relied on the statements concerning the LaFrancaise transaction by allowing Tsourapas to pay certain expenses, including escrow insurance, without prior approval by the Vadevoulises.

74.     Had plaintiffs known the truth about these statements, they would not have engaged in the tax strategies and/or would not have allowed Tsourapas to purchase the escrow insurance.

75.     Plaintiffs were damaged as a result of defendants' fraud.

76.     An award of exemplary damages based on Tsourapas' fraudulent statements is appropriate because the fraud he committed involved willful, wanton, and outrageous conduct and the violation of a duty stemming from a relation of trust and confidence.

WHEREFORE, plaintiffs respectfully request that the Court order the following relief:

A.     An award of compensatory damages to be established definitively at trial;

B.     An award of appropriate prejudgment interest;

C.     An award of punitive or exemplary damages; and

D.     Such other relief as this Court deems reasonable, necessary and just.

### Count IV
### (Fraudulent Concealment)

77.     Plaintiffs reallege and reincorporates paragraphs 1 through 49 of the general allegations (*see* pages 1-10) as if fully set forth herein.

78.     As agent, trustee, and advisor to plaintiffs and plaintiffs' families, Tsourapas owed plaintiffs fiduciary duties, including the duty to disclose material facts concerning plaintiffs' tax strategy with Jenkens and concerning insurance Tsourapas arranged for plaintiffs to purchase.

79.     Plaintiffs relied upon Tsourapas' experience and expertise.  In particular, plaintiffs knew little about tax and estate planning themselves.

80.    Tsourapas, however, never disclosed material facts to plaintiffs.

81.    Among other things, Tsourapas didn't disclose that he had arranged for Jenkens to pay him a substantial referral fee.  Nor did he disclose his plans to purchase "escrow insurance" for a substantial sum.

82.    Rather than disclose the referral fee, the escrow insurance, and other material facts to plaintiffs, Tsourapas concealed those material facts from plaintiffs. Tsourapas' silence to plaintiffs was knowing and/or deliberate.  But at a minimum, Tsourapas acted with deliberate indifference.  In the end, Tsourapas' acts created a duty to disclose to plaintiffs the material facts alleged herein, including the existence of the referral fee.

83.    Tsourapas intended that his concealment (by his silence) induce a false belief under circumstances creating a duty to speak.  Plaintiffs relied upon Tsourapas' silence as a representation that Tsourapas did not have an interest in the tax strategy he was pushing plaintiffs to employ.

84.    Plaintiffs could not have discovered the truth through reasonable inquiry or inspection.

85.    Plaintiffs would have acted differently had they been aware of the information.

86.    Plaintiffs reliance on the omitted facts led to their injury.

87.    An award of exemplary damages based on Tsourapas' fraudulent concealment is appropriate because the fraud he committed involved the violation of a duty stemming from a relation of trust and confidence.

WHEREFORE, plaintiffs respectfully requests that the Court order the following relief:

A.   An award of compensatory damages to be established definitively at trial;

B.   An award of appropriate prejudgment interest;

C.   An award of punitive or exemplary damages; and

D.   Such other relief as this Court deems reasonable, necessary and just.

## Count V
## (Civil Conspiracy)

88.   Plaintiffs reallege and reincorporates paragraphs 1 through 1-49 of the general allegations (*see* pages 1-10) as if fully set forth herein.

89.   Tsourapas and EVC knowingly acted in concert with Jenkens to market and implement the fraudulent and illegal tax strategies.

90.   The acts of Tsourapas, EVC, and/or Jenkens were contrary to law.

91.   Tsourapas, EVC, and Jenkens agreed to commit the unlawful acts alleged herein.

92.   The conspiracy to commit these unlawful acts proximately caused plaintiffs damage.

93.   As a result of Tsourapas, EVC, and Jenkens' actions, plaintiffs have been injured in that plaintiffs have paid over $1.3 million in fees, have incurred millions of dollars in damages, and have foregone legitimate tax savings and investment opportunities.

WHEREFORE, plaintiffs respectfully request that the Court order the following relief:

A.   An award of compensatory damages to be established definitively at trial;

18

B.      An award of appropriate prejudgment interest;

C.      An award of punitive or exemplary damages; and

D.      Such other relief as this Court deems reasonable, necessary and just.

**Count VI**
**(Unjust Enrichment)**

94.      Plaintiffs reallege and reincorporates paragraphs 1 through 49 of the

general allegations (*see* pages 1-10) as if fully set forth herein.

95.      Tsourapas caused LaFrancaise to pay him or EVC $300,000 for tax and

estate planning advice Tsourapas or EVC supposedly agreed to provide the Vadevoulises.

96.      In addition, Tsourapas arranged for Jenkens to pay him or EVC at least

$161,187.80 in secret, undisclosed referral fees in connection with tax and estate planning

advice Tsourapas arranged for Jenkens to provide to the Vadevoulises and Veleris.

