**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **KOSTANTINOS VADEVOULIS, JIM VADEVOULIS, AND PAUL VADEVOULIS,**<br><br>Plaintiffs,<br><br>v.<br><br>**DEUTSCHE BANK AG; DEUTSCHE BANK SECURITIES, INC., d/b/a DEUTSCHE BANK ALEX. BROWN, AND AMERICAN EXPRESS TAX AND BUSINESS SERVICES, INC., n/k/a RSM MCGLADREY LLC**<br><br>Defendants. | No. 08-C-1251 (LEFKOW) |

**MEMORANDUM OF LAW OF DEFENDANT RSM
McGLADREY, INC. (f/k/a AMERICAN EXPRESS TAX AND
BUSINESS SERVICES INC. IN SUPPORT OF MOTION TO
DISMISS AMENDED COMPLAINT PURSUANT TO
FED.R.CIV.P. 12(b)(6) OR, ALTERNATIVELY, TO COMPEL
ARBITRATION AND FOR A STAY**

# TABLE OF CONTENTS

Preliminary Statement ...................................................................................................... 1

STATEMENT OF FACTS ................................................................................................ 2

    Procedural Summary ...................................................................................................... 2

    The Allegations of the Amended Complaint ................................................................ 3

    The Arbitration Agreement ............................................................................................ 5

ARGUMENT .................................................................................................................... 6

I. PLAINTIFFS' CLAIMS MUST BE DISMISSED AS TIME-BARRED PURSUANT TO 735
    ILCS 5/13-205 ............................................................................................................ 6

II. PLAINTIFFS' CLAIMS, IN ANY EVENT, ARE SUBJECT TO DISMISSAL UNDER
    RULE 12(b)(6) FOR FAILURE TO STATE A CLAIM ............................................ 10

    A.    The Fraud-Based Claims Are Legally Insufficient ....................................... 10

    B.    Plaintiffs Fail to Allege a Negligent Misrepresentation Claim ...................... 14

    C.    Plaintiffs Fail to Set Forth a Claim For Breach of Fiduciary Duty ................ 14

    D.    The Claim for Assisting in Breach of Fiduciary Duty Should Be Dismissed .............. 17

    E.    Plaintiffs Fail to Plead a Breach of Contract Claim ...................................... 17

    F.    The Civil Conspiracy Claim Fails Because Plaintiffs' Other Tort Claims Fail ........... 18

III. ALTERNATIVELY, PLAINTIFFS SHOULD BE COMPELLED TO ARBITRATE THEIR
    CLAIMS AGAINST TBS AND THIS ACTION SHOULD BE STAYED PENDING
    ARBITRATION ......................................................................................................... 19

CONCLUSION ................................................................................................................. 23

# TABLE OF AUTHORITIES

Cases                                                                                    Page(s)

*Bannon v. Edgewater Med. Ctr.*,
    406 F. Supp.2d 907 (N.D. Ill. 2005) ........................................................................ 8

*Borsellino v. Goldman Sachs Group, Inc.*,
    477 F.3d 502 (7th Cir. 2007) .................................................................................. 14

*Brown v. New York Life Ins. Co.*,
    2008 WL 151390, *2 (N.D. Ill. Jan. 15, 2008) ...................................................... 6, 7

*Browning v. Eckland Consultants, Inc.*,
    2004 WL 2687961, *4 (1st Dist. August 13, 2004) .................................................. 17

*Camferdam v. Ernst & Young Int'l, Inc.*,
    2004 U.S. Dist. LEXIS 2284 *20-21 (S.D.N.Y. Feb. 13, 2004) ................................ 22

*Continental Assur. Co. v. Geothermal Resources Intern. Inc.*,
    1991 WL 202378, *5 (N.D. Ill. Sept. 30, 1991) ....................................................... 7

*Dancor Intern. Ltd. v. Friedman, Goldberg & Mintz*,
    288 Ill. App.3d 666, 681 N.E.2d 617 (1997) ........................................................... 7

*Deluxe Media Services, LLC v. Direct Disc Network, Inc.*,
    2007 WL 707544, *4 (N.D. Ill. March 2, 2007) ..................................................... 10

*Eastern Trading Co. v. Refco, Inc.*,
    229 F.3d 617 (7th Cir. 2000) ................................................................................ 17

*Gidarisingh v. McCaughtry*,
    2007 WL 1121374, *1 (E.D. Wis. April 13, 2007) ................................................... 8

*Goren v. New Vision Int'l.*, Inc.,
    156 F.3d 721 (7th Cir. 1998) ........................................................................... 13, 16

*Grimes v. Navigant Consulting, Inc.*,
    185 F. Supp.2d 906 (N.D. Ill. 2002) ....................................................................... 8

*Hansen v. KPMG, LLP*,
    2005 U.S. Dist. LEXIS 38137, *10-11 (C.D. Cal. March 29, 2005) ........................... 22

*Hathaway v. R.R. Donnelley Mendota, Inc.*,
    2002 WL 31875465, *3 (N.D. Ill. Dec. 24, 2002) ..................................................... 6

*Henson v. CSC Credit Services*,
    29 F.3d 280 (7th Cir. 1994) .................................................................................... 8

i

*Hoffman v. Deloitte & Touche, LLP,*
    143 F. Supp.2d 995 (N.D. Ill. 2001) ........................................................................ 20

*Hutton v. Deutsche Bank AG et al.,*
    2008 WL 795746, *3-5 (D. Kan. March 24, 2008) .................................................. 8

*In re Soybean Futures Litigation,*
    892 F.Supp. 1025 (N.D. Ill. 1995) .......................................................................... 10

*Indeck North America Power Fund v. Norweb PLC,*
    316 Ill.App.3d 416, 735 N.E.2d 649 (1st Dist. 2000) ............................................. 18

*Industrial Hard Chrome Ltd. v. Hetran, Inc.,*
    64 F.Supp.2d 741 (N.D. Ill. 1999) .......................................................................... 18

*Jackson Jordan, Inc. v. Leydig, Voit & Mayer,*
    158 Ill.2d 240, 633 N.E.2d 627 (1994) .................................................................... 7

*Johnston v. Arrow Financial Services,*
    2006 U.S. Dist. LEXIS 70814, *14-16 (N.D. Ill. Sept. 15, 2006) ......................... 22

*Klamath Strategic Inv. Fund v. United States,*
    440 F.Supp.2d 608 (E.D. Tex. 2006) ........................................................................ 9

*Knox College v. Celotex Corp.,*
    88 Ill.2d 407, 416, 430 N.E.2d 976 (1981) ........................................................... 7, 9

*Kopley Group V., L.P. v. Sheridan Edgewater Properties, Ltd.,*
    376 Ill. App.3d 1006, 876 N.E.2d 218 (2007) ..................................................... 7, 14

*Lawrence H. Flynn, Inc. v. Philip Morris USA, Inc.,*
    2006 WL 211823, *7-8 (N.D. Ill. Jan. 19, 2006) ................................................... 18

*Luminall Paints, Inc. v. La Salle Nat'l Bank,*
    220 Ill. App.3d 796, 581 N.E.2d 191 (1st Dist. 1991) ............................................. 7

*Martusciello v. JDS Homes, Inc.,*
    361 Ill.App.3d 568, 838 N.E.2d 9 (1st Dist. 2005) ................................................ 18

*Marx v. Northwestern Memorial Hosp.,*
    2007 WL 1280643, *5 (N.D. Ill. April 30, 2007) .................................................... 7

