IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Konstantinos Vadevoulis, Jim Vadevoulis, and Paul Vadevoulis, | ) ) ) |
| Plaintiffs, | ) Case No. 08cv1251 ) ) Hon. Joan H. Lefkow |
| v. | ) ) ) Mag. Judge Arlander Keys |
| Deutsche Bank AG; Deutsche Bank Securities, Inc., d/b/a Deutsche Bank Alex. Brown, and American Express Tax and Business Services, Inc., n/k/a RSM McGladrey LLC | ) ) ) ) ) ) |
| Defendants. | ) |

**PLAINTIFFS' MOTION TO COMPEL DEFENDANTS'
DISCOVERY RESPONSES AND PRODUCTION OF DOCUMENTS**

Pursuant to Federal Rules of Civil Procedure 26 and 37, plaintiffs Konstantinos Vadevoulis, Jim Vadevoulis, and Paul Vadevoulis (collectively, the "Vadevoulises") hereby move to compel defendants Deutsche Bank AG and Deutsche Bank Securities, Inc. (collectively "Deutsche Bank") and American Express Tax and Business Services, Inc. ("Amex") to fully and completely respond to plaintiffs' outstanding document requests and interrogatories.

The Vadevoulises seek documents and information concerning two general categories. First, plaintiffs simply request that defendants provide all documents and information in their possession concerning the Son of BOSS (Bond Options Sales Strategy) tax shelter, including creation, marketing and implementation documents exchanged between and among the defendants and

their co-conspirator Jenkens & Gilchrist **prior to and after the Vadevoulises' involvement in the tax shelter**.  Though neither Deutsche Bank nor Amex denies having such documents, both refuse to produce any document relating to the Son of BOSS tax shelter unless it has one of the Vadevoulises' names on it.  According to defendants, if there are internal records or emails where individuals at Deutsche Bank or Amex questioned the legitimacy of the Son of BOSS tax shelter, these documents need not be produced.  This position is untenable given the plaintiffs' allegations in the complaint, and in particular, plaintiffs' conspiracy claim.

In addition, the Vadevoulises seek documents concerning the Son of BOSS tax shelter that both Deutsche Bank and Amex have already produced in connection with other proceedings related to the Son of BOSS tax shelters, including (i) the Senate Subcommittee on Investigations, (ii) the IRS and DoJ investigation, and (iii) other private litigants.  Again, defendants do not dispute they have produced documents relating to Son of BOSS to other parties, they simply refuse to produce such documents to the Vadevoulises even though there can be no suggestion that these proceedings contained nearly identical allegations as in the complaint or that producing such documents imposes any burden whatsoever other than burning another CD-Rom.

These categories of documents (and the related interrogatories) are reasonably calculated to lead to the discovery of admissible evidence and should be produced.  In further support, the Vadevoulises state as follows:

## NATURE OF THE CASE

1.  This case arises out of Deutsche Bank's and Amex's participation in concert with the now defunct law firm Jenkens & Gilchrist ("Jenkens"), in a conspiracy to create, market, sell, and implement an illegal Son of BOSS tax shelter to the Vadevoulises. Defendants and their co-conspirators stated and acted as though the tax shelter was a legitimate transaction although each knew the strategy was economically baseless and that it would not pass IRS muster. Deutsche Bank, Amex, and their co-conspirators each played a critical role in the creation, marketing, sale, and/or implementation of the Son of BOSS shelter. Am. Compl. ¶¶ 1-10.

2.  Deutsche Bank at all times gave the Vadevoulises the impression that the trading and other financial machinations underlying the Son of BOSS tax shelter were valid and legitimate. Am. Compl. ¶ 2. They did this, in part, by preparing and circulating to the Vadevoulises financial documents, including account statements and trade confirmations that implemented the scheme. The 2005 U.S. Senate Subcommittee Report found that the tax shelters could not have been executed without the active and willing participation of major banks like Deutsche Bank. *Id*. ¶¶ 69-72. Specifically, the report found that Deutsche Bank and other banks "provided billions of dollars in lending critical to transactions which the banks knew were tax motivated, involved little or no credit risk, and facilitated potentially abusive or illegal tax shelters." According to the report, Deutsche Bank provided billions in lines of credit for tax shelters.

3. Amex was the tax preparation firm selected by Jenkens to implement the Son of BOSS tax scheme for its clients. Amex knew or should have known that Son of BOSS was invalid, illegitimate, and illegal. Nonetheless, Amex prepared the Vadevoulises' returns (as well as the tax returns of many other Son of BOSS participants referred by Jenkens) in order to generate substantial fees. Am. Compl. ¶¶ 73-74.