97.      In addition, Tsourapas arranged for LaFrancaise to pay $400,000 to Near

North Insurance for "escrow insurance." Upon information and belief, no such insurance

was issued, however, and Tsourapas or EVC received much, if not all, of this money from

Near North.

98.      Consequently, Tsourapas has been unjustly enriched to the extent of these

payments, which justice, equity, and good conscience mandate be disgorged.

99.      It would be unjust and would violate fundamental principles of justice,

equity, and good conscience for Tsourapas and EVC to keep these payments.

100.      As set forth herein, Tsourapas and EVC sought and received these

payments willfully and maliciously or with such gross negligence as to indicate a wanton

disregard for the rights of plaintiffs. As a result, an award of exemplary damages is appropriate.

WHEREFORE, plaintiffs respectfully request that the Court order the following relief:

A.   An award of compensatory damages equivalent to the benefits unjustly conferred upon Tsourapas and EVC and believed to be at least $861,187.80, but to be established definitively at trial;

B.   An award of appropriate prejudgment interest;

C.   An award of punitive or exemplary damages; and

D.   Such other relief as this Court deems reasonable, necessary and just.

Dated: February 14, 2008

KONSTANTINOS VADEVOULIS, JIM VADEVOULIS, PAUL VADEVOULIS, PDJ INC., f/k/a LAFRANCAISE BAKERY, INC.,

By: _____
    One of their attorneys

Adam P. Merrill
Scott F. Hessell
SPERLING & SLATER (# 22288)
55 W. Monroe, Suite 3200
Chicago, Illinois 60603
(312) 641-3200

# EXHIBIT 10

**Deutsche Banc Alex. Brown**
**Client Statement**

DB ALEX. BROWN LLC
P. O. BOX 1776
BALTIMORE MD 21203

CLENDENING/BRUBAKER
INVESTMENT REP #109
200 CRESCENT COURT  SUITE 500
DALLAS TX 75201-6959
(214) 740-7700  (800) 527-3903

VI INVESTMENTS LLC
ATTN DINO VADEVOULIS
1301 WEST 22ND ST STE 615
OAKBROOK IL 60523

## Portfolio Overview

### Assets

| | Value as of November 30, 2000 | % of total assets |
|---|---|---|
| Cash | 10.00 | 0.0% |
| Money funds | 4,770.00 | 100.0 |
| Common stocks | 0.00 | 0.0 |
| Preferred stocks | 0.00 | 0.0 |
| Mutual funds | 0.00 | 0.0 |
| Government debt issues | 0.00 | 0.0 |
| Corporate debt issues | 0.00 | 0.0 |
| Municipal debt issues | 0.00 | 0.0 |
| Certificates of deposit | 0.00 | 0.0 |
| Options | 0.00 | 0.0 |
| Limited partnerships | 0.00 | 0.0 |
| Annuities | 0.00 | 0.0 |
| Other | 0.00 | 0.0 |
| Total assets | $4,770.00 | 100.0% |

### Liabilities

| | Value as of November 30, 2000 | % of total assets |
|---|---|---|
| Cash debit | 10.00 | 0.0% |
| Margin debit | 0.00 | 0.0 |
| Short options | 0.00 | 0.0 |
| Other short securities | 0.00 | 0.0 |
| Total liabilities | $0.00 | 0.0% |

Net Value of Your Account          $4,770.00

Net Value as of December 31, 1999          $0.00

## Activity

| | This period |
|---|---|
| Net value of your account as of October 31 | 10.00 |
| Net cash activity | 4,770.00 |
| Net securities into/out of account | 0.00 |
| Net return on your portfolio | 0.00 |
| Net value of your account as of November 30 | $4,770.00 |

## Income

| | This period | Year-to-date |
|---|---|---|
| Net income received | 10.00 | 10.00 |
| Current estimated annual income | $289.53 | |
| Current estimated annual yield | 6.07% | |

Statement of Account
November 1 to November 30, 2000
Account 223-78585

Page 1 of 5

**Deutsche Bank** ◣◥

**Deutsche Banc Alex. Brown**

Statement of Account
November 1 to November 30, 2000
Account 223-78585

Page 2 of 5

## Cash Summary

| Opening Cash Balance | $0.00 |
|---|---|

### Income Summary

| | This period | Year-to-date |
|---|---|---|
| Taxable dividends | $0.00 | $0.00 |
| Taxable interest | 0.00 | 0.00 |
| Capital gains distributions received | 0.00 | 0.00 |
| Non-taxable dividends | 0.00 | 0.00 |
| Non-taxable interest | 0.00 | 0.00 |
| Net income received | $0.00 | $0.00 |