*McDermott, Will & Emery v. Ogle,*
    2001 WL 1465696, * (N.D. Ill. Nov. 15, 2001) ..................................................... 17

*McDonald v. Brown,*
    2004 WL 2106604, *1 (N.D. Ill. Sept. 20, 2004) .................................................. 10

NYC:180210.1

*Peterson v. H&R Block Tax Services, Inc.*,
   971 F. Supp. 1204 (N.D. Ill. 1997) ............................................................... 15

*Prime Leasing, Inc. v. Kendig*,
   332 Ill. App.3d 100, 312, 773 N.E.2d 84 (1st Dist. 2002).................................. 11

*Rosen v. Mystery Method, Inc.*,
   2008 WL 723331, *2 (N.D. Ill. March 14, 2008) .......................................... 13

*Ryan v. Wersi Electronic GmbH & Co.*,
   1994 WL 282323, *1 (N.D. Ill. June 22, 1994) .............................................. 11

*Seglin v. Esau*,
   769 F.2d 1274 (7th Cir. 1985) ....................................................................... 10

*Service Auto Parts, Inc. v. Benjamin & Birkenstein, P.C.*,
   2004 WL 2359233, *1 (N.D. Ill. Oct, 19, 2004)............................................... 16

*Sutliff Inc. v. Donovan Companies, Inc.*,
   727 F.2d 648, (7th Cir. 1984) ....................................................................... 10

*Sutton v. Mytich*,
   197 Ill. App.3d 672, 555 N.E.2d 93, 96 (3d Dist. 1990) .................................... 7

*Tayebi v. KPMG LLP*,
   Index No. 105471/2007, slip op. at 14 (Sup. Ct. N.Y. Co. Feb. 20, 2008)............ 8

*Tello v. Dean Witter Reynolds, Inc.*,
   494 F.3d 956 (7th Cir. 2007) ......................................................................... 8

*Terrell v. Childers*,
   920 F. Supp. 854 (N.D. Ill. 1996) .................................................................. 15

*Whirlpool Financial Corp. v. GN Holdings, Inc.*,
   67 F.3d 605 (7th Cir. 1995) ............................................................................ 8

*Wilson v. Deutsche Bank AG*,
   2006 U.S. Dist. LEXIS 94847, *11 (N.D. Ill. March 20, 2006)........................... 22

*Wright v. Associated Ins. Co.*,
   29 F.3d 1244 (7th Cir. 1994) .......................................................................... 8

*Vicom, Inc. v. Harbridge Merchant Services, Inc.*,
   20 F.3d 771 (7th Cir. 1994) .......................................................................... 13

*Vulcan Golf, LLC v. Google Inc., 2008 WL 818346, * (N.D. Ill. March 20, 2008)* ..................... 14

iii

Statutes

73 ILCS 5/13-205 .......................................................................................................... 6

73 ILCS 5/13-206 .......................................................................................................... 7

815 ILCS 505/10a(e).......................................................................................................... 7

Federal Arbitration Act (9 U.S.C. §3)........................................................................................ 1

Federal Rules of Civil Procedure §9(b) ............................................................................. 1, 13, 14

Federal Rules of Civil Procedure §12(b)(6)........................................................................ 1, 2, 6, 8

Illinois Consumer Fraud and Deceptive Business Practices Act ............................................. 1, 10

Authorities

5C Wright and Miller, *Federal Practice and Procedure*, §1364.................................................... 8

Defendant RSM McGladrey, Inc. (f/k/a American Express Tax and Business Services Inc.) ("TBS") submits this Memorandum of Law in support of its motion pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss the Amended Complaint, or, alternatively, to compel arbitration and, pursuant to Section 3 of the Federal Arbitration Act (9 U.S.C. §3), stay this action pending arbitration of Plaintiffs' claims.

### Preliminary Statement

Plaintiffs' common law claims for fraud, negligent misrepresentation, breach of fiduciary duty, assisting in breach of fiduciary duty, breach of contract, accounting malpractice and civil conspiracy are time-barred under the five-year limitations period set forth in 735 ILCS 5/13-205.  Their statutory claim under the Illinois Consumer Fraud and Deceptive Business Practices Act , moreover, is untimely under the three-year limitations period set forth in 815 ILCS 505/10a(e).  In addition, Plaintiffs' claims are subject to dismissal for failure to state a claim.  The fraud-based and negligent misrepresentation claims fail to set forth any misrepresentation by TBS, or reliance on any statement by TBS in connection with Plaintiffs' participation in what Plaintiffs refer to as the "Son of BOSS" strategy that caused Plaintiffs' alleged injuries.  Further, the fraud claims lack the particularity required under Fed. R. Civ. P. 9(b).  Plaintiffs' breach of fiduciary duty claim fails for lack of any fiduciary relationship between Plaintiffs and TBS.  Further, because Jenkens & Gilchrist ('Jenkens") is not a party and Plaintiffs assert no claim against Jenkens, Plaintiffs can assert no claim against TBS for assisting in Jenkens' breach of fiduciary duty.  The breach of contract claim, which contains no factual detail, fails to set forth the essential elements of such a claim.  Finally, because their tort claims are subject to dismissal, Plaintiffs cannot maintain their claim for civil conspiracy, which is not an independent tort.

Alternatively, should the Court determine not to dismiss the action, TBS is entitled to compel Plaintiffs to arbitrate their claims against it pursuant to the written arbitration agreements contained in account agreements they entered into with Deutsche Bank Securities, Inc. (the "DB Agreements"). Under principles of agency and equitable estoppel, TBS can enforce the arbitration provisions of the DB Agreements against Plaintiffs, who have alleged a conspiracy among all Defendants arising out of, among other things, the investment advisory services provided by the DB Defendants and the tax-related services of TBS. Pursuant to Section 3 of the Federal Arbitration Act, moreover, the Court should issue a mandatory stay of this action pending arbitration of Plaintiffs' claims.[1]

## STATEMENT OF FACTS

### Procedural Summary

Plaintiffs commenced this action on or about February 29, 2008. On or about May 14, 2008, TBS and the DB Defendants filed motions pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the original Complaint. TBS argued that Plaintiffs' common law claims were barred by the five-year limitations period set forth in 735 ILCS 5/13-205, and their statutory claim by the three-year limitations period contained in 815 ILCS 505/10a(e). TBS further contended that Plaintiffs had failed to state any claim upon which relief could be granted. In its motion, TBS expressly reserved its right to move to compel arbitration of Plaintiffs' claims in the event the Court denied TBS's motion to dismiss. (Memorandum of Law in Support of TBS's Motion at 6, n.1) On July 22, 2008, while the motions to dismiss were pending and, before responding to them, Plaintiffs filed an Amended Complaint (the "Am. Compl."). Plaintiffs' new allegations in the Amended Complaint do not change the fact that Plaintiffs' claims are time-barred and that

---

[1]    TBS joins in the Motion by Defendants Deutsche Bank AG, Deutsche Bank Securities, Inc., d/b/a Deutsche Bank Alex. Brown (the "DB Defendants"), filed on August 13, 2008, to stay this action pending arbitration of Plaintiffs' claims pursuant to the arbitration agreements contained in the DB Agreements (the "DB Motion").

Plaintiffs' have failed to state a claim upon which relief can be granted. TBS, accordingly, moves again pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the Amended Complaint.