4. Defendants and their other co-conspirators participated in the Son of BOSS conspiracy and reaped tens of millions of dollars in illicit profits at the expense of plaintiffs and other participants. *Id.* ¶¶ 51-57. The Vadevoulises now seek recovery for back taxes, penalties, interest, fees, and costs against defendants for conspiracy, common law fraud, negligent misrepresentation, violation of the Illinois Consumer Fraud & Deceptive Trade Practices Act, breach of fiduciary duty, assisting in Jenkens and Amex's breaches of fiduciary duty, breach of contract, and accounting malpractice.

### PLAINTIFFS' DISCOVERY REQUESTS

5. As described above, plaintiffs' motion concerns two categories of documents/information that easily satisfy Rule 26's stricture that parties may obtain discovery "regarding any matter, not privileged, which is relevant to the subject matter" of the action. As this Court no doubt knows, relevance is broadly defined, and includes information that may "not be admissible at trial [but is discoverable] if [it] appears reasonably calculated to lead to the discovery of admissible evidence." *Videojet Sys. Intl, Inc. v. Inkjet, Inc.*, No. 95 C 7016, 1997 WL

138008, at *1 (N.D. Ill. Mar. 19, 1997).  A request for discovery "should be considered relevant if there is **any possibility** that the information sought may be relevant to the subject matter of the action."  *Videojet*, 1997 WL 138008, at *1 (emphasis added; internal citations omitted).

6.　　**Documents Relating to the Son of BOSS Tax Shelter Generally**:  The Vadevoulises request documents and information relating to the Son of BOSS tax shelter beyond those that specifically mention the Vadevoulises.  In paricular, RFP No. 4 asks for: "**All documents concerning the creation, marketing, or implementation of Son of BOSS generally**."  Pls.' RFPs at 5, attached as Exhibit A hereto.

7.　　Defendants object on relevance grounds to producing any Son of BOSS documents or internal communication unless the document contains one of the plaintiffs' names.  *See* Deutsche Bank's Resps. at 9, attached as Exhibit B hereto.  There is no authority for this proposition, and it is not supportable.

8.　　As alleged in the Complaint, the Vadevoulises were hardly the only people ensnared by defendants' efforts to market illegitimate tax shelters to individuals expecting capital gains. Am. Compl. ¶ 60-61.  In furtherance of the conspiracy, Deutsche Bank and Amex worked with co-conspirator Jenkins to create form "cookie-cutter" documents to market and to implement the complex Son of BOSS tax shelter.  *Id*. at 54-55.  The conspiracy allegations in this complaint, thus, reach well beyond the Vadevoulises' involvement and thus

documents exchanged between and among the defendants about the Son of BOSS tax shelter are plainly relevant to this dispute.

9. The Senate Subcommittee uncovered numerous emails and other memorandums exchanged between accountants, law firms, investment banks and others before a single tax shelter was executed. These communications are most illuminating as to what individuals at these various parties said about whether the tax shelters would pass IRS muster. These views are particularly relevant as contrasted with what the defendants and their co-conspirators represented to the Vadevoulises.

10. For example, a former Deutsche Bank Vice President who participated in funding illegal tax shelters testified before the Senate that that Deutsche Bank created an internal documentary record before participating in tax shelters, and yet not one internal review document has been produced:

> First, before making the loans, Deutsche Bank conducted an internal review process. The internal groups that reviewed the bank's provision of services were Deutsche Bank Private Banking, Global Markets, Tax, Legal, Credit Risk Management, Treasury, and Compliance.

*See* Testimony of William Boyle, Hearings before the Senate Permanent Subcommittee on Investigations, "U.S. Tax Shelter Industry," 11/18/2003 and 11/20/2003, attached as Exhibit C, at 96. Indeed, Senators questioned Mr. Boyle about specific internal Deutsche Bank documents relating to tax shelters in which it participated, and which do not appear related to any particular tax shelter participant but are nonetheless highly informative.

*Id*. at 106 (Deutsche Bank Private Bank management committee meeting minutes); *id*. at 108 (new product committee memo and Power Point presentations).

11.     The Vadevoulises are entitled to any internal reviews these defendants performed concerning the Son of BOSS tax shelter irrespective of whether the Vadevoulises' names appear on such documents.  These and other documents concerning the creation, marketing and implementation of the Son of BOSS tax shelter go directly to what these defendants knew about the shelter before they sold it to the Vadevoulises.