### Cash Activity

| | This period | Year-to-date |
|---|---|---|
| Deposits | $4,770.00 | $4,770.00 |
| Withdrawals | 0.00 | 0.00 |
| U.S. tax withheld | 0.00 | 0.00 |
| Non-resident tax withheld | 0.00 | 0.00 |
| Foreign taxes withheld | 0.00 | 0.00 |
| Interest charges on cash debit | 0.00 | 0.00 |
| Interest charges on margin debit | 0.00 | 0.00 |
| Net cash activity | $4,770.00 | $4,770.00 |

### Purchases and Sales

| | This period | Year-to-date |
|---|---|---|
| Total purchases | $4,770.00 - | $4,770.00 - |
| Total sales | 0.00 | 0.00 |
| Other money fund sales | 0.00 | 0.00 |
| Net purchases/sales (incl. money funds) | $4,770.00 - | $4,770.00 - |

### Other Activity

| | This period | Year-to-date |
|---|---|---|
| Bond redemptions | $0.00 | $0.00 |
| Other activity | 0.00 | 0.00 |
| Net other activity | $0.00 | $0.00 |

| Closing Cash Balance | $0.00 |
|---|---|

## Portfolio Summary

### Activity

| | This period | Year-to-date |
|---|---|---|
| Previous net account value | $0.00 | $0.00 |
| Net cash activity | 4,770.00 | 4,770.00 |
| Net securities into/out of account | 0.00 | 0.00 |
| Adjusted previous account value | $4,770.00 | $4,770.00 |
| Net change in market value | 0.00 | 0.00 |
| Net income received | 0.00 | 0.00 |
| Net account value as of November 30, 2000 | $4,770.00 | $4,770.00 |
| Net return on portfolio | 0.00 | 0.00 |

## Portfolio Holdings

Prices are provided by an independent pricing service. For current market price quotations, call your Investment Representative.

### Cash and Equivalents

| | Amount | Estimated annual income | Current annual yield |
|---|---|---|---|
| DEUTSCHE BANC ALEX. BROWN CASH RESERVE FUND, INC.- PRIME SERIES | $4,770.00 | $289.53 | 6.07% |
| Total cash and equivalents | $4,770.00 | $289.53 | |

### Common Stocks

| | Symbol | Quantity | Current sharrprice | Current market value | Estimated annual income | Estimated dividend yield |
|---|---|---|---|---|---|---|
| 1 LONG CALL FX OPTION EUR/GBP STRIKE .6155 PREM 3.16000 DTD 11/27/00 EXP 12/15/00 | | 1 | Not Priced | Not Priced | | |
| 1 SHORT CALL FX OPTION EUR/GBP STRIKE .6157 PREM 3.14820 DTD 11/27/00 EXP 12/15/00 | | 1 - | Not Priced | Not Priced | | |
| Total common stocks | | | | $0.00 | | |

## Portfolio Activity

### Purchases and Sales

| | Settlement date | Activity | Type | Quantity | Description | Unit price | Amount |
|---|---|---|---|---|---|---|---|
| S | 11/27/2000 | Purchased | Sweep | 4,770 | DEUTSCHE BANC ALEX. BROWN CASH RESERVE FUND, INC.- PRIME SERIES | $1 | $4,770.00 - |
| | Net purchases and sales | | | | | | $4,770.00 - |

### Deposits

#### Other Deposits

| | Entry date | Description | Amount |
|---|---|---|---|
| 1 | 11/24/2000 | FUNDS RECEIVED | $4,770.00 |
| | Total other deposits | | $4,770.00 |



**Deutsche Bank**

Statement of Account
November 1 to November 30, 2000
Account 2J2-78585

Page 3 of 5

**Deutsche Banc Alex. Brown**

Statement of Account
November 1 to November 30, 2000
Account 223-78585

Page 4 of 5

## Portfolio Activity    continued

### Other Activity in Your Account

| Settlement date | Activity | Quantity | Description | Amount |
|---|---|---|---|---|
| 11/30/2000 | Journal | 1 | LONG CALL FX OPTION EUR/GBP STRIKE .6155 PREM 31620 DTD 11/27/00 EXP 12/12/00 SEE DB CONFIRM | |
| 11/30/2000 | Journal | 1 | SHORT CALL FX OPTION EUR/GBP STRIKE .6157 PREM 316420 DTD 11/27/00 EXP 12/15/00 SEE DB CONFIRM | |

## Market Indices

| Equities | Current | December 31, 1999 | Change year to date |
|---|---|---|---|
| Dow Jones Industrial Average | 10,414.49 | 11,497.12 | 9.4% |
| NASDAQ Composite | 2,597.93 | 4,069.31 | 36.2% |
| S&P 500 | 1,314.95 | 1,469.25 | 10.5% |
| MSCI EAFE | 1,442.76 | 1,760.04 | 18.0% |

| Fixed Income Securities | Current | December 31, 1999 |
|---|---|---|
| Long term treasury bond yield | 5.65% | 6.48% |
| Lehman Brothers Intermediate US Credit Index | 7.36% | 0.16% |

## Disclosure

Please advise us promptly of any material change in your investment or financial situation.