**The Allegations of the Amended Complaint**

Plaintiffs, three individuals, allege that, in 2000, anticipating "large capital gains" from the sale of their business, they requested "tax planning advice" from Jenkens, to which they had been referred by their financial advisor William Tsourapas, who is not named as a party in this action.[2] (Am. Compl., ¶¶30, 78-80) According to Plaintiffs, Jenkens recommended a tax strategy known as Son of BOSS, which it represented "was a valid and legitimate means of minimizing taxes with respect to the Vadevoulises' capital gains." (*Id.*, ¶81) Plaintiffs assert that "Jenkens recommended the formation of a number of entities in order for the Vadevoulises to effectuate the tax strategy" and "orchestrated the formation of those entities." (*Id.*, ¶84) Plaintiffs set forth in detail the steps involved in the strategy recommended by Jenkens. (*Id.*, ¶¶85-90)

In Plaintiffs' words, "Son of BOSS was actually created and designed, and would be implemented by Jenkens," and "Jenkens was principally responsible for developing and selling Son of Boss." (*Id.*, ¶68) Plaintiffs further allege that the DB Defendants, which had been involved with Jenkens in developing and marketing Son of Boss and similar strategies, provided necessary "banking and trading services." (*Id.*, ¶¶51, 53, 70) They assert that Jenkens and DB "marketed these shelters to hundreds of people, including the Vadevoulises" and that DB "sent or caused to be sent many of the account agreements, option transaction confirmations, and account statements necessary to set up and implement the Son of BOSS transaction in which plaintiffs participated." (*Id.*, ¶54) Plaintiffs allege that they participated in Son of Boss

---

[2]     Plaintiffs allege that Tsourapas, "as a result of the Vadevoulises participation in Son of BOSS," received from Jenkens "secret, undisclosed referral fees," including a payment in 2001 of $137,687.80. (Am. Compl., ¶80)

transactions involving digital options in the belief that Son of Boss was a legitimate tax minimization strategy, a conclusion Jenkens confirmed in legal opinion letters. (*Id.*, ¶¶38-46, 68)

According to Plaintiffs, "Jenkens arranged for [TBS] to prepare the Vadevoulises 2000 tax returns." (Am. Compl., ¶16) They assert that certain TBS employees represented to them that they would "prepare tax returns in accordance with Jenkens' proposed Son of BOSS treatment." (*Id.*, ¶56) Plaintiffs assert that TBS prepared Plaintiffs' tax returns for 2000, which were filed on April 16, 2001, that reflected the Son of Boss strategy. (*Id.*, ¶¶6, 91, 94) Plaintiffs further allege that they paid fees to Jenkens and Defendants in connection with Plaintiffs' tax strategy in the following amounts: Jenkens, $1,346,878; Deutsche Bank, $300,000 and TBS, $60,000. (*Id.*, ¶¶109, 110) According to Plaintiffs, Defendants and Jenkens developed a "fee-sharing arrangement" that was undisclosed to Plaintiffs throughout the transactions. (*Id.*, ¶¶5, 75) They also assert that Tsourapas received a "secret" referral fee from Jenkens in the amount of $137,687.80 for his referral of Plaintiffs to Jenkens. (*Id.*, ¶80)

According to Plaintiffs, the Internal Revenue Service ("IRS") invalidated Son of Boss and, in "early 2004," notified Plaintiffs that "there may be a problem with respect to their tax strategies." (Am. Compl., ¶¶98, 99) Plaintiffs assert that the IRS, in Notice 2004-46, issued on or about May 5, 2004, offered to settle the audits of Son of Boss participants on the following terms: payment of all taxes avoided by the strategy, all interest due and a 10% penalty and an allowed loss deduction of 50% of fees and other "out-of-pocket" costs. (*Id.*, ¶100) Plaintiffs allege that they participated in that settlement initiative and paid the IRS and Illinois state taxing authorities millions of dollars in taxes, interest and penalties. (*Id.*, ¶¶8, 101, 111)

4

Plaintiffs assert that Defendants knew that the Son of Boss strategy "would not withstand an audit by the IRS" because of "the well-established legal doctrine disallowing the recognition of losses from transactions that lacked 'economic substance.'" (Am. Compl., ¶8) They further allege that, as of the date their tax returns were filed, the IRS had issued two notices, 99-59 and 2000-44, expressing its view that losses from transactions lacking "economic substance" would be disallowed. (*Id.*, ¶¶8, 94) According to Plaintiffs, in June 2003, the IRS "formalized" its position, invalidating tax strategies that included Son of Boss. (*Id.*, ¶98) Plaintiffs assert that Defendants never advised them that the Son of Boss strategy was invalid or that the IRS, in December 2001, announced a "tax amnesty program," Announcement 2002-2, allowing taxpayers who voluntarily disclosed their involvement in tax shelter strategies such as Son of Boss to avoid liability for penalties for underpayment of taxes without conceding liability for taxes or interest. (*Id.*, ¶95)

Plaintiffs assert eight claims, for civil conspiracy (Count I); common law fraud (Count II); negligent misrepresentation (Count III); violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (the "Act") (Count IV); breach of fiduciary duty (against TBS only) (Count V); assisting in the breach of fiduciary duty (Count VI); breach of contract (against TBS only) (Count VII); and accounting malpractice (against TBS only) (Count VIII). In addition to compensatory damages in an unspecified amount, Plaintiffs seek, except in connection with the breach of contract claim, punitive damages and, in connection with the Illinois statutory claim, costs and attorneys' fees.

## The Arbitration Agreement

To implement the tax strategy at issue in this action, Plaintiffs allegedly formed entities and opened accounts with Deutsche Bank Securities, Inc. in the names of those entities.

(Am. Compl., ¶¶70, 84-90, 126).[3]  They entered into Account Agreements with Deutsche Bank

Securities, Inc. (the "DB Agreements"), which contain the following arbitration provision:

> I agree to arbitrate with you any controversies which may arise,
> whether or not based on events occurring prior to the date of this
> agreement, including any controversy arising out of or relating to
> any account with you, to the construction, performance or breach
> of any agreement with you, or to transactions with or through you,
> only before the New York Stock Exchange or the National
> Association of Securities Dealers Regulation, Inc., at my election.

(DB Motion Exhs. 1-8, ¶20)

It further states, in part: "I understand that: (1) Arbitration is final and binding on

the parties.  (2)  The parties are waiving their right to seek remedies in court, including the right

to jury trial." (*Id.*)

## ARGUMENT

### I.

### PLAINTIFFS' CLAIMS MUST BE DISMISSED AS TIME-BARRED PURSUANT TO 735 ILCS 5/13-205

Where the allegations in a complaint demonstrate that the claims asserted are

barred by the statute of limitations, dismissal pursuant to Rule 12(b)(6) is appropriate.  *E.g.,*

*Hathaway v. R.R. Donnelley Mendota, Inc.*, 2002 WL 31875465, *3 (N.D. Ill. Dec. 24, 2002).

Illinois law provides a five-year statute of limitations for "actions on unwritten

contracts, …or to recover damages for an injury done to property, real or personal…and all civil

actions not otherwise provided for."  735 ILCS 5/13-205.  It applies to each of Plaintiffs'

common law claims.  *See Brown v. New York Life Ins. Co.*, 2008 WL 151390, *2 (N.D. Ill. Jan.