12.     To be clear, the Vadevoulises are not seeking personal information from other Son of BOSS tax shelter victims.  Rather, the above requests are aimed at documents and communications exchanged between and among Deutsche Bank, Amex and Jenkens when they were planning or modifying how the Son of BOSS tax shelter would be created, marketed, and implemented.[1]

13.     In addition, the Vadevoulises request documents concerning each defendant's participation in the conspiracy to create, market, or implement the Son of BOSS tax shelter.  Specifically, the requests ask for:

---

[1]  Indeed, Plaintiffs' discovery requests defined "Son of BOSS" to exclude such materials.  See Ex. A at 2-3 ("With any document requests or interrogatories concerning Son of BOSS generally, however, **Plaintiffs are not seeking any personal information of other Son of BOSS participants**.  Plaintiffs agree such information may be withheld or redacted as appropriate given the document request or interrogatory.")

- **"All documents that concern, show, or relate to any Defendants' participation in Son of BOSS generally."** RFP No. 5, Ex. A.

- **"Documents that show the scope and extent of Defendants' participation in Son of BOSS generally**." RFP No. 8, Ex. A.

14. Defendants refuse to produce a single document concerning their respective roles in the Son of BOSS tax shelter. *See* Ex. B at 9-11; Amex Am. Resps., attached as Exhibit D at 5-6. These objections are without basis.

15. Plaintiffs further request documents/information concerning compensation either Deutsche Bank or Amex received in connection with the Son of BOSS tax shelter: **"All documents concerning the nature and amounts of compensation Defendants received from Son of BOSS generally."** RFP No. 15, Ex. A at 7. *See also* Interrog. No. 7, Ex. A at 9.

16. How much the defendants made from Son of BOSS generally is relevant to the Vadevoulises' conspiracy claims. The more defendants made for performing their respective roles (compared to similar non-tax transactions), the more likely it is that defendants were knowingly participating in an illegal tax shelter. Moreover, the Complaint alleges that defendants received undisclosed fees in connection with the Son of BOSS tax shelters. Am. Compl. ¶ 5.

17. Nonetheless, defendants object to responding in any way to these requests. *See* Ex. B at 14, 18; Ex. D at 9, 11.

18. **Documents Produced By Amex and Deutsche Bank in Related Tax Shelter Proceedings**: The Vadevoulises request that defendants be

8

compelled to produce (i) documents Deutsche Bank and Amex have already collected and produced in other proceedings related to the Son of BOSS tax shelter, and (ii) transcripts of testimony from such other proceedings where the Son of BOSS tax shelter are discussed.

19. Specifically, plaintiffs request as follows:

- "**All documents relating to Son of BOSS that Defendants produced to any governmental committee, government agency, federal or state prosecutor, or private litigant since 2000.**" RFP No. 12.

- **All transcripts since 2000 of trial testimony, hearing testimony, grand jury testimony, depositions, or interviews of any current or former employee of Defendants in which Son of BOSS was mentioned, referred to, described, or inquired about**." RFP No. 13.

20. Defendants object solely on relevance grounds. Ex. B at 12-13; Ex. D at 7-8.

21. They also object to the related interrogatories which ask to whom they have produced documents (Interrog. No. 4) and who testified at the related proceedings (Interrog. No. 5). Ex. B at 17-18; Ex. D at 10-11.

22. **Local Rule 37.2 Meet and Confer Obligation**: Plaintiffs' counsel Adam Merrill and Scott Hessell initiated telephonic meet and confer conferences with Amex's counsel Lynne Uniman and Anju Uchima on August 15, 2008 and Deutsche Bank's counsel Seth Farber and Kelly Librera on August 19, 2008 in attempts to resolve defendants' objections in good faith. Defendants nonetheless refused to produce documents concerning the above requests. *See* Confirmatory

Correspondence with Amex and Deutsche Bank, attached as Exhibits E and F, respectively. Accordingly, the Vadevoulises have satisfied their obligation to negotiate in good faith to resolve discovery disputes without court intervention.

WHEREFORE, plaintiffs respectfully request that the Court enter an order compelling Amex and Deutsche Bank to respond to Plaintiffs' RFP Nos. 4-5, 8, 9, 12-13, & 15 and Interrogatory Nos. 4, 5, & 7 by a date certain, and for such other relief as the Court deems proper.

Dated: September 5, 2008        KONSTANTINOS VADEVOULIS, JIM
                                VADEVOULIS, and PAUL VADEVOULIS


                                By:      /s/ Scott F. Hessell
                                         One of their attorneys


Adam P. Merrill  (6229850)
Scott F. Hessell (6275119)
SPERLING & SLATER
55 West Monroe St., Suite 3200
Chicago, Illinois 60603
(312) 641-3200

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 5, 2008, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which sent notification of the filing to the following:

Thomas F. Falkenberg tff@willmont.com

Lynne M Fischman Uniman luniman@akllp.com

Anju Uchima anjuuchima@andrewskurth.com

Erin L Ziaja eziaja@dl.com, mlhanson@dl.com

s/ Scott F. Hessell