Your account is with DB Alex. Brown LLC, a registered broker-dealer, referred to herein as Deutsche Banc Alex. Brown. The reporting period for your statement ends on the last day of the month. The dates indicated on purchases and sales are settlement dates. Margin interest charges incurred after the period indicated on this statement will be shown on the next statement. In order to review margin interest charges, you should retain this statement for use in conjunction with the next statement.

Any free credit balances represents funds payable on demand which, although properly accounted for on our books and records, are not segregated and may be used in the conduct of the Firm's business, without payment to you subject to the limitations of 17 CFR Section 240.15c3-3 under the Securities Exchange Act of 1934.

Positions and activity shown on your margin account comprise a combined statement of your margin account and your special memorandum account. The special memorandum account is maintained for you in accordance with Regulation T of the Board of Governors of the Federal Reserve System and is comprised of funds generated by your margin activity and segregated for your future use. A permanent detailed record of the activity in this account is available for inspection at your request. We reserve the right to establish or modify requirements pertaining to the operation of a margin account which may exceed requirements established by the Federal Reserve Board and/or the New York Stock Exchange.

Aggregate commissions which you have paid are not reported separately on this statement of account.

Commissions and charges incurred in connection with the execution of option and other transactions have been included in confirmations of those transactions previously furnished you. A summary of this information will be made available to you upon request.

Orders for your account may be aggregated with other customer orders. In so doing, you may receive an average price for your orders which may be different from the price(s) you may have received had your orders not been aggregated. This practice may also result in your orders being only partially completed.

A financial statement on this Firm is available for your personal inspection at our offices, or a copy will be mailed upon your written request.

Information regarding market price, market value, estimated income, dividends and annual yields is based on data obtained from sources we consider to be reliable but is not guaranteed as to accuracy. This information is provided as a convenience to aid in your financial recordkeeping.

Deutsche Banc Alex. Brown money fund yield figures are based on the seven-day period preceding the statement date. Flag Investors Funds estimated yield and income figures are computed based on either dividends for the preceding twelve-month period or the annualized rate of distribution.

Account information may have been provided regarding both publicly traded limited partnerships and certain other limited partnerships purchased through the Firm. The "market value" amount listed for these other limited partnerships does not necessarily reflect current market value but rather is based upon the information we obtain from sources outside the Firm but whose accuracy we cannot confirm.

We receive payment for routing for execution some orders in certain listed securities. The determination as to where to route orders is based on several factors, subject to the overriding consideration that customers receive best execution. All orders for which we receive payment are exposed to the possibility of price improvement, so that all such orders potentially can be executed at prices superior to the best bid or best offer. Payment is received in the form of rebates, or credits against exchange fees and specialist fees. Details will be furnished upon written request.

DB Alex. Brown LLC debits $50 from each account transferring to another broker-dealer or financial institution to cover the administrative costs of such transfer.

NASD Regulation, Inc. makes available to investors a brochure regarding its Public Disclosure Program. The Public Disclosure hotline number is (800) 289-9999. The NASD Regulation website can be located at www.nasdr.com.

DB Alex. Brown LLC. Member SIPC.

* The current portfolio value excludes unpriced securities.

** Denotes a mutual fund.

*** Denotes a foreign security.

## Money Market Fund 7 Day Average Yields:

| | |
|---|---|
| DB ALEX. BROWN CASH RESERVE PRIME | 6.07% |
| DB ALEX. BROWN CASH RESERVE TREASURY | 5.84% |
| DB ALEX. BROWN CASH RESERVE TAX FREE | 3.52% |

## Your Standing Instructions are:

Purchases: Hold securities in street name
Sales: Credit proceeds to account
Income: Hold in account

End of Statement

# EXHIBIT 11

**Deutsche Banc Alex. Brown**
**Client Statement**

DB ALEX. BROWN LLC
P. O. BOX 1776
BALTIMORE MD 21203

CLENDENING/BRUBAKER
INVESTMENT REP #109
200 CRESCENT COURT SUITE 500
DALLAS TX 75201-6959
(214) 740-7700 (800) 527-3903

V2 INVESTMENTS LLC
ATTN BILL P TSOURAPAS
1301 WEST 22ND ST STE 615
OAK BROOK IL 60523

## Portfolio Overview

### Assets

| | Value as of November 30, 2000 | % of total assets |
|---|---|---|
| Cash | 10.00 | 0.0% |
| Money funds | 4,770.00 | 100.0 |
| Common stocks | 0.00 | 0.0 |
| Preferred stocks | 0.00 | 0.0 |
| Mutual funds | 0.00 | 0.0 |
| Government debt issues | 0.00 | 0.0 |
| Corporate debt issues | 0.00 | 0.0 |
| Municipal debt issues | 0.00 | 0.0 |
| Certificates of deposit | 0.00 | 0.0 |
| Options | 0.00 | 0.0 |
| Limited partnerships | 0.00 | 0.0 |
| Annuities | 0.00 | 0.0 |
| Other | 0.00 | 0.0 |
| **Total assets** | **$4,770.00** | **100.0%** |