15, 2008) (section 13-205 applies to claims for fraud, negligent misrepresentation and breach of

---

[3]     The Account Agreements are annexed to the DB Motion as Exhibits 1-8.

oral contracts)[4]; *Luminall Paints, Inc. v. La Salle Nat'l Bank*, 220 Ill. App.3d 796, 803, 581

N.E.2d 191, 195 (1st Dist. 1991) (section 13-205 applies to claims for breach of fiduciary duty);

*Sutton v. Mytich*, 197 Ill. App.3d 672, 676, 555 N.E.2d 93, 96 (3d Dist. 1990) (section 13-205

applies to professional malpractice claims); *Marx v. Northwestern Memorial Hosp.*, 2007 WL

1280643, *5 (N.D. Ill. April 30, 2007) (section 13-205 applicable to claims for civil conspiracy);

*Continental Assur. Co. v. Geothermal Resources Intern. Inc.*, 1991 WL 202378, *5 (N.D. Ill.

Sept. 30, 1991) (limitations period applicable to aiding and abetting claim is that applicable to

the primary wrong). Plaintiffs' claim for violation of the Act is governed by the three-year

limitations period set forth in 815 ILCS 505/10a(e). *Kopley Group V., L.P. v. Sheridan

Edgewater Properties, Ltd.*, 376 Ill. App.3d 1006, 1021, 876 N.E.2d 218, 231 (2007).

       Under Illinois law, a cause of action accrues, and the statute of limitations begins

to run, when the plaintiff is injured. *Brown*, 2008 WL 151390, *2. However, under the

"discovery rule," an "equitable exception" to the rule that the limitations period begins to run

with the accrual of the cause of action, the limitations period begins when the "injury could have

been discovered through the exercise of appropriate diligence." *Id.*[5]

       In the present case, Plaintiffs' own allegations belie any assertion that they did not

know or have reason to know of their alleged injury after January 14, 2002, when IRS

Announcement 2002-2, specifically referenced in paragraphs 8 and 86 of the Complaint, was

---

[4]     Section 13-205 applies to oral, but not written, contracts, which are governed by a ten-year limitations period. 735 ILCS 5/13-206  In the present case, Plaintiffs, though they make a vague reference to "oral and/or written contracts," (Compl., ¶161) identify no writing on which a ten-year limitations period can be based.

[5]     Under the discovery rule, the limitations period is tolled "until the plaintiff knows or reasonably should know that he has been injured and that his injury was wrongfully caused." *Jackson Jordan, Inc. v. Leydig, Voit & Mayer*, 158 Ill.2d 240, 633 N.E.2d 627, 630-31 (1994). Once the plaintiff knows or should know of his injury, he has the duty to make a diligent inquiry into whether a cause of action lies. *Knox College v. Celotex Corp.*, 88 Ill.2d 407, 416, 430 N.E.2d 976, 980 (1981).  A plaintiff who asserts the discovery rule bears the burden of proving the date of discovery. *Dancor Intern. Ltd. v. Friedman, Goldberg & Mintz*, 288 Ill. App.3d 666, 672-73, 681 N.E.2d 617, 622 (1997).  The discovery rule applies to claims governed by section 13-205, *see Brown*, 2008 WL 151390, *2, and those governed by section 505/10a(e). *See Kopley*, 376 Ill. App.3d at 1021.

published. *See* Announcement 2002-2, 2002-I.R.B. 304, 2002-1 C.B. 304 (December 21, 2001),

annexed hereto as Exhibit A.[6] That Announcement, issued as part of "a series of steps the IRS

and Treasury have been taking to identify and shut down tax shelter activity," was directed to

taxpayers who, like Plaintiffs, had engaged in tax shelter transactions and may, as a result, have

underpaid their taxes and sought to encourage taxpayers to disclose their tax treatment of tax

shelters in exchange for a waiver of accuracy-related penalties.[7]

        Public documents and publicly available information are sufficient to put a

plaintiff on notice and commence the running of the statute of limitations. *See e.g. Tello v. Dean

Witter Reynolds, Inc.*, 494 F.3d 956, 970 (7th Cir. 2007) (noting, in connection with inquiry

notice issue raised by statute of limitations defense, that internet sites could have provided the

plaintiff investor with "a substantial amount of information," including articles about the

defendant's conduct); *Whirlpool Financial Corp. v. GN Holdings, Inc.*, 67 F.3d 605 (7th Cir.

1995) (information available in public domain put reasonable investor on notice of alleged injury

and commenced running of statute of limitations); *Tayebi v. KPMG LLP*, Index No.

105471/2007, slip op. at 14 (Sup. Ct. N.Y. Co. Feb. 20, 2008) (copy annexed as Exhibit C

hereto) (media coverage about problems with tax shelter at issue put plaintiffs on inquiry notice

of their claim). Indeed, Announcement 2002-2 is the very type of public document that allows a

plaintiff to discover his injury. *See e.g. Hutton v. Deutsche Bank AG et al.,* 2008 WL 795746,

---

[6]      A party seeking dismissal under Fed. R. Civ. P. 12(b) may submit certain documents outside the pleadings, including documents referenced in the complaint that are central to the claim, *see, e.g., Wright v. Associated Ins. Co.*, 29 F.3d 1244, 1248 (7th Cir. 1994), court orders, *see Grimes v. Navigant Consulting, Inc.*, 185 F. Supp.2d 906, 913 (N.D. Ill. 2002) and newspaper and magazine articles, *see, e.g., Bannon v. Edgewater Med. Ctr.*, 406 F. Supp.2d 907, 919 (N.D. Ill. 2005); *Gidarisingh v. McCaughtry*, 2007 WL 1121374, *1 (E.D. Wis. April 13, 2007); 5C Wright and Miller, *Federal Practice and Procedure*, §1364, at 133-140. The Court can take judicial notice of such documents without converting the motion to dismiss into one for summary judgment. *Henson v. CSC Credit Services*, 29 F.3d 280, 284 (7th Cir. 1994).

[7]      Announcement 2002-2 had, in addition, already been covered by the national media prior to its formal publication. *See e.g.,* Albert Crenshaw, *Shelter Tips Sought From the Sheltered; No Penalties for Disclosures, IRS Pledges*, WASH. POST, Dec. 22, 2001 at E3; *IRS Targeting Doubtful Tax Shelters*, LOS ANGELES TIMES, Dec. 25, 2001, at 3, attached hereto as Exhibit B.

*3-5 (D. Kan. March 24, 2008) (in tax shelter case similar to the present case, granting motion to dismiss claims as time-barred under Kansas law, in part because Announcement 2002-2 put plaintiffs on notice of their claims "by January 14, 2002 at the latest"). *See also Klamath Strategic Inv. Fund v. United States*, 440 F.Supp.2d 608, 625 (E.D. Tex. 2006) (issuance of IRS Notice put tax shelter plaintiffs on notice of their alleged injury).[8]

In the present case, in an apparent effort to address the statute of limitations argument TBS set forth in its motion to dismiss the original Complaint, Plaintiffs, in the Amended Complaint, have added the bare allegation that "[p]rior to 2004, plaintiffs did not and could not have discovered defendants' wrongful conduct." (Am. Compl., ¶99)  That assertion rests entirely upon Plaintiffs' assertion that they were not "told" about Announcement 2002-2 and therefore "never heard about it."  (*Id.*, ¶96)  Such an allegation is plainly insufficient to invoke the discovery rule.  *See, e.g., Knox College*, 88 Ill.2d at 415-16, 430 N.E.2d at 980 (limitations period is not tolled by the plaintiff's ignorance of the defendant's wrongful conduct or of the existence of a cause of action; if the plaintiff knows or reasonably should know of his injury, he has the duty to make "diligent inquiry" as to "the existence of a cause of action").  Plaintiffs' professed ignorance of Announcement 2002-2 and other public documents that put them on notice of their alleged injury is antithetical to the discovery rule.  Clearly, they failed to exercise appropriate diligence and cannot seek to rely on that failure to assert the discovery rule.