### Liabilities

| | Value as of November 30, 2000 | % of total assets |
|---|---|---|
| Cash debit | 10.00 | 0.0% |
| Margin debit | 0.00 | 0.0 |
| Short options | 0.00 | 0.0 |
| Other short securities | 0.00 | 0.0 |
| **Total liabilities** | **$0.00** | **0.0%** |

**Net Value of Your Account**    $4,770.00

**Net Value as of December 31, 1999**    $0.00

## Activity

| | This period |
|---|---|
| Net value of your account as of October 31 | 50.00 |
| Net cash activity | 4,770.00 |
| Net securities into/out of account | 0.00 |
| Net return on your portfolio | 0.00 |
| Net value of your account as of November 30 | $4,770.00 |

## Income

| | This period | Year to date |
|---|---|---|
| Net income received | $0.00 | $0.00 |
| Current estimated annual income | $289.53 | |
| Current estimated annual yield | 6.07% | |

Statement of Account
November 1 to November 30, 2000
Account 2J2-78578

Page 1 of 5

**Deutsche Bank**

**Deutsche Banc Alex. Brown**

Statement of Account
November 1 to November 30, 2000
Account 223-78578

Page 2 of 5

## Cash Summary

Opening Cash Balance      $0.00

### Income Summary

| | This period | Year to date |
|---|---|---|
| Taxable dividends | $0.00 | $0.00 |
| Taxable interest | 0.00 | 0.00 |
| Capital gains distributions received | 0.00 | 0.00 |
| Non-taxable dividends | 0.00 | 0.00 |
| Non-taxable interest | 0.00 | 0.00 |
| Net income received | $0.00 | $0.00 |

### Cash Activity

| | This period | Year to date |
|---|---|---|
| Deposits | $4,770.00 | $4,770.00 |
| Withdrawals | 0.00 | 0.00 |
| U.S. tax withheld | 0.00 | 0.00 |
| Non-resident tax withheld | 0.00 | 0.00 |
| Foreign taxes withheld | 0.00 | 0.00 |
| Interest charges on margin debit | 0.00 | 0.00 |
| Interest charges on unsegregated | 0.00 | 0.00 |
| Net cash activity | $4,770.00 | $4,770.00 |

### Purchases and Sales

| | This period | Year to date |
|---|---|---|
| Total purchases | $4,770.00 - | $4,770.00 - |
| Total sales | 0.00 | 0.00 |
| Other money fund sales | 0.00 | 0.00 |
| Net purchases/sales (incl. money funds) | $4,770.00 - | $4,770.00 - |

### Other Activity

| | This period | Year to date |
|---|---|---|
| Bond redemptions | $0.00 | $0.00 |
| Other activity | 0.00 | 0.00 |
| Net other activity | $0.00 | $0.00 |

Closing Cash Balance      $0.00

## Portfolio Summary

### Activity

| | This period | Year to date |
|---|---|---|
| Previous net account value | $0.00 | $0.00 |
| Net cash activity | 4,770.00 | 4,770.00 |
| Net securities into/out of account | 0.00 | 0.00 |
| Adjusted previous account value | $4,770.00 | $4,770.00 |
| Net change in market value | 0.00 | 0.00 |
| Net income received | 0.00 | 0.00 |
| Net account value as of November 30, 2000 | $4,770.00 | $4,770.00 |
| Net return on portfolio | 0.00 | 0.00 |

## Portfolio Holdings

Prices are provided by an independent pricing service. For current market price quotations, call your Investment Representative.

### Cash and Equivalents

| | Amount | Estimated annual income | Current annual yield |
|---|---|---|---|
| DEUTSCHE BANC ALEX. BROWN CASH RESERVE FUND, INC.- PRIME SERIES | $4,770.00 | $289.53 | 6.07% |
| Total cash and equivalents | $4,770.00 | $289.53 | |

### Common Stocks

| | Symbol | Quantity | Current share price | Current market value | Estimated annual income | Estimated dividend yield |
|---|---|---|---|---|---|---|
| 1 LONG CALL FX OPTION EUR/GBP STRIKE .6132 PREM 1181500 DTD 11/27/00 EXP 12/15/00 | | 1 | Not Priced | Not Priced | | |
| 1 SHORT CALL FX OPTION EUR/GBP STRIKE .6133 PREM 1166220 DTD 11/27/00 EXP 12/15/00 | | 1 - | Not Priced | Not Priced | | |
| Total common stocks | | | | $0.00 | | |

## Portfolio Activity

### Purchases and Sales

| | Settlement date | Activity | Type | Quantity | Description | Unit price | Amount |
|---|---|---|---|---|---|---|---|
| S | 11/27/2000 | Purchased | Sweep | 4,770 | DEUTSCHE BANC ALEX. BROWN CASH RESERVE FUND, INC.- PRIME SERIES | $1 | $4,770.00 |
| | Net purchases and sales | | | | | | $4,770.00 |