---

[8]    In June 2006, TBS agreed to enter into an agreement to toll any statute of limitations applicable to Plaintiffs' claims for a one-year period.  No agreement, however, was ever executed.  Because Plaintiffs knew or should have known of their injury no later than January 14, 2002, their claims would be untimely even if a one-year tolling period applied, as this action was not commenced until February 29, 2008, more than six years after January 14, 2002.

NYC:180210.1

## II.

## PLAINTIFFS' CLAIMS, IN ANY EVENT, ARE SUBJECT TO DISMISSAL UNDER RULE 12(b)(6) FOR FAILURE TO STATE A CLAIM

Plaintiffs' claims for fraud, violation of the Act, negligent misrepresentation, breach of fiduciary duty, assisting in the breach of fiduciary duty, breach of contract and civil conspiracy are, in addition to being time-barred, subject to dismissal for failure to state a claim. Under the law of the Seventh Circuit, a complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Sutliff Inc. v. Donovan Companies, Inc.*, 727 F.2d 648, 654 (7th Cir. 1984). *See also McDonald v. Brown*, 2004 WL 2106604, *1 (N.D. Ill. Sept. 20, 2004) ("All plaintiffs must include in the complaint allegations concerning all material elements necessary for recovery under the relevant legal theory."). A complaint that fails to contain such necessary allegations is subject to dismissal. *See, e.g., Seglin v. Esau*, 769 F.2d 1274, 1279 (7th Cir. 1985).

### A.    The Fraud-Based Claims Are Legally Insufficient

To state a claim for fraud under Illinois law, a plaintiff must establish the following elements: (1) a misrepresentation of a material fact; (2) knowledge of falsity; (3) intent to induce reliance; (4) justifiable reliance; and (5) resulting damages. *Deluxe Media Services, LLC v. Direct Disc Network, Inc.*, 2007 WL 707544, *4 (N.D. Ill. March 2, 2007) (citations omitted). Reliance, in particular, is a key element of fraud. *In re Soybean Futures Litigation*, 892 F.Supp. 1025, 1059 (N.D. Ill. 1995) (citations omitted). Plaintiffs assert two fraud-based claims (Count II, common law fraud, and Count IV, violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (the "Act")[2], both premised on the same factual allegations.

---

[2]    The elements of a claim under the Act are (1) a deceptive act or practice by defendant; (2) defendant's intent that plaintiff rely on the deception; and (3) that the deception occurred in the course of conduct involving

10

In the present case, Plaintiffs fail, in connection with their fraud-based claims, to set forth allegations as to TBS that establish any of the essential elements of fraud. Plaintiffs' alleged injuries, clearly, are based upon the Son of Boss strategy on which they were allegedly induced to participate. However, Plaintiffs allege no specific fraudulent misrepresentation or omission by TBS on which they reasonably relied in deciding to enter into the Son of Boss strategy. They assert generally that, "[u]pon information and belief, [TBS] was also involved in the development and creation of tax shelters, including Son of BOSS," (Am. Compl. ¶73) and that TBS, with its "co-conspirators played a central role in creating, marketing, selling and/or implementing the Son of BOSS tax shelter." (*Id.*, ¶50) However, those allegations are not only wholly conclusory and unsupported, but, indeed, contradicted by other allegations reflecting that Plaintiffs relied on representations not by TBS, but by Jenkens and others:

- "Jenkens was primarily responsible for developing and selling Son of Boss" (Am. Compl., ¶68);

- "Jenkens and the Deutsche Bank defendants marketed these shelters to hundreds of people, including the Vadevoulises. Indeed, Brubaker [of Deutsche Bank] sent or caused to be sent many of the account statements, option transaction confirmations, and account statements necessary to set up and implement the Son of BOSS transaction in which plaintiffs participated" (Am. Compl., ¶54);

- "[Tsourapas] recommended that plaintiffs retain Jenkens to provide tax advice, which led to plaintiffs' participation in Son of Boss" (Am. Compl., ¶30);

- "Plaintiffs were referred to Jenkens by Tsourapas, for which Tsourapas received secret, undisclosed referral fees" (Am. Compl., ¶80);

- "Jenkens informed the [Plaintiffs] that the tax strategy was a valid and legitimate means of minimizing taxes with respect to [Plaintiffs'] capital gains" (Am. Comp., ¶81);

- "Son of BOSS was actually created and designed, and would be implemented by Jenkens" (Am. Compl., ¶82);

---

trade and commerce. *Prime Leasing, Inc. v. Kendig*, 332 Ill. App.3d 100, 312, 773 N.E.2d 84, 95 (1st Dist. 2002) (citation omitted). A plaintiff must establish, in addition, that the alleged deception was "material and proximately resulted in damages." *Ryan v. Wersi Electronic GmbH & Co.*, 1994 WL 282323, *1 (N.D. Ill. June 22, 1994).

11

- "Jenkens recommended the formation of a number of entities in order for [Plaintiffs] to effectuate the tax strategy. Jenkens orchestrated the formation of these entities." (Am. Compl., ¶¶84) (*see also id.*, ¶¶85-90, describing in detail the steps involved in the strategy recommended by Jenkens);

- "Jenkens arranged for [TBS] to prepare the Vadevoulises 2000 tax returns" (Am. Compl., ¶16).

Thus, Jenkens referred Plaintiffs to TBS only *after* Plaintiffs had decided to participate in Son of Boss and to take all the necessary steps to form the entities involved in the strategy and execute the trades to generate the losses that would be reported on their tax returns. (*See* Am. Compl., ¶¶54, 84-90) It is TBS's alleged preparation of "[P]laintiffs' 2000 tax returns reflecting their participation in Son of Boss" (*Id.*, ¶128) that forms the basis for Plaintiffs' claims against TBS. The only specific allegation Plaintiffs attribute to TBS is the alleged representation by certain TBS employees to Plaintiffs that they would prepare Plaintiffs' taxes "in accordance with the tax treatment Jenkens proposed" (*see id.*, ¶¶56, 73, 91), a statement which, according to Plaintiffs' other allegations, was not false, but perfectly accurate. Though Plaintiffs also allege that TBS told them that Son of BOSS was "a legitimate tax savings strategy" and that it "presented the details of the Son of BOSS strategy" to them (*id.*, ¶81), those assertions lack any specificity as to time and place. Thus, the Complaint fails to allege any specific representation or omission by TBS on which Plaintiffs reasonably relied in deciding to participate in the Son of Boss tax strategy. Moreover, in making assertions reflecting that Plaintiffs were referred to TBS only *after* they had decided to implement the Son of Boss strategy, the Complaint acknowledges that Plaintiffs could *not* have relied on any statement or conduct on the part of TBS in participating in the strategy.