### Deposits

#### Other Deposits

| | Date posted | Description | Amount |
|---|---|---|---|
| 1 | 11/24/2000 | FUNDS RECEIVED | $4,770.00 |
| | Total other deposits | | $4,770.00 |


**Deutsche Bank**

Statement of Account
November 1 to November 30, 2000
Account 212-78578

Page 3 of 5

**Deutsche Banc Alex. Brown**

Statement of Account
November 1 to November 30, 2000
Account 223-78578

Page 4 of 5

## Portfolio Activity   continued

### Other Activity in Your Account

| | Settlement date | Activity | Quantity | Description | Amount |
|---|---|---|---|---|---|
| 1 | 11/30/2000 | Journal | 1 | LONG CALL FX OPTION EUR/GBP<br>STRIKE .5158 PREM 310220<br>DTD 11/27/00 EXP 12/15/00<br>SEE DB CONFIRM | |
| 1 | 11/30/2000 | Journal | 1 - | SHORT CALL FX OPTION EUR/GBP<br>STRIKE .5157 PREM 314520<br>DTD 11/27/00 EXP 12/15/00<br>SEE DB CONFIRM | |

## Market Indices

### Equities

| | Current | December 31, 1999 | Change year to date |
|---|---|---|---|
| Dow Jones Industrial Average | 10,414.49 | 11,497.12 | 9.4% - |
| NASDAQ Composite | 2,597.93 | 4,069.31 | 36.2% - |
| S&P 500 | 1,314.95 | 1,469.25 | 10.5% - |
| MSCI EAFE | 1,442.96 | 1,760.04 | 18.0% - |

### Fixed Income Securities

| | Current | December 31, 1999 |
|---|---|---|
| Long term treasury bond yield | 5.63% | 6.46% |
| Lehman Brothers Intermediate US Credit Index | 7.36% | 0.16% |

## Disclosure

Please advise us promptly of any material change in your investment or financial situation.

Your account is with DB Alex. Brown LLC, a registered broker-dealer, referred to herein as Deutsche Banc Alex. Brown. The reporting period for your statement ends on the last day of the month. The dates indicated on purchases and sales are settlement dates. Margin interest charges incurred after the period indicated on this statement will be shown on the next statement. In order to review margin interest charges, you should retain this statement for use in conjunction with the next statement.

Any free credit balances represent funds payable on demand which, although properly accounted for on our books and records, are not segregated and may be used in the conduct of the Firm's business, without payment to you subject to the limitations of 17 CFR Section 240.15c3-3 under the Securities Exchange Act of 1934.

Positions and activity shown on your margin account comprise a combined statement of your margin account and your special memorandum account. The special memorandum account is maintained for you in accordance with Regulation T of the Board of Governors of the Federal Reserve System and is comprised of funds generated by your margin activity and segregated for your future use. A permanent detailed record of the activity in this account is available for inspection at your request. We reserve the right to establish or modify requirements pertaining to the operation of a margin account which may exceed requirements established by the Federal Reserve Board and/or the New York Stock Exchange.

Aggregate commissions which you have paid are not reported separately on this statement of account.

Commissions and charges incurred in connection with the execution of option and other transactions have been included in confirmations of these transactions previously furnished you. A summary of this information will be made available to you upon request.

Orders for your account may be aggregated with other customer orders. In so doing, you may receive an average price for your orders which may be different from the price(s) you may have received had your orders not been aggregated. This practice may also result in your orders being only partially completed.

A financial statement on this Firm is available for your personal inspection at our offices, or a copy will be mailed upon your written request.

Information regarding market price, market value, estimated income, dividends and annual yields is based on data obtained from sources we consider to be reliable but is not guaranteed as to accuracy. This information is provided as a convenience to aid in your financial recordkeeping.

Deutsche Banc Alex. Brown money fund yield figures are based on the seven-day period preceding the statement date. Flag Investors Funds estimated yield and income figures are computed based on either dividends for the preceding twelve-month period or the annualized rate of distribution.

Account information may have been provided regarding both publicly traded limited partnerships and certain other limited partnerships purchased through the Firm. The "market value" amount listed for these other limited partnerships does not necessarily reflect current market value but rather is based upon the information we obtain from sources outside the Firm but whose accuracy we cannot confirm.

We receive payment for routing for execution some orders in certain listed securities. The determination as to where to route orders is based on several factors, subject to the overriding consideration that customers receive best execution. All orders for which we receive payment are exposed to the possibility of price improvement, so that all such orders potentially can be executed at prices superior to the best bid or best offer. Payment is received in the form of rebates, or credits against exchange fees and specialist fees. Details will be furnished upon written request.

DB Alex. Brown LLC debits $50 from each account transferring to another broker-dealer or financial institution to cover the administrative costs of such transfer.