Plaintiffs also allege that TBS stated, both "[a]t the inception of" its relationship with Plaintiffs and "when the relevant tax returns were tendered for signature and filed," that it "was providing objective and competent tax advice." (Am. Compl., ¶129) Plaintiffs fail to set

12

forth any justifiable reliance with respect to that alleged statement, either at the "inception" of the parties' relationship or at the "tendering" of the tax returns. In addition to the fact that Plaintiffs have alleged no misrepresentation on TBS's part, TBS's alleged statement clearly did not induce them to suffer damages. Plaintiffs' alleged injuries are attributable not to TBS's statement, but the tax strategy that is at the root of this case. As Plaintiffs allege, their decision to engage in that strategy resulted from their reliance -- not on TBS -- but on the Jenkens Letter and Jenkens' representation that "the tax strategy was a valid and legitimate means of minimizing taxes with respect to the Vadevoulises' capital gains." (Am. Compl., ¶81) It was pursuant to the strategy set in motion by Jenkens that Plaintiffs filed the tax returns TBS prepared in reliance on the materials -- including the Jenkens Letter -- Plaintiffs provided to it. Thus, it was the *strategy*, not TBS's statement or work product, that caused their alleged losses. The fraud claim is, accordingly, deficient for the further reason that Plaintiffs fail to allege that they justifiably relied on that alleged statement.

Plaintiffs' fraud claim is subject to dismissal for the further reason that it fails to satisfy the requirement of Fed. R. Civ. P. 9(b) that a plaintiff "state with particularity the circumstances constituting fraud." Conclusory allegations that fail to specify the time, place and content of any misrepresentations attributed to a defendant "fall short of the particularity demanded by Rule 9(b)." *Goren v. New Vision Int'l., Inc.*, 156 F.3d 721 (7th Cir. 1998) (citation omitted); *Rosen v. Mystery Method, Inc.*, 2008 WL 723331, *2 (N.D. Ill. March 14, 2008) (for purposes of particularity, the plaintiff must describe "the who, what, where, and when of the alleged fraud."). Moreover, in a case such as the instant case that involves multiple defendants, a plaintiff must state fraud with particularity as against *each* defendant. *See e.g. Vicom, Inc. v. Harbridge Merchant Services, Inc.*, 20 F.3d 771, 778 (7th Cir. 1994) (citation omitted) ("Rule

13

9(b) is not satisfied where the complaint vaguely attributes the alleged fraud to 'defendants'.").[10]

In the present case, the Complaint fails to set forth any particularized allegations of fraud by

TBS.  Instead, the Complaint consists of conclusory allegations of wrongdoing by "defendants,"

"each defendant," "Deutsche Bank and Amex" and "co-conspirators," precisely the sort of non-

particularized pleading the Seventh Circuit has held insufficient to satisfy the requirements of

Rule 9(b).[11]

**B.      Plaintiffs Fail to Allege a Negligent Misrepresentation Claim**

A claim for negligent misrepresentation requires that a plaintiff establish the same

elements as for fraudulent misrepresentation, except that the defendant need not know the

statement at issue is false.  *Kopley Group V., L.P. v. Sheridan Edgewater Properties, Ltd.*, 376

Ill.App.3d 1006, 1018, 876 N.E.2d 218, 228 (1st Dist. 2007).  In the present case, Plaintiffs rely

on the same "false statements and omissions" to support both their fraudulent and negligent

misrepresentation claims.  For the same reasons Plaintiffs fail to set forth the elements of a fraud

claim, they fail to set forth the elements of a claim for negligent misrepresentation.

**C.      Plaintiffs Fail to Set Forth a Claim For Breach of Fiduciary Duty**

Plaintiffs' claim for breach of fiduciary duty rests on the conclusory allegation

that TBS, "as the [Plaintiffs'] accountants," were "[Plaintiffs'] fiduciaries."  (Am. Compl., ¶156)

The law is clear, however, that TBS, which prepared Plaintiffs' tax returns for one year, was not

---

[10]      Rule 9(b) applies to all claims sounding in fraud and not just to those claims denominated as such. *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507-508 (7th Cir. 2007) (Rule 9(b) applies to all "averments of fraud" not just "claims of fraud" and therefore governs claims premised upon a course of fraudulent conduct). Therefore, Plaintiffs' claim for violation of the Act, premised on the same factual allegations, are subject to Rule 9(b).  *See Vulcan Golf, LLC v. Google Inc.*, 2008 WL 818346, * (N.D. Ill. March 20, 2008).

[11]      Again, the only statement attributed to TBS that is set forth with any detail is that TBS would prepare Plaintiffs' tax returns "in accordance with the tax treatment Jenkens proposed" (Am. Compl., ¶¶56, 73, 91), a statement that is not alleged to have been false.  The lengthy list of "knowingly false affirmative representations and intentional omissions of material facts" Plaintiffs attribute to "Deutsche Bank and [TBS]" (*id.*, ¶125), moreover, lacks any particulars.  Further, the statement that TBS would provide "objective and competent tax advice" (id., ¶81), also lacks such basic details as the speakers, the specific persons to whom it was made and the dates on which it was made.  *See, e.g., Goren*, 156 F.3d at 729.

their fiduciary.  As the Court observed in *Peterson v. H&R Block Tax Services, Inc.*, 971 F. Supp. 1204, 1212 (N.D. Ill. 1997) (applying Illinois law):

> the "'essence' of a fiduciary relationship is one party's dominance over the other.  [citation omitted]  'Indeed, in the absence of dominance and influence there is no fiduciary relationship regardless of the level of trust between the parties.  [citation omitted]  Significantly, a 'slightly dominant business position…[does] not operate to turn a formal, contractual relationship into a confidential or fiduciary relationship.  [citation omitted]  Courts therefore will not impose fiduciary duties absent a 'significant degree of dominance and superiority of one party over another.' [citation omitted].

While certain relationships, such as partners and attorney-client, are fiduciary as a matter of law under Illinois law, the accountant-client relationship is not, and any fiduciary relationship between an accountant and a client must be imposed on an "ad hoc" basis. *Id.* Thus, Illinois courts have declined to impose fiduciary duties on an accountant absent compelling facts establishing the accountant's dominance and influence over the client, such as the accountant's role in managing the client's assets, performing audits, or "rendering complex investment advice," particularly in "long-term, ongoing relationships." *Id.* at 1214.  In *Peterson*, the Court declined to find any fiduciary relationship between the parties where the defendant accounting firm was "alleged to have done nothing more than perform a basic accounting function -- preparing tax returns and advising its customers on the process," the parties had had "an arms-length, isolated transaction for tax preparation services and basic tax advice" and the defendant had "no close, long-term relationship with [the plaintiff] or influence over the management of her assets." 971 F. Supp. at 1214.  *See also Terrell v. Childers*, 920 F. Supp. 854, 857 (N.D. Ill. 1996) (applying Illinois law) (tax planning expert who, for several years, provided budget advice and preparation, tax advice and planning, insurance and estate planning and managed client's assets, owed fiduciary duty to client).

In the present case, Plaintiffs set forth no facts establishing any of the hallmarks of a fiduciary relationship as to TBS. As discussed above, TBS prepared Plaintiffs' tax returns for one year. Until Jenkens referred Plaintiffs to TBS, Plaintiffs had had no relationship with TBS. By the time their relationship with TBS began, Plaintiffs had, at Jenkens' recommendation, already decided to participate in the Son of Boss tax shelter, formed legal entities, again at Jenkens' direction, in furtherance of the strategy and engaged in transactions involving those entities in order to generate the tax losses that would be offset against the capital gains Plaintiffs were seeking to shelter. TBS is not specifically alleged to have had anything to do with those decisions and actions. Plaintiffs simply furnished TBS with the information necessary to prepare the tax returns reflecting the losses Plaintiffs had decided -- at Jenkens' recommendation -- to claim. Plaintiffs had nothing more than an arms-length relationship with TBS.[12]

In any event, Plaintiffs' breach of fiduciary duty claim should be dismissed as duplicative of their negligence and malpractice claims.[13] Under Illinois law, "a breach of fiduciary duty claim can be properly dismissed if it alleges the same operative facts and the same legal injury as a negligence claim...or if it mirrors a negligence claim." *Service Auto Parts, Inc. v. Benjamin & Birkenstein, P.C.*, 2004 WL 2359233, *1 (N.D. Ill. Oct, 19, 2004) (applying Illinois law) (dismissing plaintiff's breach of fiduciary claim as duplicative of plaintiff's accounting negligence claim because the two claims were based on the same or related facts and the same alleged financial injury). *See also McDermott, Will & Emery v. Ogle*, 2001 WL

---

[12]    Plaintiffs' new assertion that they were "relying entirely on [TBS] to protect their interests" (Am. Compl., ¶157), is clearly not sufficient to set forth the existence of a fiduciary relationship, as it is an allegation *any* client could make against a professional. As the decisions cited above demonstrate, far more is required.