NASD Regulation, Inc. makes available to investors a brochure regarding its Public Disclosure Program. The Public Disclosure hotline number is (800) 289-9999. The NASD Regulation website can be located at www.nasdr.com.

DB Alex. Brown LLC. Member SIPC.

* The current portfolio value excludes unpriced securities.

** Denotes a mutual fund.

*** Denotes a foreign security.

## Money Market Fund 7 Day Average Yields:

| | |
|---|---|
| DB ALEX. BROWN CASH RESERVE PRIME | 6.07% |
| DB ALEX. BROWN CASH RESERVE TREASURY | 5.84% |
| DB ALEX. BROWN CASH RESERVE TAX FREE | 3.52% |

## Your Standing Instructions are:

Purchases: Hold securities in street name
Sales: Credit proceeds to account
Income: Hold in account

End of Statement

# EXHIBIT 12

**Deutsche Banc Alex. Brown**
**Client Statement**

DB ALEX. BROWN LLC
P.O. BOX 1776
BALTIMORE MD 21203

CLENDENING/BRUBAKER
INVESTMENT REP #.09
200 CRESCENT COURT  SUITE500
DALLAS TX 75201-6959
(214) 740-7700  (800) 527-3903

V3 INVESTMENTS LLC
C/O BILL. P TSOURAPAS
1301 WEST 22ND ST STE 615
OAKBROOK IL 60523

## Portfolio Overview

### Assets

| | Value as of November 30, 2000 | % of total assets |
|---|---|---|
| Cash | 20.00 | 0.0% |
| Money funds | 4,770.00 | 100.0 |
| Common stocks | 0.00 | 0.0 |
| Preferred stocks | 0.00 | 0.0 |
| Mutual funds | 0.00 | 0.0 |
| Government debt issues | 0.00 | 0.0 |
| Corporate debt issues | 0.00 | 0.0 |
| Municipal debt issues | 0.00 | 0.0 |
| Certificates of deposit | 0.00 | 0.0 |
| Options | 0.00 | 0.0 |
| Limited partnerships | 0.00 | 0.0 |
| Annuities | 0.00 | 0.0 |
| Other | 0.00 | 0.0 |
| **Total assets** | **$4,770.00** | **100.0%** |

### Liabilities

| | Value as of November 30, 2000 | % of total assets |
|---|---|---|
| Cash debit | $0.00 | 0.0% |
| Margin debit | 0.00 | 0.0 |
| Short options | 0.00 | 0.0 |
| Other short securities | 0.00 | 0.0 |
| **Total liabilities** | **$0.00** | **0.0%** |

**Net Value of Your Account**  $4,770.00

**Net Value as of December 31, 1999**  $0.00

### Activity

| | This period |
|---|---|
| Net value of your account as of October 31 | $0.00 |
| Net cash activity | 4,770.00 |
| Net securities inflow of account | 0.00 |
| Net return on your portfolio | 0.00 |
| Net value of your account as of November 30 | $4,770.00 |

### Income

| | This period | Year to date |
|---|---|---|
| Net income received | $0.00 | $0.00 |
| Current estimated annual income | $290.53 | |
| Current estimated annual yield | 6.07% | |



Statement of Account
November 1 to November 30, 2000
Account 223-78579

Page 1 of 5

**Deutsche Banc Alex. Brown**

Statement of Account
November 1 to November 30, 2000
Account 223-78379

Page 2 of 5

## Cash Summary

Opening Cash Balance                          $0.00

### Income Summary

| | This period | Year to date |
|---|---|---|
| Taxable dividends | $0.00 | $0.00 |
| Taxable interest | 0.00 | 0.00 |
| Capital gains distributions received | 0.00 | 0.00 |
| Non-taxable dividends | 0.00 | 0.00 |
| Non-taxable interest | 0.00 | 0.00 |
| Net income received | $0.00 | $0.00 |

### Cash Activity

| | This period | Year to date |
|---|---|---|
| Deposits | $4,770.00 | $4,770.00 |
| Withdrawals | 0.00 | 0.00 |
| U.S. res. withheld | 0.00 | 0.00 |
| Non-resident tax withheld | 0.00 | 0.00 |
| Foreign taxes withheld | 0.00 | 0.00 |
| Interest charges on a cash debit | 0.00 | 0.00 |
| Interest charges on a margin debit | 0.00 | 0.00 |
| Net cash activity | $4,770.00 | $4,770.00 |

### Purchases and Sales

| | This period | Year to date |
|---|---|---|
| Total purchases | $4,770.00 - | $4,770.00 - |
| Total sales | 0.00 | 0.00 |
| Other money fund sales | 0.00 | 0.00 |
| Net purchases/sales (incl. money funds) | $4,770.00 - | $4,770.00 - |