[13]    In their malpractice claim, Plaintiffs allege that TBS "[took] advantage of a relationship of trust and confidence" and breached its duty "to act with the skill and care of a reasonably competent accountant." Am. Compl., ¶¶ 180-81.

1465696, * (N.D. Ill. Nov. 15, 2001) (applying Illinois law) ("[u]nless [p]laintiff's breach of fiduciary duty claim pleads allegations different and distinct from those in the negligence or malpractice claim, the fiduciary duty claim is dismissed as duplicative") (citations omitted).

**D.    The Claim for Assisting in Breach of Fiduciary Duty Should Be Dismissed**

       Illinois law does not recognize a separate tort for assisting or aiding and abetting a breach of fiduciary duty. *E.g., Eastern Trading Co. v. Refco, Inc.*, 229 F.3d 617, 623 (7th Cir. 2000). Thus, while aiding and abetting may be a basis for imposing liability for the tort aided and abetted, it is not a basis in and of itself for imposing tort liability. *Id.* As to TBS, Plaintiffs' claim is that TBS assisted in Jenkens' breach of fiduciary duty. Jenkens is not a party to this action; thus, Plaintiffs have asserted no claim of a breach by Jenkens of its fiduciary duty. Because TBS's alleged acts and omissions in aid of Jenkens' breach of fiduciary duty do not form an independent basis for tort liability but rather would be derivative of Jenkens' liability for breaching its fiduciary duty -- an issue not present in this case in the absence of any claim asserted against Jenkens -- Plaintiffs may not maintain their claim against TBS for assisting in Jenkens' breach of fiduciary duty.

**E.    Plaintiffs Fail to Plead a Breach of Contract Claim**

       The elements of a breach of contract claim under Illinois law are (1) offer and acceptance, (2) consideration, (3) definite and certain terms, (4) performance by the plaintiff of all required conditions, (5) breach, and (6) damages. *Browning v. Eckland Consultants, Inc.*, 2004 WL 2687961, *4 (1st Dist. August 13, 2004). In the present case, Plaintiffs set forth no specific allegations concerning the alleged contract. They do not identify any contract or even state whether it was oral or in writing. They fail to identify the actual parties to the contract or, indeed, any of its terms. Their conclusory assertion that TBS "breached its agreement with [Plaintiffs] by failing to perform its obligations pursuant to the agreement" (Am. Compl., ¶175)

17

is insufficient. *See Martusciello v. JDS Homes, Inc.*, 361 Ill.App.3d 568, 575, 838 N.E.2d 9, 15 (1ˢᵗ Dist. 2005) (claim for breach of contract "must allege, among other things, the definite and certain terms of the parties' agreement"); *Industrial Hard Chrome Ltd. v. Hetran, Inc.*, 64 F.Supp.2d 741, 745 (N.D. Ill. 1999) (applying Illinois law) (conclusory allegation insufficient; rather, "plaintiff must state the facts underlying the breach.") (citation omitted).

**F.     The Civil Conspiracy Claim Fails Because Plaintiffs' Other Tort Claims Fail**

Illinois law does not recognize an independent action for civil conspiracy. *Indeck North America Power Fund v. Norweb PLC*, 316 Ill.App.3d 416, 432, 735 N.E.2d 649, 662 (1ˢᵗ Dist. 2000) (dismissal of conspiracy claim proper where plaintiff failed to state independent cause of action underlying conspiracy allegations). Rather, an action for civil conspiracy[14] must derive from an independent actionable tort. *Id.* *See also Lawrence H. Flynn, Inc. v. Philip Morris USA, Inc.*, 2006 WL 211823, *7-8 (N.D. Ill. Jan. 19, 2006) (conspiracy claim could not be maintained because underlying tort claims subject to dismissal). Moreover, a conspiracy claim cannot be based only on conclusions of tortious conduct between defendants or "[c]haracterizing a combination of acts as a conspiracy." *Indeck North America Power Fund*, 316 Ill.App.3d at 432. Because Plaintiffs have failed to state a viable independent tort against TBS, the civil conspiracy claim should be dismissed as to TBS.

---

[14]     Under Illinois law, "[t]he elements of a civil conspiracy are: (1) a combination of two or more persons, (2) for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful means, (3) in the furtherance of which one of the conspirators committed an overt tortious or unlawful act." *Redelmann v. Claire Sprayway, Inc.*, 375 Ill.App.3d 912, 874 N.E.2d 230, 314 Ill.Dec. 320 (1ˢᵗ Dist. 2007).

### III.

### ALTERNATIVELY, PLAINTIFFS SHOULD BE COMPELLED TO ARBITRATE THEIR CLAIMS AGAINST TBS AND THIS ACTION SHOULD BE STAYED PENDING ARBITRATION

In the alternative, if the Court determines to sustain the Amended Complaint, it should compel Plaintiffs to arbitrate their claims against TBS pursuant to the written arbitration agreements contained in the DB Agreements and stay this action pending such arbitration. TBS joins in the DB Motion and incorporates herein the arguments set forth by the DB Defendants that (i) Plaintiffs' claims are "referable to arbitration"; (ii) Plaintiffs are bound by the arbitration agreements contained in the DB Agreements; and (iii) Plaintiffs are estopped from denying arbitration. (*See* Memorandum of Law in Support of the DB Motion ("DB Mem."), the relevant pages of which are annexed hereto as Exhibit D)

TBS, though not a signatory to the DB Agreements, may nonetheless enforce them. The Amended Complaint asserts repeatedly that TBS and other "non-party co-conspirators" including Jenkens and Tsourapas, conspired together in an interdependent manner to market the Son of BOSS strategy and associated transactions to Plaintiffs. For example, Plaintiffs allege that:

> "This case arises out of Deutsche Bank's and [TBS]'s participation in concert with the now defunct law firm of Jenkens & Gilchrist ('Jenkens'), in a conspiracy to create, market, sell, and implement an illegal 'Son of BOSS' tax shelter to the Vadevoulises during 2000." (Am. Compl., ¶1)

> "Defendants and their co-conspirators nonetheless participated in the Son of BOSS conspiracy and reaped tens of millions of dollars in illicit profits at the expense of plaintiffs and other participants." (Am. Compl., ¶2)

> "Defendants and their co-conspirators artificially generated substantial tax losses for the Vadevoulises, though no real losses ever occurred and though there was never any real economic risk involved in the transactions." (Am. Compl., ¶7)

19

"Both Deutsche Bank and [TBS] along with their co-conspirators played a central role in creating, marketing, selling, and/or implementing the Son of Boss tax shelter, including the transaction in which the Vadevoulises participated." (Am. Compl., ¶50)