### Other Activity

| | This period | Year to date |
|---|---|---|
| Bond redemptions | $0.00 | $0.00 |
| Other activity | 0.00 | 0.00 |
| Net other activity | $0.00 | $0.00 |

Closing Cash Balance                          $0.00

## Portfolio Summary

### Activity

| | This period | Year to date |
|---|---|---|
| Previous net account value | $0.00 | $0.00 |
| Net cash activity | 4,770.00 | 4,770.00 |
| Net securities into/out of account | 0.00 | 0.00 |
| Adjusted previous account value | $4,770.00 | $4,770.00 |
| Net change in market value | 0.00 | 0.00 |
| Net income received | 0.00 | 0.00 |
| Net account value as of November 30, 2000 | $4,770.00 | $4,770.00 |
| Net return on portfolio | 0.00 | 0.00 |

## Portfolio Holdings

Prices are provided by an independent pricing service. For current market price quotations, call your Investment Representative.

### Cash and Equivalents

| | Amount | Estimated annual income | Current annual yield |
|---|---|---|---|
| DEUTSCHE BANC ALEX. BROWN CASH RESERVE FUND, INC.- PRIME SERIES | $4,770.00 | $289.53 | 6.07% |
| Total cash and equivalents | $4,770.00 | $289.53 | |

### Common Stocks

| | Symbol | Quantity | Current share price | Current market value | Estimated annual income | Estimated dividend yield |
|---|---|---|---|---|---|---|
| 1 | LONG CALL FX OPTION EUR/GBP STRIKE .6339 PREM 318000 DTD 11/27/00 EXP 12/15/00 | | 1 | Not Priced | Not Priced | |
| 1 | SHORT CALL FX OPTION EUR/GBP STRIKE .6157 PREM 314820 DTD 11/27/00 EXP 12/15/00 | | 1 - | Not Priced | Not Priced | |
| | Total common stocks | | | | $0.00 | |

## Portfolio Activity

### Purchases and Sales

| | Settlement date | Activity | Type | Quantity | Description | Unit price | Amount |
|---|---|---|---|---|---|---|---|
| S | 11/27/2000 | Purchased | Sweep | 4,770 | DEUTSCHE BANC ALEX. BROWN CASH RESERVE FUND, INC.- PRIME SERIES | $1 | $4,770.00 - |
| | Net purchases and sales | | | | | | $4,770.00 - |

### Deposits

#### Other Deposits

| | Date posted | Description | Amount |
|---|---|---|---|
| 1 | 11/24/2000 | FUNDS RECEIVED | $4,770.00 |
| | Total other deposits | | $4,770.00 |



**Deutsche Bank**

**Deutsche Banc Alex. Brown**

Statement of Account
November 1 to November 30, 2000
Account 223-78579

Page 4 of 5

## Portfolio Activity continued

### Other Activity in Your Account

| | Settlement date | Activity | Quantity | Description | Amount |
|---|---|---|---|---|---|
| 1 | 11/30/2000 | Journal | 1 | LONG CALL FX OPTION EUR/GBP<br>STRIKE .6155 PREM 318000<br>DTD 11/17/00 EXP 12/15/00<br>SEE DB CONFIRM | |
| 1 | 11/30/2000 | Journal | 1 - | SHORT CALL FX OPTION EUR/GBP<br>STRIKE .6157 PREM4314620<br>DTD 11/17/00 EXP 12/15/00<br>SEE DB CONFIRM | |

## Market Indices

### Equities

| | Current | December 31, 1999 | Change year to date |
|---|---|---|---|
| Dow Jones Industrial Average | 10,414.49 | 11,497.12 | 9.4% - |
| NASDAQ Composite | 2,597.98 | 4,069.31 | 36.2% - |
| S&P 500 | 1,314.95 | 1,469.25 | 10.5% - |
| MSCI EAFE | 1,442.76 | 1,769.04 | 18.0% - |

### Fixed Income Securities

| | Current | December 31, 1999 |
|---|---|---|
| Long term treasury bond yield | 5.62% | 6.48% |
| Lehman Brothers Intermediate US Credit Index | 7.26% | 0.16% |

## Disclosure

Please advise us promptly of any material change in your investment or financial situation.

Your account is with DB Alex. Brown LLC, a registered broker-dealer, is listed on Invest our Deutsche Bank Alex. Brown. The reporting period covered by this statement is indicated on the first page of this statement...

*[remainder of fine print illegible]*

## Money Market Fund 7 Day Average Yields:

| | |
|---|---|
| DB ALEX. BROWN CASH RESERVE PRIME | 6.07% |
| DB ALEX. BROWN CASH RESERVE TREASURY | 5.84% |
| DB ALEX. BROWN CASH RESERVE TAX FREE | 3.52% |

## Your Standing Instructions are:

Purchases: Hold securities in street name
Sales: Credit proceeds to account
Income: Hold in account

End of Statement



**Deutsche Bank**

Statement of Account
November 1 to November 30, 2000
Account 223-78579