"Both before and after plaintiffs and others purchased Son of BOSS, Deutsche Bank, [TBS], and the other co-conspirators represented to the participants that Son of BOSS was a legitimate tax avoidance mechanism and that it was not a fraudulent tax shelter." (Am. Compl., ¶56)

"The co-conspirators closely coordinated and cooperated in designing and implementing Son of BOSS. The defendants and the other co-conspirators each had their own primary roles." (Am. Compl., ¶68)

"[T]he defendants and other co-conspirators knowingly entered into an agreement to participate in a scheme to create and market Son of BOSS and to induce the Vadevoulises to enter into the illegal Son of BOSS transaction in order to obtain professional and other fees from plaintiffs." (Am. Compl., ¶116)

"The co-conspirators, including defendants, agreed to commit the unlawful acts alleged herein. There was a meeting of the minds among the defendants and the other co-conspirators to commit the unlawful acts alleged herein." (Am. Compl., ¶119)

"Each defendant is liable for the misrepresentations and omissions made by each of the other defendants as a principal and co-conspirator." (Am. Compl., ¶123)

Thus, Plaintiffs, bound to a contract containing an arbitration provision, have alleged a civil conspiracy between signatories and nonsignatories to commit fraud. Under such circumstances, Plaintiffs should arbitrate their claims against TBS under principles of estoppel and agency, which combine to allow a nonsignatory such as TBS to enforce the contract's arbitration provision.[15] *See Hoffman v. Deloitte & Touche, LLP*, 143 F. Supp.2d 995, 1004-05 (N.D. Ill. 2001).

---

[15]    Indeed, a conspiracy is a kind of partnership in which each member becomes the agent of every other member. *Reno-West Coast Distrib. Co, v. Mead Corp.*, 613 F.2d 722, 725 n.3 (9th Cir.), *cert. denied*, 444 U.S. 927 (1979); *see also United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1549 (9th Cir.) (quoting with approval Jury Instruction to same effect), *cert. denied*, 493 U.S. 809 (1989).

The *Hoffman* decision illustrates this principle well. There, plaintiffs alleged a complex fraudulent scheme by, among others, defendants Deloitte & Touche, an accounting firm, and Jeffries & Co., an investment banking firm. They alleged that defendants formed a company, EPS, which was comprised of a rollup of numerous companies, many of which were not profitable, and induced plaintiffs to merge their profitable companies into EPS by misrepresenting the performance and prospects of EPS and by giving EPS the appearance of legitimacy through its association with two reputable firms, falsely claiming that EPS had the backup of Deloitte and its resources and that the transactions had the benefit of the investment advice and due diligence of Jeffries. 143 F. Supp.2d at 998-1000. Plaintiffs entered into written stock and asset purchase agreements with EPS that contained broad arbitration clauses. *Id.* at 1003. After EPS failed, plaintiffs sued EPS, Deloitte, Jeffries and others, alleging that they had acted in concert to defraud them.

Deloitte and Jeffries, though non-signatories to the arbitration agreements, moved to compel arbitration pursuant to the arbitration clauses in plaintiffs' agreements with EPS. The Court rejected plaintiffs' argument that Deloitte and Jeffries could not be subject to the arbitration agreements, noting that plaintiffs claimed that all the defendants had conspired to induce them to participate in the roll-up and, indeed, asserted civil conspiracy counts against them:

> A non-signatory may invoke the [arbitration] agreement when, 'under agency or related principles, the relationship between the signatory and non-signatory defendants is sufficiently close that only by permitting the non-signatory to invoke arbitration may evisceration of the underlying arbitration agreement between the signatories be avoided.' [citation omitted]....[E]quitable estoppel allows a non-signatory to compel arbitration...'when the signatory raises allegations of...substantially interdependent and concerted misconduct by both the non-signatory and one or more of the signatories to the contract.' *Id.*

21

143 F. Supp.2d at 1004-05. *See also Johnston v. Arrow Financial Services*, 2006 U.S. Dist. LEXIS 70814, *14-16 (N.D. Ill. Sept. 15, 2006) (holding that non-signatory could compel arbitration based on the plaintiffs' arbitration agreement with signatory where the plaintiffs had alleged "interdependent and concerted misconduct" by nonsignatory and signatory); *Hansen v. KPMG, LLP*, 2005 U.S. Dist. LEXIS 38137, *10-11 (C.D. Cal. March 29, 2005) (granting nonsignatories' motion to compel the plaintiff -- identically situated to Plaintiffs in the present case -- to arbitrate pursuant to the same arbitration agreements as those in the present case, where the plaintiff alleged that Deutsche Bank, a signatory, and the nonsignatory defendants "entered into an agreement and conspiracy between themselves to fraudulently induce plaintiff to invest in" a tax strategy and generally pleaded interdependent and concerted misconduct by all defendants); *Camferdam v. Ernst & Young Int'l, Inc.,* 2004 U.S. Dist. LEXIS 2284 *20-21 (S.D.N.Y. Feb. 13, 2004) (applying equitable estoppel to require arbitration of claims against nonsignatory where plaintiffs alleged a conspiracy and "agency relationship" between Ernst & Young, a signatory, and nonsignatory defendants to induce plaintiffs to invest in tax strategy). *See also Wilson v. Deutsche Bank AG*, 2006 U.S. Dist. LEXIS 94847, *11 (N.D. Ill. March 20, 2006) (in staying action involving the same arbitration agreement and substantially the same allegations and claims as those in the present case, court noted, in part, that: "because plaintiffs claim substantially interdependent and concerted misconduct by both the DB defendants as signatories and the remaining non-signatory defendants, *the court concludes that all defendants will likely be able to compel arbitration under the DB agreements.*") (emphasis added).

In the present case, according to the allegations of the "conspiracy" set forth in the Complaint, Plaintiffs' claims against TBS would not have even arisen but for the alleged involvement by the DB Defendants in the marketing and sale of the tax shelter in question and

22

Plaintiffs' decision to engage Deutsche Bank through the DB Agreements. Indeed, Plaintiffs claim the fees paid under the DB Agreements as an element of the damages they seek from the Defendants. (Am. Compl., ¶¶108, 110, 112) Because the claims by Plaintiffs against TBS are both founded in and intimately intertwined with the DB Agreements, Plaintiffs are estopped from avoiding arbitration with TBS.

Finally, TBS also incorporates the argument in the DB Motion that the Court should issue a mandatory stay under 9 U.S.C. §3, which provides, in relevant part, that the court, "upon being satisfied that the issue involved ... is referable to arbitration..., *shall* on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the [arbitration] agreement." (Emphasis added) (*See* DB Mem. at 6)

## CONCLUSION

For the foregoing reasons, TBS respectfully requests that the Court dismiss the Amended Complaint with prejudice, or, in the alternative, compel Plaintiffs to arbitrate their claims against TBS and stay this action pending arbitration of such claims, and grant TBS such other and further relief as may be appropriate.

DATED:    August 25, 2008

23

NYC:180210.1

_____/s/ Thomas F. Falkenberg_____

Lynne M. Fischman Uniman
Anju Uchima
ANDREWS KURTH LLP
450 Lexington Avenue, 15th Floor
New York, New York 10017
Telephone: (212)850-2800
Facsimile: (212) 850-2929

Thomas F. Falkenberg
Williams Montgomery & John, Ltd.
20 North Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 443-3240
Facsimile: (312) 630-8540

*Attorneys for Defendant RSM McGladrey, Inc.*
*(f/k/a American Express Tax and Business Services*
*Inc.)*